# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZENON MCHUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 17 C 8658 |
| ILLINOIS DEPARTMENT OF ) | |
| TRANSPORTATION, MICHAEL M. ) | Honorable Charles P. Kocoras |
| HOFFMAN, individually, COLLEEN ) | |
| ALDERMAN, individually, JOHN ) | |
| FORTMANN, individually, GEORGINA R. ) | |
| SYAS, individually, BRUCE ) | |
| HARMENING, individually, LISA ) | |
| HEAVEN-BAUM, individually, and ) | |
| STEPHEN TRAVIA, individually, ) | |
| ) | |
| Defendants. ) | |

Defendants, Illinois Department of Transportation ("IDOT"), Michael M. Hoffman, Colleen Alderman, John Fortmann, Georgina R. Syas, Bruce Harmening, Lisa Heaven-Baum, and Stephen Travia (collectively, "Defendants"), by and through their attorney, Kwame Raoul, Attorney General of the State of Illinois, submit the following Local Rule 56.1 Statement of Uncontested Material Facts in support of their Motion for Summary Judgment.

## JURISDICTION AND VENUE

1. Plaintiff filed a fifteen-count Second Amended Complaint on April 18, 2019, asserting the following counts against Defendants:
   a. Count I: Defendant Hoffman, Procedural Due Process, 42 U.S.C. § 1983
   b. Count II: Defendant Hoffman, Substantive Due Process, 42 U.S.C. § 1983
   c. Count III: Defendant Alderman, Procedural Due Process, 42 U.S.C. § 1983
   d. Count IV: Defendant Alderman, Substantive Due Process, 42 U.S.C. § 1983
   e. Count V: Defendant Fortmann, Procedural Due Process, 42 U.S.C. § 1983
   f. Count VI: Defendant Fortmann, Substantive Due Process, 42 U.S.C. § 1983
   g. Count VII: Defendant Syas, Procedural Due Process, 42 U.S.C. § 1983
   h. Count VIII: Defendant Syas, Substantive Due Process, 42 U.S.C. § 1983
   i. Count IX: Defendant Harmening, Procedural Due Process, 42 U.S.C. § 1983

  j.  Count X: Defendant Harmening, Substantive Due Process, 42 U.S.C. § 1983
  k.  Count XI: Defendant Heaven-Baum, Procedural Due Process, 42 U.S.C. § 1983
  l.  Count XII: Defendant Heaven-Baum, Substantive Due Process, 42 U.S.C. § 1983
  m.  Count XIII: Defendant Travia, Procedural Due Process, 42 U.S.C. § 1983
  n.  Count XIV: Defendant Travia, Substantive Due Process, 42 U.S.C. § 1983
  o.  Count XV: Defendant IDOT, Termination in Violation of the State Officials and Employees Ethics Act, 5 ILCS 430/15-10.

Ex. 1, Second Am. Compl., ECF No. 48 [hereinafter Ex. 1, Second Am. Compl.]

  2.  Jurisdiction is proper over counts I-XIV. Ex. 2, Answer to Pl.'s Second Amended Comp. ¶ 2, ECF No. 50 [hereinafter Ex. 2, Ans.]. Defendants deny that jurisdiction is proper over Count XV. *Id.*

## PARTIES

  3.  Plaintiff, Zenon McHugh, is a resident of Chicago, Illinois. Ex. 2, Ans. ¶ 4.

  4.  Illinois Department of Transportation ("IDOT") is an agency of the State of Illinois created to oversee and maintain the transportation systems of the State of Illinois. Ex. 2, Ans. ¶ 5.

  5.  As relevant to Plaintiff's Second Amended Complaint, Defendant Colleen Alderman was employed by the Illinois Department of Central Management Services ("CMS") as a Senior Labor Relations Administrator. Ex. 3, Deposition of Colleen Alderman at 17:17-25 (Feb. 19, 2020) [hereinafter Ex. 3, Alderman Dep.]; Ex. 2, Answer ¶ 11.

  6.  Beginning in January 2016, Defendant Hoffman was the Acting Director of CMS. Ex. 2, Ans. ¶ 10. Defendant Hoffman had no discussions with Defendant Alderman concerning Plaintiff's discipline or termination. Ex. 3, Alderman Dep. at 53:5-12. Rather, Defendant Alderman authorized Plaintiff's discharge and signed on behalf of Defendant Hoffman. *Id.* at 46:5-15, 48:3-19, 47:10-19.

  7.  As relevant to Plaintiff's Second Amended Complaint, Defendant Fortmann was the Deputy Director of Highways and Region One Engineer for IDOT. Ex. 2, Ans. ¶ 12. Defendant Fortmann was informed and updated as to the status of Plaintiff's discipline. Ex. 4, Deposition of Georgina Syas at 36:1-9 (Feb. 21, 2020) [hereinafter Ex. 4, Syas Dep.]. Defendant Fortmann was not present at Plaintiff's pre-disciplinary hearing. Ex. 2, Ans. ¶ 81.

  8.  As relevant to Plaintiff's Second Amended Complaint, Georgina Syas was the Personnel Services Manager with IDOT. Ex. 2, Ans. ¶ 13. As Personnel Services Manager, Defendant Syas was involved in the discussions surrounding the appropriate levels of discipline for IDOT employees. Ex. 4, Syas Dep. 12:16-13:8. Defendant Syas did not participate in and was not aware of any follow up investigation conducted by IDOT. Ex. 4, Syas Dep. 42:2-7.

9. As relevant to Plaintiff's Second Amended Complaint, Defendant Bruce Harmening was employed by IDOT as the Bureau Chief of Investigations and Compliance in the Office of Finance and Administration, where he served as a liaison with the Inspector General's Office and oversaw investigations and had multiple direct reports. Ex. 5, Deposition of Bruce Harmening at 13:20-15:9 (Feb. 19, 2020) [hereinafter Ex. 5 Harmening Dep.]; Ex. 2, Ans. ¶ 14. In this role, Defendant Harmening reported directly to Jeff Heck, the Director of the Office of Finance and Administration. Ex. 5, Harmening Dep at 14:5-8. Defendant Harmening was not involved in any decision making related to Plaintiff's discipline or termination, nor did he attend or participate in Plaintiff's August 5, 2016, pre-disciplinary hearing. Ex. 5, Harmening Dep. 18:5-25, 34:3-8; Ex 2, Ans. ¶¶ 116-117. Harmening was aware of and gave general direction on what records to review in IDOT's follow up investigation, which was conducted by Jason Dozier, and which, upon completion, Defendant Harmening provided to Jeff Heck. Ex. 5, Harmening Dep. 37:17-40:16; Ex. 6, June 7, 2016 Letter with June 3, Investigative Summary Report.

10. As relevant to Plaintiff's Second Amended Complaint, Lisa Heaven-Baum was the Acting Bureau Chief of Traffic Operations for IDOT. Ex. 2, Ans. ¶ 15. Defendant Heaven-Baum did not participate in IDOT's follow up investigation. Ex. 7, Deposition of Linda Heaven-Baum at 27:4-6 (Feb. 27, 2020) [hereinafter Ex. 7, Heaven-Baum Dep.]

11. Defendant Travia was named the Engineer of Operations of IDOT in approximately August 2015. Ex. 2, Ans ¶ 16. Defendant Travia was involved in discussions concerning the appropriate level of discipline for Plaintiff. Ex. 8, Deposition of Stephen Travia 10 (Feb. 21, 2020) [hereinafter Ex. 8 Travia Dep.] 50:2-52:7, 54:23-55:5, 56:18-57:18. Defendant Travia was also aware of a follow up investigation. Ex. 8, Travia Dep. 73:13-20.

## UNCONTESTED FACTS

**Plaintiff's Job Duties**

12. Plaintiff began his career with IDOT as a Highway Maintainer in 2001. Ex. 9, Dep. of Zenon McHugh (Feb. 7, 2020) [hereinafter Pl.'s Dep.] at 18, 29:4-9; Ex. 10, OEIG Final Report p. 7; Ex. 2, Ans. ¶ 17.

13. In 2008, Plaintiff was promoted to the position of Lead Worker, wherein he supervised anywhere from 10 to 18 Highway Maintainers. Ex. 9, Pl.'s Dep at 39:23-40:3, 40:18-21. Ex. 2, Ans. ¶ 18. As a Lead Worker, he reported to the Lead Lead Worker. Ex. 9, Pl.'s Dep. 44:8-15; Ex. 3, Alderman Dep. 25:23-25.

14. In 2012, Plaintiff was promoted to Lead Lead Worker ("LLW"). Ex. 11, January 4, 2012 Letter. Plaintiff received additional compensation and responsibilities. Ex. 12, January 16, 2012 Personnel Transaction; Ex. 11, January 4, 2012 Letter; Ex. 13, Internal Personnel Request; Ex. 7, Heaven-Baum Dep. 14:15-23 ; Ex. 9, Pl.'s Dep 69:4-9. ETP Lead Workers reported directly

to Plaintiff, a LLW. Ex. 10, OEIG Final Report IDOT p. 4. Highway Maintainers also report to both Lead Workers and Lead Lead Workers. Ex. 9, Pl.'s Dep. at 153:15-18; Ex. 3, Alderman Dep. 25:23-25. As a LLW, Plaintiff reported to Patrol Managers, including John Gonzalez. Ex. 8, Travia Dep. 17:24-18:3; Ex. 10, OEIG Final Report, at 4.

15. As an LLW at ETP, Plaintiff's duties included, but were not limited to, supervising Lead Workers and Highway Maintainers, issuing work rule violations, advising his immediate supervisor regarding performance of his staff, ensuring conformance with departmental policies and procedures, and preparing incident reports. Ex. 11, January 4, 2012 Letter; Ex. 13, Internal Personnel Request; Ex. 14, Highway Maintenance Lead Lead Worker Position Description; Ex. 9, Pl.'s Dep at 71:15-71; Ex. 7, Heaven-Baum Dep. at 14:18-23. Plaintiff additionally continued to have the same duties and responsibilities of a trainer and Lead Worker, and was tasked with, *inter alia*, "mak[ing] sure the men were doing work." Ex. 9, Pl.'s Dep 71:15-71, 72:17-24; 156:21-24; Ex. 3, Alderman Dep. 21-22:19, 25:9-12; Ex. 8, Travia Dep. 28:22-29:5.

16. Traffic Assist Reports detail each instance of roadside assistance and include the following information: the date of the assist; the driver's arrival and departure time; the driver's truck and badge numbers; the reason for the assist; type of assistance provide; location of assist; license plate of the vehicle being assisted; and the ISP squad number, if present. Ex. 10, OEIG Final Report p. 6; Ex, 9, Pl.'s Dep. at 61:24-62:6, 62:12-19; 65:20-23; Ex. 8, Travia Dep. at 29:19-30:3, 30:15-31:6. Plaintiff was expected to create Assist Reports if he was the first responder to a scene. Ex. 8, Travia Dep. at 99:4-10

17. Part of Plaintiff's job duties as an LLW was to report the information submitted on the Assist Reports to his superiors. Ex. 9, Pl.'s Dep. 73:23-77:3. Plaintiff testified that he "never really looked at the reports. I took their sheet, wrote it on a piece of paper, and let it go." Ex. 9, Pl.'s Dep 75:14-22; 75:23-76:5, 76:14-77:3, 177:13-16; Ex. 10, OEIG Final Report, p. 6-7. Plaintiff acknowledged that the reports were supposed to be accurate. Ex. 9, Pl.'s Dep. 177:13-16. Ex. 15, Investigative Summary Report, p. 4; Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23.

18. As a supervisor, Plaintiff never talked to his subordinates about the need for the Assist Reports to be accurate. Ex. 9, Pl.'s Dep. at 186:4-13. When Plaintiff was a trainer, he did discuss the need for accuracy. *Id*.

**Policies and Procedures**

19. Throughout his employment, Plaintiff was a member of the Teamsters Local 700 Union and subject to a Collective Bargaining Agreement. Ex. 9, Pl.'s Dep. at 80:13-24, 81:105; 81:18-20. Ex. 16, CBA at 2. Plaintiff was also subject to IDOT's Personnel Policies Manual, ETP Policies and Procedures, and the Illinois Ethics Act, 5 ILCS 430/1 *et seq*. Ex. 17, IDOT's Personnel Policies Manual; Ex. 18, IDOT's ETP Policies and Procedures; Ex. 19, Manual Receipt.

20. Plaintiff understood that if he had any questions about his responsibilities under IDOT's Personnel Policies Manual it was his responsibility to ask his supervisor for clarification

or assistance. Ex. 19, Manual Receipt; Ex. 9, Pl.'s Dep. at 133:11-16; 132:16-20; 134:1-9; *see also* Ex. 17, Personnel Policies Manual, at IDOT at 8.

21. Under the CBA, the requirement to utilize progressive discipline, starting with a written reprimand, does not apply when there is an offense which indicates "some significant shortcoming which renders the employee's continuance in his position in some way detrimental to the Employer or his specific employing agency." Ex. 16, CBA at 11.

22. IDOT's Personnel Policy Manual includes a preface stating that the Manual:

does not constitute a contract of employment in whole or in part. The department reserves the right to add, amend, or delete any benefit or policy stated herein at any time, except as otherwise committed to by state and federal law, collective bargaining agreements and the Department of Central Management Services Personnel Rules." Ex. 17, Personnel Policy Manual.

23. IDOT's Policies and Procedure call for progressive discipline, except where "an infraction may be of such a nature as to warrant the initiation of more severe actions immediately." Ex. 17, Personnel Policy Manual at 85; Ex. 4, Syas Dep. at 22:5-13; Ex. 8, Travia Dep. at 33:20-34:10; Ex. 7, Heaven-Baum Dep. at 16:7-15. Termination is permitted without progressive discipline if the "employee's offense is serious enough in nature to warrant dismissal." Ex. 17, Personnel Policies Manual at 87.

24. The Personnel Policies Manual section on "Responsibilities" states: "All department employees are required to adhere to and comply with Departmental Orders . . . . Failure to do so could result in disciplinary action, up to and including discharge." This section further states, "Supervisors are expected to exercise proper supervision over subordinates. Supervisors shall take corrective action when warranted and address/report misconduct and/or rule violations of subordinates in a fair, consistent, and equitable manner." Ex. 17, Personnel Policies Manual at 59.

25. The Personnel Policies Manual section on "Employee Ethics" states:

Employees shall comply with all provisions set forth in the State Officials and Employees Ethics Act (5 ILCS 430). Employees of the department are subject to a higher standard of conduct and scrutiny than most citizens. The efficient operation of the department requires public trust and confidence in its employees. Employees shall conduct themselves and their business to the highest possible ethical standards that reflect professional management and/or engineering practices. Ex. 17, Personnel Policies Manual at 60.

26. The Personnel Policies Manual section on "Work Performance" explains:

Employees shall perform their duties to the best of their abilities and cooperate with others in the performance of their duties as assigned. Inattention to work, including but not limited to sleeping, loitering or loafing shall not be tolerated. Employees are expected to possess and demonstrate the skills and abilities necessary to perform the duties and responsibilities of their position. Work assignments shall be completed accurately in a timely fashion and with good workmanship and judgment. Ex. 17, Personnel Policies Manual, p. 64.

**Plaintiff's Training**

27. As a Highway Maintainer, Plaintiff had "a lot of training," in a classroom, which lasted approximately three to six months and included, *inter alia*, explanation of the ETP manual and workplace policies, instruction on how to use the radio, and how to fill out assist reports. Ex. 9, Pl.'s Dep. at 30:13-31:16, 32:10-18, 32:24-33:17; 61:1-10. After completing the class room training, for an additional two to three months, Plaintiff shadowed a more senior Highway Maintainer as part of his training. Ex. 9, Pl.'s Dep 33:18-34:5; 35:12-19.

28. From 2003 through 2015, whenever new employees were hired, Plaintiff would train new Highway Maintainers, including about how to properly fill out assist reports. Ex. 9, Pl.'s Dep. 26:14-17, 47:24-44:8; 48:23-49:4, 53:8-10; 53:17-24; 65:24-65:21, 66:6-11.

29. When Plaintiff became a Lead Worker, his training included on the job instruction by a Lead Lead Worker. Ex. 9, Pl.'s Dep. at 46:19-24, 47:4-10. As a Lead Worker, he was instructed to monitor his subordinates, advise supervisors regarding the performance of subordinates, and providing guidance and direction to staff in the completion of their duties. Ex. 9, P.'s Dep 59:14-21; Ex. 20, Job Description, Lead Worker; Ex. 4, Syas Dep. at 53:7-15.

30. For the position of Lead Lead Worker, Plaintiff was trained on the job by his supervisors. Ex. 21, Pl.'s Answers to Defs.' First Set of Interrogs. No. 11, at p. 8 [hereinafter Ex. 19, Pl.'s Ans. to Defs.' Int.]; Ex. 4, Syas Dep. 53:7-54:1.

**Office of Executive Inspector General Investigation**

31. On June 27, 2011, upon receiving information that IDOT discovered discrepancies during an internal audit, the Office of the Executive Inspector General ("OEIG") began an investigation into ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 10, OEIG Final Report at 2.

32. As a result of the findings concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 10, OEIG Final Report at 2-3, 1076-77; Ex. 6, June 7, 2016 Letter with June 3, 2016 Memorandum; Ex. 5, Harmening Dep. 27:7-23; 20:11-16.

33. OEIG reported that drivers informed them that false Assist Reports were submitted, in part, on account of quotas set by management, and that many of these drivers believed their ETP supervisors were aware that drivers were making up Assist Reports. Ex. 10, OEIG Final Report 6, 16 and 21-22. Assist Report data is frequently used to justify the number of trucks ETP needs in its fleet, as well as other budgetary concerns. Ex. 10, OEIG Final Report p. 2, 7, and 27.

34. Plaintiff informed his subordinate Highway Maintainers that they should aim to complete six assist reports at night, and ten assist reports during the days and afternoons. Ex. 9, Pl's Dep. 77:24-78:10, 77:23-78:24.

35. Plaintiff supervised seven of the twelve Highway Maintainers interviewed by the OEIG on his regular night shift in or around 2014, and at some point supervised the other four Highway Maintainers that were interviewed when they worked the night shift. Ex. 9, Pl.'s Dep. 102:18-24; 144:17-21.

36. Plaintiff was advised that he was going to be interviewed by the OEIG and was made aware of the Administrative Rights allotted to state employees, which he acknowledged and signed. Ex. 22, Administrative Rights – State Employees; Ex. 9, Pl.'s Dep. at 100:14-19; 104:12-24, 101:1-5. Prior to his interview, Plaintiff acknowledged that the information he shared during the interview could subject him to discipline, and that he was obligated to tell the truth or he may be subject to disciplinary action and Plaintiff agreed. Ex. 22, Administrative Rights – State Employees. Ex. 9, Pl.'s Dep. 106:21-107:7, 107:12-14; 104:12-24.

37. On December 16, 2014, after the interviews of his subordinates, Plaintiff was interviewed by OEIG Investigators Francis Foley and Colleen Thomas. Ex. 23, Defs.' Am. Answers to Pl.'s Interrogs. Int. ¶ 4; Ex. 9, Pl.'s Dep. at 100:14-19; 103:17-22; Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23, Ex. 2, Ans. ¶ 20; Ex. 15, OEIG Investigative Report

38. Plaintiff told the OEIG investigators that he "generally does not know what his drivers are doing unless he is actually following them." Ex. 15, OEIG Investigative Report; Ex. 10, OEIG Final Report, p. 24. Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23

39. Plaintiff testified that the OEIG Investigative Report of Plaintiff's Interview was an accurate representation of his discussions with the investigators. Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23.

40. Plaintiff informed the investigators that drivers were expected to meet a certain number of assists on their shifts, as the number of assists made was tied to the funding received by ETP. Ex. 15, OEIG Investigative Report IDOT, at 4; Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23.

41. Plaintiff informed the OEIG investigators that "nobody really checks and nobody really cares about the validity of the information" the drivers provided in assist reports, and that

7

he was aware some drivers "have made stuff up." Ex. 15, OEIG Investigative Report at 1-4; Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23.

42. Plaintiff explained to the investigators that "drivers are instructed not to use the same license plate number" in fabricating their assist reports "because they will get caught." Ex. 28, OEIG Investigative Report at 4. Ex. 10, Pl.'s Dep. at 111:4-10, 183:12-23.

43. Plaintiff informed OEIG investigators that he "do[esn't] care about assist sheets," that it was not his "job," nor anyone else's, to ensure the Assist Reports were truthful or accurate. Ex. 10, OEIG Final Report at 25; Ex. 15, OEIG Investigative Report, at 4. Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23.

44. Plaintiff also testified that he informed the OEIG that some tasks were above his pay grade. Ex. 9, Pl.'s Dep. 184:4-17. OEIG reported that Plaintiff explained, "If no one is looking, it's not a problem." Ex. 10, OEIG Final Report at 26, 37; Ex. 15, OEIG Investigative Report IDOT, at 4. Ex. 9, Pl.'s Dep. at 111:4-10, 183:12-23.

45. Plaintiff testified that he does not believe he exposed any violations of law, rules, or regulations by any state employees during the interview, and he advised the investigators of everything he knew. Ex. 9, Pl.'s Dep. at 111:20-112:11.

46. Plaintiff testified that he did not tell anyone, other than his attorney, that there was any "mismanagement at the highest levels" of IDOT. Ex. 9, Pl.'s Dep. at 154:20-155:15 *see also* Ex. 21, Pl.'s Ans. to Defs'. Int. 9, p. 7.

47. The OEIG found that "ETP managers either knew of or suspected the reporting of false assists by drivers but did nothing about it, or chose to purposefully insulate themselves from the knowledge of this systematic problem." Ex. 10, OEIG Final Report at 35.

48. On January 19, 2016, the OEIG concluded its investigation and provided IDOT Secretary Randall S. Blakenthorn with the Final Summary Report ("Report"), which included findings that multiple ETP Highway Maintainers regularly submitted falsified work documents from 2002-2015, some drivers failed to perform their work duties, and that several managers, including Lead Workers, Lead Lead Workers, and Patrol Managers failed to adequately supervise their subordinates. Ex. 6, June 7, 2016 Letter with June 3, 2016 Memorandum; Ex. 5, Harmening Dep. 24:23-27:1; Ex. 23, Def's Ans. to Pl.'s Int. Nos. 3, 4, p. 2; Ex. 2, Ans. ¶ 25, Ex. 24, IDOT 3171-3217, at IDOT 3172; Ex. 10, OEIG Final Report, at 43. Jeff Heck also provided this Report to Omar Osman, Director of Highways. Ex. 24, IDOT 3171-3217, at IDOT 3171.

49. This Report was later made publicly available. *See*, Founded OEIG Investigative Reports, https://www2.illinois.gov/oeig/investigations/Documents/11-00964_Shealey_et_al.pdf.

50. In its Report, OEIG found that

several ETP supervisors were either aware or suspicious that drivers had been submitting false and fraudulent Assist reports on a regular basis for years, but did nothing to prevent, control, or eliminate the practice. Instead, managers continued to push drivers to perform more assists without any checks to ensure driver accuracy or honesty. ETP management fostered an environment where wrongdoing was accepted and encouraged. Ex. 10, OEIG Final Report p. 2.

51. The OEIG determined that Plaintiff violated the provision in the IDOT Personnel Policies Manual regarding supervisor responsibilities and IDOT's policy on "Work Performance." Ex. 10, OEIG Final Report at 37-38, 42. The OEIG determined that Plaintiff "fail[ed] to adequately supervise and manage ETP drivers, and prevent the commission of serious fraud over the course of several years." Ex. 10, OEIG Final Report at 37-38, 42

52. The Report recommended to IDOT that it discipline and terminate several District One ETP employees, including Plaintiff. Ex. 2, Ans. ¶ 25. Ex. 10, OEIG Final Report at 42-43.

53. No Lead Lead Workers other than Plaintiff were named in the OEIG report or were named to have engaged in the misconduct described in the OEIG Report. Ex. 2, Ans. ¶ 48, 84, 102, 120, 138, 156; Ex. 10, OEIG Final Report at 4, 7, 23, 45.

**IDOT's Follow Up Investigation**:



**Plaintiff's Termination**

57. In February 2016, following the OEIG's investigation, Jeff Heck was informed that individuals alleged

9

████████████████████████████████ Ex. 25, February 1, 2016 Email, IDOT 3808-3811, at 3810. This was considered a potential grounds for termination. *Id.*

58. District 1 recommended the termination of Plaintiff on account of his conduct as a Lead Lead Worker and supervisor, including that he believed and stated that some supervisory tasks were "above his paygrade" and that he did not review assist reports, as he explained to the OEIG investigators. Ex. 4, Syas Dep. at 30:8-22., 41:15-19. Ex. 8, Travia Dep. at 51:17-52:17; Ex. 7, Heaven Baum Dep. at 32:12-7, 32:21-33:6.

59. On July 29, 2016, Plaintiff was advised that his pre-disciplinary meeting to discuss disciplinary charges of his poor supervision, violation of the Ethics Act, and poor work performance would take place on August 5, 2016, and that he was entitled to union representation at the meeting. Ex. 9, Pl.'s Dep. at 116:8-117:8; Ex. 26, July 29, 2016 Letter; Ex. 2, Ans. ¶ 26; Ex. 4, Syas Dep. at 35: 14-24.

60. On August 5, 2016, Plaintiff, Defendants Syas, Heaven-Baum, Travia, and Plaintiff's union representative attended Plaintiff's pre-disciplinary hearing for Plaintiff's failure to exercise proper supervision over his subordinates to ensure they were performing their duties and following applicable policies and rules. Ex. 27, Notice of Personnel Action; Ex. 2, Ans.¶ 26; Ex. 28, August 5, 2016 Pre-Disciplinary Meeting Transcript. Ex. 8, Travia Dep. 70:21-71:8, 73:2-73:20; Ex. 7, Heaven-Baum Dep. 25:18-26:7; Ex. 4, Syas Dep. 37:1-19.

61. At the August 5, 2016, pre-disciplinary meeting, Plaintiff was further advised of the charges against him, and invited to "explain [his] side of the story." Ex. 28, August 5, 2016 Pre-Disciplinary Meeting Transcript. Plaintiff was advised he could submit a "written rebuttal to the charges." Ex. 28, August 5, 2016 Pre-Disciplinary Meeting Transcript; Ex. 4, Syas Dep. 37:1-19.

62. Plaintiff's union representative spoke on Plaintiff's behalf at the Pre-Disciplinary Hearing. Ex. 32, August 5, 2016 Pre-Disciplinary Meeting Transcript. Ex. 4, Syas Dep. 37:1-19.

63. In response to the charges brought against him, Plaintiff was provided the opportunity to submit a written rebuttal, which gives the employee subject to discipline the opportunity to rebut any of the charges brought against him. Ex. 28, August 5, 2016 Pre-Disciplinary Meeting Transcript; Ex. 4, Syas Dep. 37:1-19. Plaintiff did not submit a written a rebuttal. Ex. 29, August 15, 2016 Email; Ex. 3, Alderman Dep. 36:1-15, Ex. 9, Pl.'s Dep. at 121:21-122:4; Ex. 28, August 5, 2016 Pre-Disciplinary Meeting Transcript; Ex. 8, Travia Dep. at 73:2-73:20.

64. Plaintiff was covered by the personnel code such that CMS needed to review the disciplinary packet and determine whether the allegations against him warranted discharge. Ex. 3, Alderman Dep. at 31:13-32:15, 33:1-3; Ex. 17, Personnel Policies Manual, IDOT 1170-1288, at 1265.

65. In evaluating whether the charges against Plaintiff were substantiated enough to warrant discharge, Defendant Alderman looked to whether there was a violation of any rule, the OEIG's Final Report, whether any rebuttal submitted by the employee, and any comments from the pre-disciplinary meetings. Ex. 3, Alderman Dep. at 34:5 – 35:11, 36:21-37:8; 31:14-22 31:6-11. Defendant Alderman was also provided with and considered Plaintiff's disciplinary history. Ex. 30, August 18, 2016 Email, at IDOT 3332; Ex. 3, Alderman Dep. at 41:1-5, 49:2-15.

66. On August 22, 2016, Plaintiff was issued a 30-day suspension pending the decision to discharge. Ex. 31, August 22, 2016 Letter with Statement of Charges; Ex. 9, Pl.'s Dep. at 125:11-16; Ex. 2, Ans. ¶ 30; Ex. 4, Syas Dep. at 44: 1-10.

67. Plaintiff's Statement of Charges included Poor Supervision, Violation of the Ethics Act, and Poor Work Performance, which amounted to violations of IDOT's Personnel Policy Manual Chapter 10-2 (Responsibilities); Chapter 10-3 (Section H); and Chapter 10-3 (Section Y). Ex. 31, August 22, 2016 Letter with Statement of Charges. Ex. 28, August 5, 2016 Pre-Disciplinary Meeting Transcript; Ex. 4, Syas Dep. 37:1-19.

68. On September 9, 2016, CMS informed Plaintiff that his discharge was approved and he was free to appeal the charges or submit a grievance. Ex. 32, September 9, 2016 Notice of Approval of Written Charges; Ex. 9, Pl.'s Dep. at 128:4-16; Ex. 3, Alderman Dep. at 47:1-17; Ex. 2, Ans. ¶ 34.

69. Plaintiff was discharged for cause effective September 14, 2016, on account of his Poor Supervision, Violation of the Ethics Act, and his Poor Work Performance, wherein Plaintiff "did not exercise proper supervision over [his] subordinates to ensure [his] drivers were performing their work duties and following all IDOT and ETP policies and rules," which amounted to violations of IDOT's Personnel Policy Manual Chapter 10-2 (Responsibilities); Chapter 10-3 (Section H); and Chapter 10-3 (Section Y). Ex. 31, August 22, 2016 Letter with Statement of Charges; Ex. 3, Alderman Dep. 47-49, 47:1-17, 48:3-24, 49:2-15, 48:3-24; Ex. 32, September 9, 2016 Notice of Approval of Written Charges; Ex. 10, OEIG Final Report, 1166; Ex. 2, Ans ¶ 25; Ex. 27, Notice of Personnel Action.

70. Jeff Heck, Director of the Office of Finance and Administration, was the ultimate decision maker on the level of discipline suggested on behalf of IDOT, which was approved by CMS, resulting in Plaintiff's termination. *See*, Ex. 33, August 2, 2016 Email; Ex. 5, Harmening Dep. at 44-45; Ex. 31, August 22, 2016 Letter with Statement of Charges; Ex. 3, Alderman Dep. at 48:3-24, 41:1-5, 49:2-15; Ex. 23, Def.'s Ans. to Interrog. No. 3, p. 2.

71. Plaintiff, with the assistance of his union, grieved his termination and suspension pending discharge, alleging his conduct "was in compliance with supervisory orders." Ex. 34, August 22, 2016 Grievance. On October 23, 2017, Plaintiff was informed by Teamsters Local 700

11

that the Union did not find his matter meritorious for arbitration, and accordingly, it would not be arbitrated. Ex. 35, Notice from Local 700; Ex. 9, Pl.'s Dep. 130:23-131:8, 131:9-12.

72. Plaintiff claims that the Individual Defendants violated Plaintiff's right to due process "by failing to apply step discipline and instead fast tracking the termination." Ex. 1, Second Am. Compl. ¶ 46. Plaintiff further testified that he "couldn't tell you" how each of the Individual Defendants allegedly deprived him of a property interest. Ex. 9, Pl.'s Dep. at 139:2-17. Plaintiff states further that the "precise nature and extent" of the individual Defendants' involvement is "unknown." Ex. 21. Pl.'s Ans. To Int. Nos. 5-7.

73. Plaintiff testified that he "do[esn't] even know" some of the Individual Defendants, and sued them merely "because their name is on the sheet that says they fired me." Ex. 9, Pl.'s Dep. at 99:21-100:2.

74. Plaintiff also contends that the Individual Defendants ""fail[ed] to conduct any investigation into the alleged misconduct or violations." Ex. 21, Pl.'s Ans. to Def.'s Int. No. 5, p. 4. Plaintiff further contends Defendants deprived Plaintiff of his cognizable property interest in continued employment by directing, approving, and otherwise participating in an inadequate investigation and disciplinary process leading to Plaintiff's suspension and discharge without just cause and in retaliation for Plaintiff's participation in the OEIG investigation," and violated his due process by "failing to conduct any investigation into the alleged misconduct or violations; failing to notify Plaintiff of his alleged misconduct or violations in a manner that conforms with the collective bargaining agreement, IDOT policies and procedures, ETP policies and procedures, and CMS Personnel Code and Rules; holding and participating in a sham pre-disciplinary hearing on August 5, 2016; failing to afford Plaintiff a meaningful opportunity to dispute the alleged misconduct or violations; and failing to apply progressive discipline." Ex. 21, Pl.'s Ans. To Int. Nos. 5-7.

75. Plaintiff claims that the Individual Defendants "mov[ed] for [Plaintiff's] termination and "determined to terminate" Plaintiff. Ex. 1, Am. Compl. ¶¶ 79-80, 97-98, 115-116, 133-134.

**Others disciplined**

76. On July 11, 2016, ███████████████████████████████████████████████████████████████████████████████████ Ex. 36, ███████████.

77. As a result of the OEIG investigation and findings, the following individuals were disciplined: ███████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
█████████████████████████████████ Ex. 37, September 16, 2016 Email; Ex. 5, Harmening Dep. 46:21-47:9; Ex. 38, IDOT 58; Ex. 23, Def. Ans to Int. No 5, p. 3; Ex. 10, OEIG Final Report p. 45, 92. Ex. 5, Harmening Dep.; Ex. 9, Pl.'s Dep. 151:8-17, 153:4-10.

78.    ████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
█████████████████████████████████ Ex. 10, OEIG Final Report p. 4, 92; Ex. 23 Def.'s Ans. to Pl's. Int. No. 5, p. 3.


|  |  |
|---|---|
| KWAME RAOUL<br>Attorney General<br>State of Illinois | Respectfully submitted,<br><br>By: s/ Abigail R. Durkin<br>ABIGAIL DURKIN<br>Assistant Attorneys General<br>General Law Bureau<br>100 W. Randolph St., 13th Fl.<br>Chicago, Illinois 60601<br>adurkin@atg.state.il.us<br>(312) 814-3846 |