IDOT 001170



# Personnel Policies
*Manual*

**State of Illinois**
Illinois Department of Transportation

**Illinois Department of Transportation**

0810-14, 05/14

IDOT 001171

# Illinois Department of Transportation

Office of the Secretary
2300 South Dirksen Parkway/ Springfield, Illinois/ 62764
Telephone 217/782-5597

June 9, 2015

MEMORANDUM TO ALL IDOT EMPLOYEES

SUBJECT:    Addendum to Personnel Policies Manual, 10-3 Band Vehicles
Operator Manual, 1-1, E (10) regarding Wireless
Communications in State Vehicles

Effective immediately, all Illinois Department of Transportation (IDOT) employees will be subject to the following addendum to the Personnel Policies Manual (PPM}, 10-3 B (June 3, 2014) and Vehicle Operators Manual (VOM) 1-1, E (10) (March 24, 2015).

PPM 10-3 Band VOM 1-1, E (10) shall be superseded with the below language:

Employees shall obey all laws and ordinances of the state of Illinois regarding the statewide ban on the use of cell phones and other electronic communication devices while driving, as set forth in 625 ILCS 5/12-610.1 and 12-610.2. The employer recognizes the statutory exceptions to this prohibition. Examples of these exceptions include but are not limited to the following:  operators of emergency vehicles while performing his/her official duties; a driver using an electronic communication device for the sole purpose of reporting an emergency situation and continued communication with emergency personnel during the emergency situation; a driver using an electronic communication device in hands-free or voice-operated mode, which may include the use of a headset; or a driver using two-way or citizens band radio services.

These changes become effective immediately. The PPM and VOM will be revised to reflect the changes in the near future.

Thank you for your cooperation in this matter.

Matt Magalis
Chief of Staff

IDOT 001172

# PERSONNEL POLICIES MANUAL

Prepared and Published by

Office of Finance & Administration
Illinois Department of Transportation

Springfield, Illinois
June 3, 2014

# TABLE OF CONTENTS

PREFACE ................................................................................................................................. v

DOCUMENT CONTROL AND REVISION HISTORY ........................................................... vi

CHAPTER 1:  GENERAL POLICIES AND RESPONSIBILITIES ............................................ 1

POLICY ............................................................................................................................ 1
RESPONSIBILITIES ......................................................................................................... 1
GUIDELINES .................................................................................................................... 1
EMPLOYEE CATEGORIES .............................................................................................. 2
DELEGATION OF AUTHORITY AND ASSIGNMENT OF RESPONSIBILITY ................... 2

CHAPTER 2: EQUAL EMPLOYMENT OPPORTUNITY/AFFIRMATIVE ACTION ................. 3

POLICY ............................................................................................................................ 3
RESPONSIBILITIES ......................................................................................................... 3
GUIDELINES .................................................................................................................... 4
DEPARTMENT-WIDE CIVIL RIGHTS PLANS .................................................................. 4

CHAPTER 3: RECRUITMENT, INTERVIEW AND SELECTION OF EMPLOYEES ................. 6

POLICY ............................................................................................................................ 6
RESPONSIBILITIES ......................................................................................................... 6
GUIDELINES .................................................................................................................... 6
RECRUITMENT ............................................................................................................... 6
APPLICATION .................................................................................................................. 7
SCREENING .................................................................................................................... 8
INTERVIEW CRITERIA AND QUESTIONS ...................................................................... 8
SELECTION ..................................................................................................................... 8
ANNOUNCEMENT ......................................................................................................... 10

CHAPTER 4:  CAREER SERVICES ..................................................................................... 11

POLICY .......................................................................................................................... 11
RESPONSIBILITIES ....................................................................................................... 11
GUIDELINES .................................................................................................................. 12
PROFESSIONAL EXAM/LICENSING REIMBURSEMENT .............................................. 14
TUITION REIMBURSEMENT PROGRAM ...................................................................... 15

CHAPTER 5:  EMPLOYEE EVALUATION AND DEVELOPMENT ........................................ 19

POLICY .......................................................................................................................... 19
RESPONSIBILITIES ....................................................................................................... 19
GUIDELINES .................................................................................................................. 19
TIMELINESS .................................................................................................................. 19
CODE EMPLOYEES PERFORMANCE EVALUATION SYSTEM ..................................... 20
CODE EMPLOYEES MERIT COMPENSATION PLAN (MC) ........................................... 20
TECHNICAL EMPLOYEES PERFORMANCE MANAGEMENT SYSTEM ........................ 21
PROBATIONARY REPORTS .......................................................................................... 22
FITNESS FOR DUTY EXAMINATIONS .......................................................................... 22

CHAPTER 6:  EMPLOYMENT AND PERSONNEL ACTIONS ............................................. 23

POLICY .......................................................................................................................... 23
RESPONSIBILITY ........................................................................................................... 23
GUIDELINES .................................................................................................................. 23

POSITION ANALYSIS ...................................................................... 24
PROMOTIONS AND VACANCIES ................................................... 24
REINSTATEMENTS ........................................................................ 24
TRANSFERS .................................................................................. 25
GEOGRAPHICAL RELOCATION ................................................... 25
INVOLUNTARY REDUCTION ......................................................... 25
VOLUNTARY REDUCTION ............................................................ 26
SEPARATION ................................................................................. 26
INDETERMINATE LAYOFF ............................................................ 26
TEMPORARY LAYOFF .................................................................. 27
CONTINUOUS SERVICE ............................................................... 28
RE-EMPLOYMENT LIST ................................................................ 28

**CHAPTER 7: HOURS OF WORK** ........................................................... 30

POLICY .......................................................................................... 30
RESPONSIBILITIES ....................................................................... 30
GUIDELINES .................................................................................. 30
FLEXIBLE SCHEDULES ................................................................ 31
REST AND LUNCH PERIODS ........................................................ 31
ABSENTEEISM .............................................................................. 31
FAMILY RESPONSIBILITY ALTERNATE WORK SCHEDULE ........ 31
OVERTIME ..................................................................................... 32
EQUIVALENT EARNED TIME (EET) .............................................. 33

**CHAPTER 8: EMPLOYEE BENEFITS AND SERVICES** ........................ 35

POLICY .......................................................................................... 35
RESPONSIBILITIES ....................................................................... 35
HEALTH, DENTAL, VISION AND LIFE INSURANCE PROGRAMS ... 35
STATE EMPLOYEES' RETIREMENT SYSTEM ............................... 35
WORKERS' COMPENSATION ....................................................... 36
MEDICAL SERVICES ..................................................................... 37
EMPLOYEE PERSONNEL RECORDS ........................................... 37
25-YEAR SERVICE RECOGNITION .............................................. 38
MEMBERSHIP AND DUES ............................................................ 39
SECURITY ...................................................................................... 39
PARKING ........................................................................................ 39

**CHAPTER 9: LEAVE ADMINISTRATION** ............................................... 40

POLICY .......................................................................................... 40
RESPONSIBILITIES ....................................................................... 40
GUIDELINES .................................................................................. 40
HOLIDAYS ..................................................................................... 41
VACATION ...................................................................................... 41
PERSONAL BUSINESS LEAVE ..................................................... 42
SICK LEAVE ................................................................................... 43
MATERNITY/PATERNITY LEAVE, ADOPTION LEAVE AND LEAVE IN THE EVENT OF A STILLBORN
CHILD ............................................................................................ 47
DISABILITY LEAVE ........................................................................ 47
FAMILY RESPONSIBILITY LEAVE ................................................ 49
FAMILY AND MEDICAL LEAVE ACT OF 1993 .............................. 50
ATTENDANCE IN COURT .............................................................. 53
MILITARY LEAVE ........................................................................... 54
DISASTER SERVICE LEAVE WITH PAY ....................................... 55
LEAVE TO ATTEND CONFERENCES AND MEETINGS OF ASSOCIATIONS AND SOCIETIES ........... 55

LEAVE TO TAKE EMPLOYMENT-RELATED EXAMINATIONS .......................... 55
EDUCATIONAL LEAVE ......................................................................... 56
OTHER EXCUSED ABSENCES .............................................................. 56
JOB ABANDONMENT ........................................................................... 57
LEAVE WITHOUT PAY .......................................................................... 57

**CHAPTER 10:  EMPLOYEE CONDUCT** ............................................... 59

POLICY ............................................................................................. 59
RESPONSIBILITIES ............................................................................. 59
GUIDELINES ...................................................................................... 59

**CHAPTER 11:  SEXUAL HARASSMENT POLICY** ................................ 65

POLICY ............................................................................................. 65
RESPONSIBILITIES ............................................................................. 65
GUIDELINES ...................................................................................... 66
PROCEDURES FOR FILING A COMPLAINT .......................................... 66
FALSE AND FRIVOLOUS COMPLAINTS ............................................... 66

**CHAPTER 12:  VIOLENCE IN THE WORKPLACE** ................................ 67

POLICY ............................................................................................. 67
RESPONSIBILITIES ............................................................................. 67
GUIDELINES ...................................................................................... 68

**CHAPTER 13:  ALCOHOL AND DRUG TESTING** ................................ 69

POLICY ............................................................................................. 69
RESPONSIBILITY ................................................................................ 69
GUIDELINES ...................................................................................... 69
DISCIPLINE ....................................................................................... 69
DRUG-FREE WORKPLACE ................................................................. 70

**CHAPTER 14:  VEHICLE OPERATION AND LICENSURE** ..................... 71

POLICY ............................................................................................. 71
RESPONSIBILITY ................................................................................ 71
GUIDELINES ...................................................................................... 71
DRIVING PERMITS ............................................................................. 73
VEHICLE RISK MANAGEMENT CONSIDERATIONS .............................. 74

**CHAPTER 15:  CONFLICT OF INTEREST** .......................................... 75

POLICY ............................................................................................. 75
RESPONSIBILITY ................................................................................ 75
GUIDELINES ...................................................................................... 75
OUTSIDE EMPLOYMENT ................................................................... 76
LIMITATIONS ON RETIRED EMPLOYEES ............................................ 77

**CHAPTER 16:  POLITICAL ACTIVITIES, CONTRIBUTIONS AND GIFT BAN** ......................... 78

POLICY ............................................................................................. 78
RESPONSIBILITIES ............................................................................. 78
GUIDELINES ...................................................................................... 78
GIFT BAN .......................................................................................... 80
ATTENDANCE AT EVENTS ................................................................. 82
REIMBURSEMENT ............................................................................. 83
STATEMENTS OF ECONOMIC INTEREST ........................................... 84

**CHAPTER 17:  DISCIPLINE** ...................................................................................**85**

POLICY ........................................................................................................................**85**
RESPONSIBILITIES ...................................................................................................**85**
GUIDELINES ...............................................................................................................**85**
GRIEVANCES ..............................................................................................................**88**
ARREST OR CRIMINAL INDICTMENT .....................................................................**90**
DISCIPLINE FOR CRIMINAL CONDUCT ..................................................................**90**
ACCESS TO DEPARTMENT PREMISES ...................................................................**91**

**CHAPTER 18:  LABOR – MANAGEMENT RELATIONS** ............................................**93**

POLICY ........................................................................................................................**93**
RESPONSIBILITIES ...................................................................................................**93**
GUIDELINES ...............................................................................................................**93**
DEALING WITH LABOR ORGANIZATIONS ..............................................................**93**
LIMITS OF A STEWARD'S AUTHORITY ....................................................................**93**
THE SUPERVISOR AND THE STEWARD ..................................................................**93**
UNION SOLICITATION ACTIVITIES ..........................................................................**93**
DISTRIBUTION OF UNION LITERATURE AND MATERIAL ......................................**94**
USE OF DEPARTMENT FACILITIES BY UNION ORGANIZATIONS .........................**94**
USE OF BULLETIN BOARDS BY UNION ORGANIZATIONS .....................................**94**

**CHAPTER 19:  TRAVEL REGULATIONS** ...................................................................**95**

POLICY ........................................................................................................................**95**
RESPONSIBILITIES ...................................................................................................**95**
DEFINITIONS ..............................................................................................................**96**
GUIDELINES ...............................................................................................................**97**
MEALS AND LODGING ...............................................................................................**98**
TRANSPORTATION ...................................................................................................**100**
OUT OF STATE TRAVEL ...........................................................................................**103**
OUT OF COUNTRY TRAVEL .....................................................................................**103**
SPECIAL EXPENSES ................................................................................................**103**
TRAVEL PREPARATION ............................................................................................**104**
EXCEPTIONS TO REGULATIONS .............................................................................**105**
MOVING EXPENSES ..................................................................................................**106**
RECRUITMENT AND INTERVIEW EXPENSES ........................................................**108**

**INDEX** .........................................................................................................................**109**

# PREFACE

This manual is provided as an appendix to Departmental Order 3-1: *Personnel Policies* to better acquaint you with the personnel policies of the Illinois Department of Transportation and does not constitute a contract of employment in whole or in part. The department reserves the right to add, amend or delete any benefit or policy stated herein at any time, except as otherwise committed to by state and federal law, collective bargaining agreements and the Department of Central Management Services' Personnel Rules.

The policies contained in this manual are current as of the date of issuance. Employees are responsible for ensuring use of the most current version of any policy. All current policy documents are available on the Policy Center site on InsideIDOT.

Directors, deputy directors, central bureau chiefs and supervisors will take the necessary steps to provide that all subordinate employees are aware of and are in compliance with these rules. Any questions as to the application or interpretation of these rules and the laws summarized herein should be referred to the Bureau of Personnel Management.

Consistent with historical practice and understanding, any employee whose position is exempt from *Rutan vs. Republican Party of Illinois*, 497 U.S. 62 (1990), or who is covered under the Executive portion of the Technical Pay Plan at the VIII, IX, or X levels, serves at the will of the Governor. Nothing in this manual shall be construed to limit the Governor's power to appoint, remove, or otherwise act with regard to such employees. However, in the event that such an employee is covered by a collective bargaining agreement, this provision does not purport to impact any rights governed by the collective bargaining agreement.

All department employees must comply with all departmental policy, including Departmental Order 3-1: *Personnel Policies* and the policies and rules contained therein.


### MISSION STATEMENT

*We will provide safe, cost-effective transportation for Illinois in ways that enhance quality of life, promote economic prosperity and demonstrate respect for our environment.*

### GUIDING PRINCIPLES

*We will accomplish our mission while making the following principles the hallmark of all our work:*

*Safety*
*Integrity*
*Diversity*
*Responsiveness*
*Quality*
*Innovation*

# DOCUMENT CONTROL AND REVISION HISTORY

The Personnel Policy Manual is reviewed during use for adequacy and updated by the Bureau of Personnel Management, as necessary. The approval process for changes to this manual is conducted in accordance with the procedures outlined in Departmental Order 1-1: *Order on Orders*.

Interim changes are communicated in the form of "Personnel Policy Manual Update" memorandums from the Bureau of Personnel Management to directors, deputy directors and central bureau chiefs, who are responsible for communicating changes to personnel under their direction. "Personnel Policy Manual Update" memorandums are distributed via hard copy and are available electronically on the Policy & Research Center Library site on InsideIDOT. Archived versions of this manual are available to examine in the Policy & Research Center, Room 320 of the Hanley Building.

**Electronic**

Portable Document Format (PDF) has been selected as the primary distribution format, and the official version of the manual is available on the Policy & Research Center Library site on InsideIDOT.

**Hard Copy**

This manual is no longer distributed in hard copy format. Employees who choose to print a copy of the manual are responsible for ensuring use of the most current version.

**Revision History**

| Revision Date | Description | Approval |
|---|---|---|
| June 3, 2014 | Chapter 3-4 updated to include the Diversity Recruitment and Outreach Section. | Tony Small |
| | Chapter 15-3 updated to include management's decision in recusal decisions and to minimize the use of blanket recusals. | |

# CHAPTER  1 - GENERAL POLICIES AND RESPONSIBILITIES

**1-1      POLICY**

The Department of Transportation provides personnel policies in order to increase understanding, convey expectations, minimize the need for independent personnel decisions on matters of department policy, and ensure uniformity throughout the department.

**1-2      RESPONSIBILITIES**

The Office of the Secretary of Transportation is responsible for administration of the Illinois Department of Transportation's personnel policies. The Director of Finance & Administration has been delegated the major responsibility for personnel activities and is assisted in this task by the Bureau of Personnel Management.

**1-3      GUIDELINES**

It is recognized that sound supervisor-employee relations are the basis for an effective personnel management program; therefore, the following basic personnel policies are established for the daily conduct of the affairs of the department.

A.      The department will seek employees on the basis of individual job requirements. It will select employees in such a manner that is free of unlawful discrimination and consistent with applicable affirmative action goals.

B.      Appraisal of work performance shall be made fairly and objectively on a continuing basis, and such appraisal shall be discussed with employees.

C.      The department will provide a compensation program based on the principal objectives of equity and competitiveness.

D.      Paid vacations and holidays, personal leave time and sick leave will be provided in accordance with governing regulations.

E.      Supervisors shall answer employees' questions and inform them of plans and policies affecting them and their work and of reasons for changes in methods.

F.      Employees shall have a fair and prompt opportunity to discuss problems with the supervisor immediately concerned. If prompt and satisfactory adjustment cannot be made, they shall have a right to have their dissatisfactions reviewed under established grievance and appeals procedures.

G.      Employees shall have the right, without interference, coercion, restraint or reprisal, to join, or refrain from joining, any lawful employee organization, association or union.

H.      Working conditions shall be made as safe and healthful as practicable.

I.      Unless specifically authorized, employees shall refrain from disclosing or discussing knowledge of official business acquired as a result of their employment.

**1-4     EMPLOYEE CATEGORIES**

Department employees are divided into three categories:

A.     Technical Employees. Those employees governed under the Illinois Department of Transportation's Technical Classification System and Pay Plan and are not covered by the Illinois Department of Central Management Services' Personnel Code. Some technical employees are covered by a Professional/Technical Collective Bargaining Agreement.

B.     Code Employees. Those employees governed under the jurisdiction of the Illinois Department of Central Management Services' Personnel Code and are not covered by the Illinois Department of Transportation's Technical Classification System and Pay Plan. Some Code Employees are covered by collective bargaining agreements.

C.     Contractual Employees. Contractual employees are bound by the terms and conditions enumerated in their employment contract with the department and, as such, are not required to sign Form PM 2540: Personnel Policy Manual Receipt or Form PM 2539: Personnel Policies Update Receipt.

**1-5     DELEGATION OF AUTHORITY AND ASSIGNMENT OF RESPONSIBILITY**

Effective delegation of authority and assigning of responsibility by managers enhances efficiency and strengthens the capacities of subordinate employees for future responsibilities. It accelerates the conduct of the department's business and enables higher levels of management to focus on matters of broader planning capacity for the improvement of the State's transportation facilities and services.

Managers and supervisory personnel will take every opportunity to assign appropriate authority and responsibility to their employees commensurate with each employee's development and potential. Authority and responsibility shall be delegated and assigned to the lowest organizational level consistent with these principles:

A.     The degree of authority and responsibility delegated and assigned must be in keeping with the parameters of the job, the risks involved, and abilities of the subordinate.

B.     Authority necessary to execute a delegated responsibility must be delegated by the manager and accepted by the subordinate.

C.     The subordinate employee accepting the responsibility shall be required to make decisions and to take appropriate action.

D.     The manager delegating authority continues to be accountable for his subordinate's decisions.

E.     Once a responsibility is assigned, both the manager and the subordinate have the added responsibility for interpreting it properly and mutually accepting performance accountability.

# CHAPTER 2 - EQUAL EMPLOYMENT OPPORTUNITY/AFFIRMATIVE ACTION

## 2-1    POLICY

A.    There shall be no discrimination, harassment, intimidation or retaliation in any employment practice based on race, color, national origin, religion, age, sex, marital status, disability, ancestry, sexual orientation, unfavorable discharge from military service or any other non-merit factor.

B.    No person shall, on the grounds of race, color, national origin, religion, age, sex, marital status, disability, ancestry, sexual orientation, unfavorable discharge from military service or any other non-merit factor, be excluded from participation in, be denied benefits of, or be subjected to discrimination and/or harassment under any program, including federally assisted programs, or activity sponsored, provided by or actively administered by the Illinois Department of Transportation.

C.    It is the policy of the department to ensure that applicants and employees are protected against discrimination if they have a disability, have a history of a condition which constitutes a disability, are perceived to have a disability or have a known relationship or association with an individual with disabilities. The department will reasonably accommodate the physical and mental limitations of otherwise qualified applicants and employees with disabilities when such accommodation does not impose undue hardship on the department.

D.    The department measures itself against specific objectives which will move its Title VI Program posture toward full and equal participation of minorities and females in all federally assisted programs administered by the department.

E.    Any violation of this policy could result in disciplinary action up to and including discharge.

## 2-2    RESPONSIBILITIES

A.    It is the responsibility of each employee to refrain from acts of discrimination, intimidation and/or harassment toward another employee or other individuals they may be in contact with while performing the duties and responsibilities of their job. Offending employees will be subject to disciplinary action, up to and including discharge.

All employees shall cooperate with the Bureau of Civil Rights in the investigation of allegations of civil rights violations. Failure to fully cooperate with an official civil rights investigation could result in disciplinary action up to and including discharge.

It is the responsibility of each employee to refrain from filing false or frivolous complaints.

B.    Each supervisor is responsible for maintaining the workplace free from acts of discrimination, intimidation and/or harassment. This is accomplished by promoting a professional environment and by dealing with acts of discrimination, intimidation and/or harassment as with all forms of employee misconduct. Specifically, a supervisor must address an observed incident of discrimination, intimidation and/or harassment, take prompt action to document it, investigate it, report it, end it, recommend appropriate disciplinary action, and observe strict confidentiality. This also applies to cases where an employee tells the supervisor about behavior considered to be acts of discrimination, intimidation and/or harassment but does not want to make a formal complaint. In addition, supervisors must ensure that no retaliation will result against an employee making a complaint. The Bureau of Civil Rights is available to consult with supervisors on the proper procedures to follow.

C.   Department management shall comply with the requirements of the department's *Affirmative Action Plan*, Departmental Order 3-2: Equal Employment Opportunity (EEO), the *Diversity Action Plan* and federal and state mandates. The proper application of this policy shall be a factor on which managers are evaluated.

D.   The Civil Rights Officer is responsible for guiding the department's efforts to develop, administer, monitor and report progress on established goals set forth in the department's Affirmative Action Plans to the Secretary of Transportation, or designee. The Bureau of Civil Rights will investigate all discrimination, intimidation and harassment complaints filed against the department.

E.   Each office, division and district shall have an EEO representative to assist in carrying out these policies. The EEO representative will work in conjunction with the Bureau of Civil Rights in the investigation of all allegations of discrimination, intimidation and harassment.

## 2-3   GUIDELINES

A.   Department management shall be fully committed to the department's Affirmative Action Plan and efforts to achieve equal employment opportunities.

B.   No qualified individual will be excluded from employment, appointment, training or promotion opportunities because of race, color, national origin, religion, age, sex, marital status, unfavorable discharge from military service, any other non-merit factor or disability, unless that disability prevents the employee from performing the essential functions of the position.

## 2-4   DEPARTMENT-WIDE CIVIL RIGHTS PLANS

The Bureau of Civil Rights has been delegated the responsibility of developing and supervising the administration and implementation of the state Affirmative Action Plan (AAP), the Federal Title VI and the Title VII Affirmative Action Plans.

A.   State Affirmative Action Plan

   1.   The state AAP is a detailed, results-oriented set of procedures resulting from an in-depth review of the agency's employment process which may impact upon full utilization of equal employment opportunities for minorities, females and individuals with disabilities.

   2.   This AAP shall be governed by Title VI and Title VII of the *Civil Rights Act of 1964* as amended, the *Civil Rights Act of 1991*, the *Americans with Disabilities Act of 1990*, the *Illinois Human Rights Act* and related statutes and regulations.

   3.   This AAP includes guidelines for employing individuals with disabilities. Numerical goals for individuals with disabilities, a physical access audit of the department's public facilities, reasonable accommodation policy and procedures for requesting an accommodation are included.

B.   Federal Title VI Affirmative Action Plan

   1.   Federal Title VI AAP shall ensure full compliance with Title VI of the *Civil Rights Act of 1964* and related statutes and regulations in all programs and activities. Title VI and related statutes require that no individual shall, on the grounds of race, color or national origin be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance.

   *2.*   Overall development and administration of the Title VI AAP shall be governed by Title VI of the *Civil Rights Act of 1964*, as amended and in accordance with 49 CFR Part 21 (FHWA), FTA Circular 4702.1B, 14 CFR Part 152 (FAA) and 49 CFR 265 (FRA) and the *Americans with Disabilities Act of 1990*. It shall be further governed in accordance with *SAFETEA-LU.*

C.    Federal Title VII Affirmative Action Plan

   1.    The Federal Title VII AAP is designed to align Federal Highway Administration (FHWA) efforts on contract compliance and the department's internal employment practices as it relates to minorities, females and individuals with disabilities.

   2.    The AAP shall be governed by Title VII of the *Civil Rights Act of 1964* as amended, the *Civil Rights Act of 1991* and the *Americans with Disabilities Act of 1990*.

# CHAPTER 3 - RECRUITMENT, INTERVIEW AND SELECTION OF EMPLOYEES

**3-1     POLICY**

The Illinois Department of Transportation's employment policy is to attract and retain competent personnel and to be an Equal Opportunity Employer.

**3-2     RESPONSIBILITIES**

A.    The Bureau of Personnel Management has primary responsibility for the development and application of the department's recruitment, interview, selection, and placement programs of all employees.

B.    All employment functions are ultimately the responsibility of the Bureau of Personnel Management. All requests for external advertisement of departmental vacancies must be submitted to the Bureau of Personnel Management for approval.

C.    When a new employee reports for work, it shall be the responsibility of the director, deputy director, or central bureau chief or their designee to provide the employee with an overview of the rules, structure, functions and mission of the department.

**3-3     GUIDELINES**

Qualified applicants will be selected from those seeking employment based on established standards for the job, applicable affirmative action goals, laws, rules and regulations, collective bargaining agreements and executive orders.

**3-4     RECRUITMENT**

A.    Civil Engineer and Engineering Technician Recruitment.

   1.    The director, deputy director or central bureau chief will submit a written request to the Bureau Chief of Personnel Management with information regarding Civil Engineer Trainee and Engineering Technician I positions to be filled.

   2.    The Bureau of Personnel Management and the Diversity Recruitment and Outreach Section will review this information in order to formulate a recruitment strategy which will provide a sufficient number of Civil Engineer Trainee and Engineering Technician I candidates to interview for the positions to be filled.

   3.    Offers of employment may be made to qualified candidates by authorized department representatives after an appropriate interview process and pending the final approval of the Bureau Chief of Personnel Management. (The final approval will include the ePAR process.)

   4.    Prospective employees may be reimbursed for reasonable expenses (transportation, lodging, meals and per diem, when applicable) incurred during the recruitment and interviewing process. Such expenses must be supported by receipts. The expenses shall be paid by the office authorizing the travel as contractual services expenditure. Any reimbursement paid to the prospective employee is also subject to the 60-day submittal period as set by the IRS (see Chapter 19: Travel Regulations). These expenditures shall be within the maximum rates established in the Reimbursement Schedule of the "Travel Guide for State Employees" (latest version).

B.      Other Recruitment. Other classifications will be recruited as necessary. All outside recruiting activity shall be coordinated through the Bureau of Personnel Management and the Diversity Recruitment and Outreach Section.

## 3-5      APPLICATION

A.      Position Qualifications. To be considered for employment in the department, a person must meet required qualifications for the position. Qualifications vary in accordance with each position.

B.      Applications

1.      Persons applying for a technical position with the department will complete Form PM 1080: Employment Application for Technical Positions, which is available on the Forms Master List on InsideIDOT.

2.      The application process for code positions with the department is subject to applicable collective bargaining agreements and the CMS Personnel Code.

3.      All completed applications become a part of the employee's permanent record.  All information submitted on the application form is subject to verification.

4.      Information obtained through the verification process is highly personal and shall be treated confidentially.

5.      Qualified employees on leave of absence will be allowed to apply, interview and be considered for filling of vacancies. This will allow employees on a leave, for any reason, the opportunity to seek other employment options.  However, if employees on leave are selected for a position, they must be available to begin employment within two weeks from the date of acceptance of the offer, unless otherwise modified by contract.

6.      The department reserves the right to discipline an employee up to and including discharge upon finding material falsification of facts on an employee's application or upon discovery of information which, if known at the time of employment, would have rendered the individual unacceptable and/or unqualified for the position.

C.      Age Requirement. The department will not employ persons under 16 years of age. The department may employ persons between the ages of 16 and 18, depending upon the need for such employees. The department determines which specific jobs or work tasks such employees can fill or perform. Such determination shall take into consideration the health, welfare and safety of the aforementioned employees, other department employees and the effect that the assignment of such employees would have on the department's overall operation.

D.      Citizenship Requirements. Proof of United States citizenship or authorization to legally work in the United States is a requirement for employment with the department and is recorded using Form I-9: Employment Eligibility Verification. The department shall not sponsor any job applicant for permanent residency or citizenship.

E.      Proof. Proof of age, citizenship or authorization to legally work in the United States, education, required licenses and/or current residence may be requested of an applicant or any department employee. Any applicant who fails or refuses to supply or who falsifies required documentation shall not be considered for employment.

F.    Interviewing Limitations

    1.    Internal. Permanent, certified department employees interviewing for another permanent position within the department shall be allowed to do so four times within a 12-month period without loss of pay. Probationary employees may only apply for vacant departmental positions which are designated for external posting. Supervisory approval to be released from work shall be subject to the operating needs of the department. The time allowed for this will include travel to and from the location of the interview, if necessary. However, no state vehicle, overnight lodging, equivalent earned time, overtime or per diem will be provided.

    2.    External. Department employees must use approved benefit leave time to interview for jobs outside of the department during regular work hours.

## 3-6    SCREENING

The Bureau of Personnel Management may elect to utilize a screening process in an effort to obtain a manageable number of interviewees. The screening criteria must be based on job-related education and/or experience as determined by the position's official job description. This can be done through an application/resume review, a questionnaire and/or a condensed screening interview. The Bureau Chief of Personnel Management shall approve the use of screening and the appropriate criteria.

## 3-7    INTERVIEW CRITERIA AND QUESTIONS

All hiring criteria and interview questions shall be conducted in accordance with the following procedures administered by the Bureau of Personnel Management and shall comply with all applicable laws. The primary purpose of interviews is to determine those candidates who are most qualified for the position.

A.    The criteria to be used and questions to be asked for each interview shall be developed by the hiring office/division and submitted to the Bureau Chief of Personnel Management for approval prior to posting.

B.    The preparation and dissemination of hiring criteria and interview questions is confidential and should not be shared or discussed with anyone outside of the hiring process.

C.    Any unauthorized release of hiring criteria or interview questions could result in disciplinary action up to and including discharge.

## 3-8    SELECTION

All selections shall be made on the basis of qualifications to fulfill job responsibilities and duties.  A person who has previously been discharged or has entered into an agreement with the department not to seek future employment shall not be rehired. A person who has been denied employment as a result of a pre-employment testing conducted pursuant to the department's policy and procedures outlined in the Alcohol/Drug Testing Policy and Procedures Manual shall not be eligible for employment with the department in any capacity, at any future time.

A.    Nondiscrimination

    1.    Applicants for employment will be selected on the basis of qualifications with consideration of applicable affirmative action goals. See Chapter 2: *Equal Employment Opportunity/Affirmative Action*.

    2.    Affiliation or lack of affiliation with a union or an employee organization shall not influence an applicant's acceptability or an employee's status with the department unless specified otherwise in a collective bargaining agreement.

B.      Employment of Relatives

     1.      The department considers it improper for a supervisor to oversee a relative. Therefore, no applicant or employee may be considered for or hold a position wherein s/he would be in a superior or subordinate relationship with a relative. Relatives include spouse, domestic partner, parent, child, step-child, brother, sister, grandparent, grandchild, aunt, uncle, niece, nephew, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law.

     2.      Employees prohibited by the provision of 3-8 B.1. from holding a superior or subordinate position are also prohibited from holding a position which involves a "check and balance" function; i.e., the review and approval of said employee's work.

C.      Post-Offer/Pre-Employment Physical Examinations

     1.      Physical Fitness Standards. There are certain types of work in the department for which applicants must satisfy certain physical fitness standards, e.g., positions requiring arduous physical labor, positions requiring continuous lifting and positions which include the operation of mobile equipment other than passenger cars or trucks of 3/4 ton or less capacity. Such applicants must meet the department's vision requirements and/or pass the post interview physical examination taken at the department's expense and given by a medical doctor selected by the department. This requirement also applies to any post-offer drug/alcohol examination taken at the department's expense in accordance with the policy and procedures outlined in the department's Alcohol/Drug Testing Policy and Procedures Manual.

     2.      Aircraft Operations. Aircraft Operations Personnel operating departmental aircraft must possess a current Federal Aviation Administration (FAA) medical certificate. The class of FAA medical certificate is determined by the pilot certificate requirements as referenced in the department's *Air Operations Manual*. Applicants for positions which require a current pilot certificate must possess an appropriate and current FAA medical certificate at the time of the interview. The selected applicant must pass the post interview drug/alcohol examination taken at the department's expense under the department's policy and procedures covered in Chapter 13: *Alcohol and Drug Testing*. The department must obtain records on pilot applicants from the FAA, the National Driver Registry, and the applicant's previous employers over the past five years as mandated by Public Law 104264, *Pilot Records Improvement Act of 1996*. Applicants must sign release of information forms in order to comply with this Act. If the records are not received within 90 days or if unfavorable information is received on the applicant, they may not be hired.

D.      Temporary/Interim Assignment Pay

     1.      Employees are not eligible for temporary/interim assignment pay until six months after a promotion or hire unless superseded by a collective bargaining agreement.

     2.      Should a technical employee interview for a technical position in which s/he is currently receiving temporary/interim assignment pay and decline the hiring offer, temporary/interim assignment pay currently received by that employee for that technical position will cease immediately upon their decline. Administrative staff shall notify the Bureau of Personnel Management of the cessation date via email for temporary assignment pay and via PAF for interim assignment pay.

IDOT 001188

**3-9 ANNOUNCEMENT**

The Bureau of Personnel Management shall prepare and distribute appointment announcements for Level VI and VII positions. The Bureau of Personnel Management shall coordinate the preparation and distribution of appointment announcements from the Secretary for positions at Level VIII and above. Appointment announcements for any other position(s) shall be requested through the Bureau of Personnel Management. Timing of appointment announcements shall be coordinated with the employing office. Every attempt shall be made to notify unsuccessful applicants prior to the official position announcement being issued. Notifications to unsuccessful applicants can be done orally or in writing and shall be coordinated with the Bureau of Personnel Management.

# CHAPTER 4 - CAREER SERVICES

## 4-1    POLICY

It is the policy of the Illinois Department of Transportation to provide accessible, effective, and manageable career services to employees to ensure each individual has the opportunity to maximize their potential and fully contribute to the department's mission. Services are aimed at maximizing employee retention and career success. The department emphasizes the requirement to maintain professional and technical competence through the utilization of career guidance and support services as well as continuing training and education services.

Career service efforts should contribute to both the mission of the department and the personal development of the employee.  Overarching this is the need to ensure that the department achieves value for its investment. As such, all training and development initiatives shall be properly planned, programmed, recorded and the results reviewed to determine how training methods can be improved and how maximum benefit can be achieved from available resources.

## 4-2    RESPONSIBILITIES

A.    The Bureau of Personnel Management (BPM) is responsible for administering department-wide career services. Career development of the department's human resources will be provided, as required, to ensure efficient, competent performance of official duties as well as to provide the opportunity for development and advancement of employees. BPM is responsible for preparing and submitting an annual department-wide training plan to the Secretary or his/her designee that, in part, identifies mandatory or special training based on training needs assessments, state or federal law, and/or departmental policy.  A department-wide summary of all current internal training offerings shall be maintained by BPM and be made available on InsideIDOT via the "Training" quick link.

B.    District Career Service Coordinators are responsible for working in conjunction with BPM to ensure the consistent delivery of career services within their assigned area of responsibility.

C.    The Bureau of Information Processing (BIP) is responsible for providing technical assistance regarding all Career Services programs and sites, ensuring materials are easily accessible and well maintained. BIP is also responsible for providing a computerized Learning Management System (LMS) that documents individual training records for departmental employees, identifies and tracks internal IDOT classroom and e-learning training, and identifies and tracks training provided by IDOT to local external entities. BIP maintains the technical aspects of the computerized LMS and establishes/provides procedures and guidelines to LMS administrators/coordinators to ensure consistent administration.

D.    Learning Management System (LMS) Coordinators are responsible for following established LMS Administrator/Coordinator Guidelines to create classes and class locations in LMS and to enter class enrollment and attendance confirmation.

E.    Supervisors are responsible for identifying individual training and development needs to meet the performance objectives of their staff and, working in conjunction with BPM and the employee, preparing and effectuating plans for their development. Subordinate training requests should be reviewed and responded to in a timely manner. The supervisor must ensure employee participation in any career service will not adversely affect the productivity of the office.  Supervisors should review the training records of their staff at least annually to ensure compliance with mandatory training requirements and individual training and development plans.  Supervisors are responsible for actively participating in the New Employee Onboarding activities, especially as they relate to orienting the employees with their job duties and immediate surroundings.

F.    The employee assumes responsibility for maintaining productivity and overall career satisfaction at
      an optimal level.  Employees are responsible for self-identification of training and development
      needs and coordinating the process of addressing those needs with their direct supervisor.
      Accepting this joint responsibility will increase individual access to career services and ensure
      mutual benefits.  Employees are responsible for completing and submitting training request forms
      and obtaining supervisory approval prior to attending a requested training. Employees are expected
      to attend registered and scheduled training and to participate in the evaluation process. W hen an
      employee cannot attend a scheduled training, he/she must notify the immediate supervisor as early
      as possible prior to the start of the training. Upon completion of approved work-related non-IDOT
      training, a copy of the certificate of completion or other proof of successful completion should be
      submitted to the immediate supervisor and to the appropriate LMS Coordinator as self-report
      documentation to ensure credit is recorded in LMS. Department-maintained training records should
      be monitored by the employee via the LMS student site on InsideIDOT to ensure they accurately
      capture all required and completed department-related internal and external training.

**4-3    GUIDELINES**

Equal opportunity to participate in career services programs will be given to each employee.

A.    Training and Education Development

      Employees are encouraged to improve their technical competence by pursuing and successfully
      completing appropriate courses of study in addition to accomplishing their regular duties. Training
      and education development includes continuing education, leadership training and on-the-job
      development opportunities. For more information about continuing education, see Chapter 4-5:
      *Tuition Reimbursement Program.*

      Quality training and education development services are intended to:

      •   ensure employees continue to grow professionally,
      •   provide for a knowledgeable, motivated and productive workforce,
      •   improve employee skills, and
      •   provide a pool of talented and qualified personnel to fill positions as needed.

      Details regarding the following training and education development programs can be obtained from
      the Bureau of Personnel Management:

      •   Accelerated Leadership Proficiency Series (ALPS)
      •   Executive Leadership Development Series (ELDS)
      •   Growth and Training Education (GATE)
      •   Professional Advancement of Career Engineers (PACE)
      •   Special Training on Request (STOR)
      •   Supervisor Training and Readiness Series (STARS)

      As training programs are developmental in nature, an employee's current job assignment and duties
      should be a primary consideration in granting approval. Unless otherwise noted in the annual
      department-wide training plan, supervisors are responsible for determining whether employee-
      requested training is mandatory or voluntary.

1.      Mandatory Training

Employees who are eligible to earn overtime, earned equivalent time or compensatory time will be paid overtime or receive earned equivalent time or compensatory time and related, pre-approved, travel time for mandated attendance at classes held in the evening, on weekends or on state holidays. If the mandated attendance requires an overnight stay, only the related, pre-approved travel time and time actually spent in attendance at the related classes will be paid.

2.      Voluntary Training

Employees will not be paid overtime or receive earned equivalent time or compensatory time for voluntary attendance at classes held in the evening, on weekends or on state holidays. In addition, travel time to attend any voluntary training sessions or workshops unrelated to the employee's current responsibilities and conducted outside of working hours shall not be considered work time and, thus, will not be eligible for payment, earned equivalent time or compensatory time.

Information regarding department-wide training opportunities is located on the InsideIDOT "Training" quick link.

B.      Career Guidance and Support

The department seeks to foster an environment which allows employees to establish long-term career success and satisfaction. In order to create such an environment, the department provides a wide array of career guidance and support services for its employees and supervisors.

Through participation in career guidance and support services, employees shall have resources to reach their potential within the department and to identify attainable, personal career goals while contributing to the mission of the department.

1.      Career Advising

Career Guidance and Support will offer career advising to permanent, certified departmental employees. Career advising staff will utilize Social and Emotional Intelligence coaching as the model for employee sessions. Career advising sessions will strive to give employees an outlook on their skills and abilities as well as a realistic plan for their career at the department. Career advising staff and/or services cannot guarantee career advancement and/or change. Career advising sessions will be confidential. Eligible employees have the right to request career advising sessions; however, sessions are subject to supervisory approval. Sessions must also fit into the employee's work schedule and not interfere with daily responsibilities.

2.      Career-Related Events and Workshops

Career Guidance and Support will host a variety of career-related events and workshops in order to support careers of current and potential employees. Some examples of events that may be held are Career Day, Take Our Daughters and Sons to Work Day, and various informational sessions.

3.      Employee Recognition

Career Guidance and Support strives to acknowledge employees' contributions to the department and increase employee morale through recognition initiatives and events aimed at ensuring employees are aware of their value.  Employee recognition events may consist of the 25-year Ceremony, Employee of the Quarter, and Employee of the Year programs.

4.   **New Employee Onboarding**

New employee onboarding relies on BPM and the supervisor. The purpose of the department's new employee onboarding process is to help promote and guide the employee orientation process by providing the tools, resources, and information necessary to welcome new employees. Onboarding is a two-part approach to orienting and developing new employees. The first part of the orientation process is provided by BPM, or their designee, and consists of the New Employee Welcome Program and New Employee Training Day. The second part of the process is provided by the employees' supervisor and covers job-specific information; at a minimum, introduction to co-workers, job duties and expectations of the position. These programs are offered to permanent departmental employees.

a)   New Employee Welcome Program

The New Employee Welcome Program equips new employees with general information about the department that will be instrumental for success in their position. The goal of the New Employee Welcome Program is to meet with employees within one week of their start date to complete the New Employee Orientation, review InsideIDOT tools, introduce Career Guidance and Support functions that may benefit the employee in the future, and, if applicable, assign a mentor.

b)   New Employee Training Day

New Employee Training Day is to be held a minimum of once per year at Central Office, with the option of districts joining remotely. New Employee Training Day gives employees an opportunity to meet other new employees, complete required training, and learn about different areas within the department.

5.   Workforce Planning (including Successor Planning and Retention)

Workforce planning is a systematic process for identifying, acquiring, developing, and retaining employees to meet the needs of the organization. The department's workforce planning initiatives aim to identify and address the gaps between the workforce of today and the human capital needs of tomorrow thus enabling managers department-wide to make sound decisions regarding successor planning and retention.  Successor Planning works with those employees retiring or voluntarily leaving the agency to ensure their knowledge is transferred to another employee.  Retention planning reviews departmental attrition rates and determines action plans to reduce those rates and improve overall morale at the department. Employee exit surveys and the annual employee survey will be used as pivotal sources of information to effectively execute workforce planning to its fullest extent.

**4-4   PROFESSIONAL EXAM/LICENSING REIMBURSEMENT**

A.   General

The department encourages advancing the professionalism of its employees. In support of this, the department will reimburse permanent certified employees for professional exam/license costs (initial and renewal) and refresher course registration fees for positions that require and/or desire the license for advancement of promotional opportunity within the department (subject to exclusions in Section B-2, below). Employees will be allowed to take exams on state time. The responsibility for development and interpretation of this policy rests with the Bureau of Personnel Management, Employee Services Section.

B.     Reimbursement

1.     In accordance with Section A above and B-2 below, reimbursement will be provided for the following licensed/registered/certified professions:

- Attorney Registration (Supreme Court Rule 756)
- Certified Information Systems Auditor (CISA)
- Certified Public Accountant (CPA)
- Certified Welding Inspectors
- Landscape Architect
- Professional Geologist
- Professional Land Surveyor
- Professional/Structural Engineer
- Real Estate Appraiser
- Structural Engineer/Engineer Intern
- Land Surveyor -- Training

Each office/division will be responsible for paying their respective employees' reimbursements. Copies of the certificate/license and/or proof of successful exam/course completion, along with proof of payment should be attached to Form PM ES 2601: Professional License Renewal Reimbursement and submitted for supervisory approval. Reimbursement requests shall be processed through each employee's respective budget liaison.

2.     Non-reimbursable/non-covered expenses/items under this policy include:

a)     Costs for travel, including per diem, meals, and lodging.

b)     Overtime compensation.

c)     Any expense that occurred prior to an employee's start date in the position for which professional exam/licensing reimbursement is being sought.

d)     Costs or fees for exams, licensure, registration, certification, and/or refresher course registration fees that are unrelated to the career field and/or classification series of the employee's current position.

## 4-5    TUITION REIMBURSEMENT PROGRAM

A.     General

1.     Participation in the tuition reimbursement program may be approved when the course of study or class is beneficial to the department. Tuition reimbursement is not considered an unconditional or unilateral right or benefit.

2.     The tuition reimbursement program does not apply to in-service training conducted within the department, nor does it include workshops, professional conferences, seminars, registration fees, refresher courses leading to a professional registration, fees for the actual professional registration and other short-term programs. Reimbursement for these types of educational development should be submitted as contractual expenditures and are not considered part of the tuition reimbursement program.

3.     Attendance at courses should be scheduled during off-duty hours.  When a desired course is not available as an off-duty activity, the department may approve the use of vacation, personal time or, in some cases, a flexible work schedule, provided this does not adversely affect workloads in his/her unit of assignment.

B.    Eligibility

    1.    Permanent certified full-time employees of the department are eligible, if approved, to participate in the tuition reimbursement program. Permanent part-time employees may be approved for appropriate tuition reimbursement on a prorated basis, determined by the employee's scheduled work hours.

    2.    The responsibility for determining eligibility in the tuition reimbursement program rests with the director, deputy director, or central bureau chief. Final approval rests with the Director of Finance & Administration.

    3.    The decision to recommend eligibility and the amount of reimbursement should be made by the director, deputy director or central bureau chief of the requesting office in accordance with departmental policies. The needs of the unit, budgetary limitations, and workload of the particular office involved should be considered.

    4.    The responsibility for monitoring, interpreting and implementing this policy rests with the Bureau of Personnel Management.

C.    Approved Courses

    1.    Appropriate courses taken for academic credit, courses which could lead toward a degree or are required as part of a degree program may be approved for reimbursement. Required courses to earn High School Diploma, a General Education Degree (GED), Associate of Arts or Science Degree (two-year), undergraduate degree or a graduate degree from an accredited college or university are eligible for tuition reimbursement.

    2.    Courses which will be considered for reimbursement include those which clearly add to an employee's effectiveness (e.g., computer technology) or could enhance his/her ability to perform a present assignment.

    3.    Courses requiring full participation on a regular basis where final grades are issued will be given priority. In special cases, the department may approve enrollment in correspondence courses.

    4.    An employee may gain advanced college standing by enrolling in the College Level Examination Program (CLEP). The cost of each of the exams is eligible for reimbursement provided the approved institution waives its traditional admissions criteria or grants credit based on the CLEP scores and other information submitted. CLEP preparation courses or seminars are not eligible for tuition reimbursement.  Employees considering the CLEP should be aware that some graduate schools may refuse to accept applicants who submit transcripts in which substantial amounts of basic education have been waived on this basis.

    5.    Some universities and colleges in Illinois offer credit for prior learning acquired outside the formal classroom. Assessment fees are determined by the number of credit hours requested. Tuition reimbursement for credit acquired outside the formal classroom will be limited to repaying that portion of the assessment fee which applies to credits actually granted.

D.    Eligible Expenditures for Reimbursement

    1.    Eligible expenditures that may be approved for reimbursement are limited to tuition, lab and off-campus course delivery fees. Additional costs such as books, matriculation, activities, parking and health fees, as well as cost of transportation to and from classes, are not reimbursable.

2. Eligible expenditures may not exceed $2,500 per fiscal year without prior approval from the Director of Finance & Administration. The Director of Finance & Administration may consider requests to exceed the cap if an employee is directed by the department to enroll in a specialized degree program or if courses are critical to the employee completing job responsibilities or assignments. Exception requests require written justification from a director, deputy director or central bureau chief.

3. Eligible expenditures for courses at public institutions <u>may</u> be reimbursed up to 100 percent and 80 percent at private and out-of-state institutions.

4. Employees are required to identify financial aid received from all sources. Eligible expenditures as defined in the policy for public, private or out-of-state institutions, minus the identified financial aid, will result in the amount of reimbursement approved.

E. Reimbursement Process

1. Applicants must submit a completed Form PM ES1708: Tuition Reimbursement Application to their director, deputy director, or central bureau chief requesting approval. The Tuition Reimbursement Application completed through Part IV is to be forwarded to the Bureau of Personnel Management for final approval. All approvals must be processed prior to an employee enrolling in course work.

2. The Bureau of Personnel Management will maintain a copy of the approved application and related correspondence. The original and a copy of the approved application shall be retained by the originating office.

3. Reimbursement for an approved course is contingent upon the employee submitting evidence of satisfactory completion (i.e., a grade of C or better for undergraduate level courses and a grade of B or better for graduate level courses). If grades are not issued, but a pass/fail notice is issued, the satisfactory completion must be submitted for documentation. When the class is completed, the employee submits a completed Form C13: Invoice Voucher, the original approved Tuition Reimbursement Application, receipts for tuition cost(s) incurred, evidence of satisfactory completion (official grade notices) and a copy of degree(s) earned to the Bureau of Personnel Management for final review. Upon approval for payment, the Bureau of Personnel Management will return the documentation to the originating office for scheduling through regular channels.

F. Employee Work Commitment/PayBack

1. An employee receiving tuition reimbursement under the Tuition Reimbursement Program shall incur a work commitment to the state.

2. If state-paid educational assistance led to a post-secondary degree (e.g., undergraduate or graduate), and the state paid 50 percent or more of the cost of the hours required to earn the degree, the employees shall be obligated to continue in the employ of the state for a minimum of four years after receiving the degree.

3. If state-paid educational assistance did not lead to a post-secondary degree (e.g., undergraduate or graduate), an employee shall be obligated to continue in the employ of the state for a minimum of 18 months following completion of the most recent course for which reimbursement was received.

4. If the employee voluntarily leaves state employment prior to fulfilling this work commitment, the state may recover tuition reimbursement payments previously issued to the employee. In addition, a one percent per month interest rate will be added to the original payments. This amount is calculated from the time the state issued the original tuition reimbursement payment until the time the state recovers the payment.

5.      If an employee voluntarily leaves state employment after receiving a postsecondary degree, the recoverable amount shall be calculated by reducing the gross amount received by 25 percent each year that the employee remains with the state after receiving the degree. If an employee voluntarily leaves state employment but did not receive a post-secondary degree, the recoverable amount shall be calculated by reducing the gross amount received by 1/18th for each month that the employee remains with the state after completion of the most recent course.

6.      If an employee has not fulfilled the work commitment/payback and fails to reimburse the department for tuition payments previously received prior to his/her separation, the Bureau of Personnel Management will implement a recovery process.

7.      The state shall not recover payments for course work that was started before January 1, 1992, completed as a requirement for a grammar school certificate or a high school diploma, prepared for a high school level General Education Development test or to improve literacy or numeracy, specialized training in the form of a conference, seminar, workshop or similar arrangement offered by public or private organizations, provided as part of the Upward Mobility Program administered by the Department of Central Management Services, or a condition of continued employment.

G.      Taxation/Withholding. Employees who receive tuition reimbursement should consult with the Internal Revenue Service to determine any tax liability associated with this benefit.

IDOT 001197

# CHAPTER 5 - EMPLOYEE EVALUATION AND DEVELOPMENT

**5-1 POLICY**

It is the policy of the department to achieve an adequately trained, productive, properly utilized, highly motivated and well-informed workforce.

**5-2 RESPONSIBILITIES**

A.   Each supervisor is responsible for encouraging a high level of performance and for employee development.

B.   Employees will be given clear assignments, adequate facilities, needed training and appropriate supervisory assistance.

C.   It is the supervisor's responsibility to ensure that the performance of each employee will be regularly and systematically evaluated.

D.   Employees will be given constructive help in the correction of weak points and in the development of strong points of their work performance.

**5-3 GUIDELINES**

Central Management Services Personnel Code employees, excluding professional and managerial code employees, are included in the Individual Development and Performance Evaluation System (IDPES). The professional and managerial code employees are included in the Merit Compensation and Performance System. Technical employees are included in the Performance Management System.

The objectives of the Individual Development and Performance Evaluation System are to:

A.   establish and communicate job-related objectives for the employee;
B.   improve employee performance and strengthen supervisor-employee relationships;
C.   fairly appraise each employee's performance; and
D.   promptly and periodically notify and discuss performance ratings with each employee.

**5-4 TIMELINESS**

Formal evaluations are to be prepared a minimum of once a year. Performance appraisals may be quarterly or when:

A.   there is a change in supervision;

B.   the employee is reassigned or promoted;

C.   an employee completes a detail for a period of 90 days or more to duties other than those of his/her officially assigned position; or

D.   the supervisor feels it is desirable to formalize and record an appraisal.

After any formal evaluation session, a copy of the individual's evaluation form will be retained in the personnel file at the division/office/region/central bureau level, and a copy shall be submitted to the Bureau of Personnel Management for inclusion in the official personnel file.

**5-5     CODE EMPLOYEES INDIVIDUAL DEVELOPMENT AND PERFORMANCE EVALUATION SYSTEM**

A.     General. The program is based on the establishment of clear and open avenues of communication between the supervisor and the employee. This communicative process enables the employee and supervisor to mutually agree on performance requirements of the job, the developmental needs of the employee and the results of the system to evaluate performance. The principal tool of the program is Form CMS 201:  Individual Development and Performance Evaluation.

B.     Performance Requirements. Performance requirement indicators are measures established by the immediate supervisor which are understood and agreed to by employees stating what is considered satisfactory performance in all major aspects of the employee's work. It is, therefore, necessary that employees and supervisors have a common understanding of what is acceptable performance. Furthermore, the performance indicators must be clear and fair so that they will not be the basis for a communication breakdown between employees and supervisors.

C.     Developmental Needs. Employee development should be a cooperative effort between the employee and the supervisor. The employee should determine career goals and work with the supervisor in career planning. The supervisor should assist the employee in self-development through the Individual Development and Performance Evaluation System. The IDPES identifies strengths and weaknesses and serves as the impetus for improved individual performance.

D.     Performance Evaluation.  Performance evaluation is the continuous process of a supervisor observing and evaluating an employee's actions and the results achieved based on the prescribed set of performance indicators. Such evaluations should reveal how well actual performance satisfies the indicators, which aspects of performance need improvement and which aspects so exceed the indicator as to deserve special recognition. Again, the principal tool used in making these determinations is Form CMS 201: Individual Development and Performance Evaluation System (IDPES). If the evaluation process is mutually understood and continuous, the rating process of the IDPES is the culmination of the communicative process.

E.     Form PM 1937: Negotiated Rate Personnel Performance Evaluation is used to establish a systematic, uniform approach for the evaluation of the performance of Teamster bargaining groups covered by the CMS Personnel Code.

**5-6     CODE EMPLOYEES MERIT COMPENSATION PLAN (MC)**

The Merit Compensation Plan is designed to provide supervisors with the opportunity to reward better performers and, thus, establish an incentive for higher performance levels. Under the Plan, salary increases within pay ranges vary according to performance level and current position in the salary range.

A.     Employees Covered. The Merit Compensation Plan covers professional and managerial code positions which are not subject to a collective bargaining unit. A list of covered positions may be obtained from the Bureau of Personnel Management.

B.     Form Initiation. At the beginning of employment or upon promotion into a MC position, the Form CMS-201MC:  Merit Compensation shall be initiated based on the job description.

C.     Evaluation. Employees in this plan will be evaluated annually in conjunction with their anniversary dates using Form CMS-201MC:  Merit Compensation.

D.     Salary Increases. Under this Plan, salary increases are based on the evaluation of the employee's level of performance and their current position in the salary range. The salary schedule consists of a series of salary ranges, each composed of a minimum and maximum rate of pay.

E.    Information. Detailed information on this plan is found in the amendment to the current Pay Plan prepared by the Illinois Department of Central Management Services and in instructions for completing the required forms.

## 5-7    TECHNICAL EMPLOYEES PERFORMANCE MANAGEMENT SYSTEM

The technical performance planning and evaluation process is based on evaluating the work that is to be performed and setting standards by which the supervisor can determine the performance level of the end results of the job. This process is for all technical positions. A performance plan/evaluation shall be completed at least once every 12 months, utilizing Form PM 201B: Performance Management System.

A.    Performance Standards. The development of performance standards based on assigned job description accountabilities are to be discussed with the employee.

1.    Performance standards are to be developed within the following constraints. Each must be:

a)    related to the job accountabilities and/or additional direction;

b)    measurable in some manner;

c)    attainable by the employee, considering the responsibility and authority residing within the position; and

d)    acceptable to the supervisor and employee with final approval resting with the supervisor.

2.    These results should then have appropriate quantitative, qualitative and/or time frame measures that will be used to evaluate performance.

B.    Summary of Actual Achievements

At the close of the evaluation period, the supervisor makes a judgment in relation to the standards set. The supervisor and the next higher level of supervision shall review the results to ensure performance equity within the organization. Section II: Summary of Actual Achievements of Form PM 201B: Performance Management System shall address each accountability and support the supervisor's judgment as to the appropriate level of achievement.

C.    Overall Performance Level of Employee

1.    After evaluating the employee's actual performance against the performance standards, the next step is to translate that information into an overall evaluation of the employee.

2.    The levels of achievement provided on the evaluation form allow for differences in performance as measured against the standard for that employee. Ratings are a relative comparison rather than an absolute between the actual achievements and the agreed-upon standard.

D.    Comments and Interview

1.    Supervisor's Comments.  Comments made by the supervisor and not previously addressed in the performance evaluation are to be recorded here. Supervisors are required to sign and date the form.

2.    The bureau chief or higher-level manager should comment on the employee's performance, if applicable, and approve the evaluation at this time. It is recommended that this occur prior to the supervisor's interview with the employee to assure equity within the bureau.

3.      The supervisor and employee then meet to discuss the achievements versus the set performance standards.

E.      Employee's Comments. The employee may comment in this section indicating whether the employee agrees or disagrees with the rating. The employee is required to sign the form indicating knowledge of its existence and implications. An employee's signature in itself does not indicate agreement with the information contained on the form. An employee's refusal to sign the form may be grounds for disciplinary action.

## 5-8    PROBATIONARY REPORTS

A.      Code Employees. The Department of Central Management Services Personnel Rules (302.270) prescribe that performance records for code employees serving a probationary period shall be submitted to the Bureau of Personnel Management. For a six-month probationary period, the first report is due at the end of three months and the second at the end of five and one-half months. Upon promotion, one probationary report is prepared at the end of two and one-half months, unless modified by contract.

B.      Technical Employees. During the course of the probationary period, supervisors shall prepare performance evaluations at approximately three and five and one-half months, although nothing precludes earlier preparation. The evaluation shall be maintained in the originating office file. Probationary employees will automatically be placed on certified status at the end of six months unless a memo requesting denial of such action, along with documentation, including all evaluations, is submitted to the Bureau Chief of Personnel Management at least 15 days prior to the completion of the six-month probationary period.

## 5-9    FITNESS FOR DUTY EXAMINATIONS

A.      Medical Examinations. Subject to the approval of the Fitness for Duty Coordinator, employees who may have medical restrictions as indicated by illness, poor work performance, injury or personal physician's statements may be scheduled for medical examinations. Appointments will be made with a doctor selected by the department.

B.      Notification. When the decision is made to require an employee to take a medical examination, the employee first will be notified verbally and again in writing, specifying the reason for the examination, the time and place of examination and the type of examination requested. An employee directed to take a medical examination must be escorted/driven to and from the physician's office by the immediate supervisor or his/her designee who must also remain available during the examination to answer any job-related questions the physician may have. If the immediate supervisor is not available, the next level supervisor should escort the employee to and from the physician's office.

C.      Payment of Examinations. A state-ordered medical examination shall be given at state expense with no loss of pay. Employees who refuse to take a requested examination will be considered as insubordinate and subject to disciplinary action.

D.      Return to Work. Any employee found not fit for duty after receiving a state-ordered medical evaluation by a department Medical Review Officer (MRO), will not be allowed to return to work until the MRO releases that employee to do so.

E.      EEO Guidelines. This procedure is intended to rely solely on observed performance and/or job-related deficiencies and to be nondiscriminatory on the basis of race, color, national origin, religion, age, sex, marital status, disability, unfavorable discharge from military service, or any other non-merit factor not related to work performance required by the employee's position description.

# CHAPTER 6 - EMPLOYMENT AND PERSONNEL ACTIONS

**6-1     POLICY**

It is the department's policy to fill job positions by utilizing a job posting and interview process, unless a posting waiver is granted by the Secretary or his/her designee, or the position is filled by other means, in accordance with departmental policies or a collective bargaining agreement. All applicants, regardless of race, color, national origin, religion, age, sex, marital status, disability, unfavorable discharge from military service or any other non-merit factor, who express an interest and meet the required qualifications of the job, may be given an opportunity to be interviewed. Persons not employed by the department may apply for vacant positions which are designated as external postings.

**6-2     RESPONSIBILITY**

It is the responsibility of the Bureau of Personnel Management to oversee and administer this policy.

**6-3     GUIDELINES**

Employees are categorized as probationary or certified and are either full time or part time. Employment and personnel actions may also be subject to the Department of Central Management Services' Personnel Rules and any collective bargaining agreements.

A.      A full-time permanent employee is one who works the full work week as designated for Illinois Department of Transportation employees in their category.

B.      A part-time employee is one who is hired when the nature of the department's work requires augmentation of the regular workforce. The work hours of part-time employees shall be arranged to conform to the work schedule of the department.

     1.      A part-time permanent employee is one who is permanently assigned to the department workforce but who normally works less than 85 percent of the regularly scheduled work week.

     2.      A part-time temporary employee is one who is not permanently assigned to the departmental workforce and who normally works less than the regularly scheduled work week.

C.      A temporary employee is one who is hired as a substitute for a regular employee who is absent temporarily or due to increased workload of a short duration. The period of employment may be loosely defined, but the intent is to release the temporary worker when the regular employee returns or when the temporary worker has completed the assigned task. Temporary employment shall not exceed six months in any one position.

D.      Probationary Status. All newly appointed employees hired on a permanent, full or part-time basis shall serve a probationary period of six months. If, during the course of this probationary period, the employee is absent from work for more than 15 consecutive calendar days because of leave of absence, disciplinary suspension, sick leave or work-related injury or industrial disease, such absence shall serve to extend the probationary period by the length of the leave of absence.

A probationary employee shall obtain certified status only after successful completion of the probationary period. Certification approval will be granted if no memorandum denying certification is sent to the Bureau of Personnel Management by the director, deputy director or central bureau chief

15 days prior to the completion of the probationary period. The Bureau of Personnel Management shall notify the district or central bureau and the employee in writing of its decision on certification promptly thereafter. (See Chapter 5-8: *Probationary Reports*.)

E.      Certified Status. A certified employee is one who has successfully completed a probationary
        work period.

## 6-4      POSITION ANALYSIS

All technical position descriptions are evaluated for proper classification by the Bureau of Personnel
Management. Code position descriptions are written in compliance with the Department of Central
Management Services guidelines and the Bureau of Personnel Management serves as departmental liaison
in the coordination of the approval of these positions.

The Bureau Chief of Personnel Management has final approval of all technical classification levels that are
established.

At the discretion of the Bureau Chief of Personnel Management or written request of a director, deputy
director, central bureau chief, or an employee, a survey, audit or such other investigation as may be deemed
necessary shall be made to determine the proper allocation of any technical position. In the case of an
individual employee, the employee may submit a written request directly to the Bureau Chief of Personnel
Management.

The allocation process is not a means of moving an employee into a vacant position.

## 6-5      PROMOTIONS AND VACANCIES

A.      Probationary Employees. A probationary employee may not be promoted, demoted, discharged, or
        transferred without the prior approval of the Bureau Chief of Personnel Management. A probationary
        employee may only apply for vacant positions which are designated for external posting.

B.      Educational Requirements. Any position requiring a specified degree, diploma or certificate requires
        verification of that document prior to being granted an interview for promotion. New hires must
        provide the same verification prior to becoming certified.

C.      Positions Requiring Registration:

        1.      Registration requirements will be listed in Form PM 1244: Technical Position Classification
                Request as well as the posting for vacant positions. To be promoted or hired into a
                Civil/Electrical Engineer IV or higher engineering position, the individual must be a Licensed
                Professional Engineer in Illinois. Various positions within the department require registration
                as a Structural Engineer or Land Surveyor. Other positions within the department may
                require registration or licensing. Some positions may require multiple licenses.

        2.      For those positions requiring registration, the license(s) must be active in Illinois and verified
                prior to the interview.

        3.      Employees in positions requiring registration must display the license(s) in a conspicuous
                place in their office.

## 6-6      REINSTATEMENTS

Upon written request, previously certified technical employees of the department may be reinstated, at the
department's discretion, to a vacant position equal to or lower than any position in which they were certified.
The individual must meet any required qualifications for the position and must have been an employee in
good standing when previously certified with the department.  An employee may not be reinstated without
the prior approval of the Bureau Chief of Personnel Management. Technical employees who are reinstated
will serve a six-month probationary period. Code employees may be reinstated in accordance with CMS
Personnel Rules.

**6-7      TRANSFERS**

A.      A transfer is the permanent assignment of an employee to a position in the same classification or pay grade.

B.      A technical employee may request a transfer. A code employee must follow collective bargaining agreements and/or CMS Personnel Rules. Transfers are subject to Bureau of Personnel Management approval.

C.      Management has the right to transfer an employee based on operational needs. An employee who refuses to accept a transfer must report for duty at the new position but may make written appeal of such transfer by utilization of the grievance procedure applicable to their classification.

**6-8      GEOGRAPHICAL RELOCATION**

An employee may not be relocated from one geographical location to another without the prior approval of the Bureau Chief of Personnel Management.

A.      Involuntary Relocation.  The realignment of departmental priorities may require, upon prior approval of the Bureau Chief of Personnel Management, reassignment of positions to accomplish those priorities.  An employee who refuses to accept a reassignment must report for duty at the new location but may make written appeal of such relocation by utilization of the grievance procedure. If the location of a job is changed, the employee has the right to retain the position and its associated duties, provided the employee relocates as required.  An employee shall be reimbursed in accordance with Chapter 19: Travel Regulations, for settling period expenses incurred in moving to a new location.

B.      Voluntary Relocation. A technical employee may request a voluntary relocation to a specific geographic location. A code employee must follow applicable collective bargaining agreements and/or CMS Personnel Rules. Relocations are subject to Bureau of Personnel Management approval.

C.      Rights of Relocated Employees. Relocated employees retain their status and do not lose any earned or accrued benefits.

**6-9      INVOLUNTARY REDUCTION**

Involuntary reduction is a reduction to a position with a lower classification or pay grade than the position the employee currently holds. This action shall be based only on the employee's inability to perform. A recommendation for involuntary reduction of an employee is the prerogative and responsibility of the department's managers.

A.      Before a directive ordering involuntary reduction due to inability to perform is authorized the employee's personnel file and evaluation reports must show:

   1.   documentation of inability to perform, and

   2.   written documentation indicating that the employee was given adequate warning that his/her performance was not acceptable and that suggested improvements were not made.

B.      After a determination of unsatisfactory performance, an employee can be afforded the option of resignation, retirement or reassignment to a position commensurate with the employee's level of competence. The recommendation of a director, deputy director or central bureau chief shall be routed through the Bureau Chief of Personnel Management and be approved by the Secretary prior to any action being taken.

C.      Persons subject to involuntary reduction from management positions shall not be reassigned to units in which they have held lead positions. Central bureau chiefs must be assigned to another bureau or to a district. Deputy directors must be assigned to another region or a central bureau.

## 6-10    VOLUNTARY REDUCTION

A.      Voluntary reduction is a reduction to a position with a lower classification or pay grade than the position the employee currently holds. An employee shall request in writing a voluntary reduction to a vacant position in a lower classification. The written request shall be directed to the director, deputy director or central bureau chief.

B.      A reduction shall be granted only after approval has been coordinated through the Bureau Chief of Personnel Management and the director of the office/division in which the position is located.

C.      Employees will forfeit any promotional increase received within the past 18 months unless modified by a collective bargaining agreement.

D.      The Director of the Office of Finance and Administration may direct a reduction in salary in order to maintain internal equity within the organizational unit.

## 6-11    SEPARATION

A.      Employment. Employment shall terminate upon the employee's withdrawal from active service in the department for any reason other than illness or injury. A permanent employee on an approved leave of absence is not to be considered as separated.

B.      Documentation. Documentation of the reasons for the separation should be made part of the employee personnel file.

C.      Notice of Resignation. An employee voluntarily leaving the department shall give written notice. Such notice should be provided to the immediate supervisor at least two weeks in advance. In all cases of voluntary separation, the employee's signature shall be required.

D.      Knowledge Management Exit Interview. The knowledge management exit interview is an attempt to obtain valuable information from departing employees about their positions in order to address job specific issues when filling position vacancies. Form PM 202: Knowledge Management Exit Interview is to be given to departing employees by their supervisors with sufficient time to complete the form before they leave. Completed forms are to be sent to employees' directors or deputy directors for review.

E.      Exit Interview (EEO). The exit interview is an attempt to determine whether or not the department adequately served the employee's needs. Within this concept, comments submitted by employees shall be discussed with directors to help them evaluate the effectiveness of supervisors, managers and the department itself as an employer. However, individual names are kept strictly confidential. Annually, a summary of comments and ratings received from separated employees is completed and forwarded to the Secretary of the department and the Director of Finance & Administration. Form EEO 2086: Exit Interview is forwarded to each individual that separates from the department by the Bureau of Civil Rights. This form should be returned directly to the Bureau of Civil Rights.

## 6-12    INDETERMINATE LAYOFF

A.      A layoff is defined as the placement of a departmental employee in a non-paid and non-working status without prejudice either temporarily or indeterminately. Although the department shall make every effort to minimize the number of its employees that are laid off, layoffs may occur when the department, at its sole discretion, determines that one of the following situations requires it:

    1.      lack of work
    2.      lack of funds

3.      material reorganization

B.      The indeterminate layoff of employees in code positions will be conducted in accordance with applicable collective bargaining unit language and/or CMS Personnel Rules (80 Ill. Admin Code 302, et seq.).

C.      The indeterminate layoff of Technical Administrative or Executive Pay Plan employees must be based on documented relative performance of employees within the affected unit.  If the documented relative performance of employees is substantially equal, IDOT service will be utilized to determine the order of indeterminate layoff. However, the indeterminate layoff of Technical employees in collective bargaining unit positions will be conducted in accordance with applicable collective bargaining unit language.

D.      No certified Technical Administrative or Executive Pay Plan employee shall be subject to indeterminate layoff until all probationary or temporary Technical Administrative and/or Executive Pay Plan employees in the same class and approved layoff unit are laid off. All certified Technical Administrative or Executive Pay Plan employees subject to indeterminate layoff shall be given 10 days' notice of the layoff and at the time of the notice, shall be provided a current list of all vacant, budgeted positions within the department.

E.      Unless otherwise exempted by a collective bargaining agreement, each Technical Administrative and Executive Pay Plan employee who is subject to indeterminate layoff shall be offered any vacant, budgeted position for the current title held by the employee within the department and in the same county where the employee is subject to layoff. An employee may also designate two additional alternate counties for offers of employment where vacant positions exist or three alternate counties if the employee's current facility or office is closing. If no vacancies exist, the Technical Administrative or Executive Pay Plan employees shall be placed on the department's re-employment list.

F.      A certified Technical Administrative or Executive Pay Plan employee who is subject to indeterminate layoff may request or accept a voluntary reduction in assignment to a vacant budgeted position in a class having a lower maximum permissible salary or rate and shall be notified within 10 days of the effective date of the layoff of the opportunity to seek such a reduction to a vacant, budgeted position. The request must be made in writing to the Bureau Chief of Personnel Management prior to the proposed date of the layoff.

G.      A certified Technical Administrative or Executive Pay Plan employee who is subject to indeterminate layoff who properly requests a voluntary reduction in classification shall be given preference for any current vacant budgeted position in a lower classification over any employee who is probationary, provisional, has less continuous service or any employee requesting a reduction who is not subject to indeterminate layoff.

H.      A certified Technical Administrative or Executive Pay Plan employee who is indeterminately laid off shall be entitled to the same medical and dental benefits on the same terms and conditions as those employees who have been indeterminately laid off from collective bargaining unit positions.

## 6-13    TEMPORARY LAYOFF

A.      Employees may be temporarily laid off for not more than five scheduled work days in a 12-month period as a result of or for lack of work or lack of funds.

B.      Employees are not entitled to use any accrued benefit time in lieu of temporary layoff.

C.      Notice of temporary layoff shall be served on the employee 10 working days in advance of the effective date unless extraordinary operating conditions preclude such advance notice.

D.      Upon expiration of a temporary layoff, the employee shall be returned to the position, the position classification and location from which temporarily lay off.

E.     Temporary layoffs affecting more than one employee may occur with varying effective dates or may occur sequentially and from time to time as long as no employee is temporarily laid off for more than five scheduled work days in any 12-month period. An employee's preference in scheduling a temporary layoff will be considered, subject to operating needs.

F.     Furlough is a timekeeping status in which an employee is placed for a temporary period of leave without duties or pay because of conditions that require the department to curtail its operations as directed by an external authority or the Secretary. Furloughs affecting more than one non-bargaining unit employee may occur with varying effective dates and for one or more work days over a defined time period. An employee's preference in scheduling furlough time will be considered, subject to operating needs. The furlough of employees in code positions and in positions covered by a collective bargaining agreements will be conducted in accordance with the applicable union agreements and/or CMS Personnel Rules.

**6-14    CONTINUOUS SERVICE**

A.     Interruptions in Continuous Service. The following shall be considered as interruptions to continuous service:

    1.     resignation, except that continuous service will not be interrupted by resignation when a technical employee is employed in another permanent position within the Department or when a code employee is employed in another permanent position covered by the CMS Personnel Code within four calendar days of such resignation;

    2.     discharge unless reinstated after appeal through the grievance procedure administrative or judicial tribunal; or

    3.     failure to return from leave of absence.

B.     Deductions from Continuous Service. The following time shall be deducted from but not interrupt continuous service:

    1.     time away from work for any leaves of absence totaling more than 30 days in any 12-month period except for leaves of absence for occupational and non-occupational disability, leaves for educational purposes and military, Peace or Job Corps leaves;

    2.     in addition to the above, time away from work because of disciplinary suspensions totaling more than 30 days in any 12-month period;

    3.     time away from work because of layoff if re-employed within 24 months; or

    4.     time away from work for approved disaster service of any duration.

**6-15    RE-EMPLOYMENT LIST**

A.     Prior to a layoff, the department shall establish and maintain a re-employment list by class and county, or any other designated geographical area approved by the Bureau Chief of Personnel Management.

B.     Employees in code positions and/or collective bargaining unit positions will be placed on and removed from the re-employment list in accordance with applicable collective bargaining agreement language and/or CMS Personnel Rules (80 Ill. Admin Code 302. et seq.).

C.     A certified Technical Administrative or Executive Pay Plan employee who has been indeterminately laid off shall be placed in order of length of IDOT service date on the department's re-employment list for recall to the first available assignment to a position in the same class and county or other designated geographical location in which the employee was assigned prior to being placed in the re-employment list.

D.      Whenever there is a certified Technical Administrative or Executive Pay Plan employee available on the recall list to fill a current, vacant, budgeted position in the same class or related classes and county or other designated geographical location, no temporary, provisional or probationary appointments shall be made to such vacancy.

E.      A certified Technical Administrative or Executive Pay Plan employee who has been indeterminately laid off shall only be removed from the re-employment list when the employee:

   1.      is recalled from layoff,
   2.      refuses two offers of permanent employment,
   3.      name has remained on the re-employment list for 36 months, or
   4.      is reinstated to a permanent position within the department.

# CHAPTER 7 - HOURS OF WORK

**7-1      POLICY**

The department shall have established work schedules for employees that comply with all state and federal laws as well as any applicable bargaining agreements. These schedules shall take into account the operating needs of the department and, to the extent possible, the needs of the employee.

**7-2      RESPONSIBILITIES**

A.     All employees are expected to be at their work stations and ready to work at the appointed starting time until the appointed quitting time. Employees are required to accurately document their time worked. Unless superseded by a union agreement, all employees must sign in and sign out each day they report to work on the proper form provided for their areas, with the time of arrival and departure for their shifts and lunch breaks.  In accordance with the State Officials and Employees Ethics Act, sign in/out times should be recorded to the nearest quarter hour and should accurately reflect the time spent each day on official state business. An employee may be asked to pay restitution for the cost of abused state time.

B.     All supervisors will take necessary measures to provide that leave and overtime is properly accounted for on the employee's time and attendance records. Supervisors are to provide employees with sign in/sign out sheets that are conveniently located for employees to access. As a general guideline, Form LR 93A: Daily Time Record will be used by "office" employees, Form LR 93B: Pay Period Time Record should be used by employees such as yard technicians, resident engineers, and employees whose homes are their designated headquarters, Form LR 93C: Daily Yard Attendance should be used by bargaining unit employees who work in team sections/yards.  Other forms are also available for smaller offices and employees on call on the Forms Master List under Labor Relations. Completed sheets are to be approved by the designated supervisor and kept in a confidential location.

**7-3      GUIDELINES**

A.     All offices shall establish work schedules for their employees. No work schedules of less than 37.5 hours per week are to be submitted for full-time employees. Typically, employees assigned to the office work a 7.5-hour day and employees assigned to the field an eight hour day.

B.     These general provisions may be modified by the *Fair Labor Standards Act* if the Act would allow greater benefits to the employees. In those cases, the Act and interpretations issued by the Wage and Hour Division of the United States Department of Labor are controlling.

C.     Permanent part-time employees should work a minimum of 20 percent up to, but not exceeding, 85 percent of the work week based on 37.5 hours per week, unless otherwise modified by collective bargaining agreement. Any deviation from this policy must be submitted to and approved by the Bureau Chief of Personnel Management prior to implementation.

D.     All work schedules, including flexible schedules, shall be submitted to and approved by the Bureau Chief of Personnel Management prior to implementation. The approval of the Illinois Department of Central Management Services must also be secured for code employees. Upon approval, such schedules shall become the regular work schedules for the employees affected by them.

**7-4     FLEXIBLE SCHEDULES**

A.      Employees may work a flexible schedule (a fixed shift other than the official schedule approved for
        the office) if it is consistent with the requirements of the office. Normally, all employees should be
        working in the 10 a.m. to 3 p.m. core time. Form PM 2255: Flexible Hours Schedule Request must
        be submitted annually for approval by the Bureau Chief of Personnel Management prior to January
        1 of each year. Additional flexible schedules may be available under provisions of collective
        bargaining agreements.

B.      A four-day work week is available (Form PM 2600: 4-Day Work Week Request) to employees on a
        limited basis according to the needs of the department and the provisions of collective bargaining
        agreements. Leave records for affected employees shall be retained in hours while on four-day
        work week schedules. Weeks with holidays shall be worked as five-day weeks. This type of
        schedule is usually seasonal in duration.

**7-5     REST AND LUNCH PERIODS**

A.      Rest Periods

        1.      Unless work schedules, collective bargaining agreements or work rules otherwise dictate,
                once during the first half of the shift and once during the second, when work schedules
                permit, employees are to be granted a rest period of 15 minutes. It is the supervisor's
                responsibility to schedule the rest periods in the interest of efficiency and full section
                coverage.

        2.      The rest period will be counted as time worked for pay purposes. Time for such is not to be
                granted immediately preceding or immediately following the lunch period and should not be
                used to adjust starting or quitting times.

B.      Lunch Periods. Unless work schedules, collective bargaining agreements or work rules
        otherwise dictate, employees are given an unpaid lunch period for each regular work shift to
        be taken at the approximate midpoint of the work day.

**7-6     ABSENTEEISM**

A.      If an employee is going to be absent from or late to work, they shall contact their supervisor
        or designated contact(s) prior to the start of the work shift or as specified in collective
        bargaining agreements or work rules. If an employee is going to be late to work, the above
        notice should include the expected time of arrival.

B.      The following may result in disciplinary action, up to and including discharge:

        1.       failure to give proper notice as outlined in A. above,
        2.       excessive tardiness,
        3.       unauthorized absence, or
        4.       leaving work during working hours without prior authorization.

**7-7     FAMILY RESPONSIBILITY ALTERNATE WORK SCHEDULE**

An employee may request a temporary change in work schedule from full-time to part-time status in order to
meet or fulfill family responsibilities due to the birth of a child or the placement of an adopted child in the
home. Employees should work a minimum of 50 percent up to, but not exceeding, 85 percent of the work
week based on 37.5 hours per week, unless otherwise modified by collective bargaining agreement. Such
requests shall be granted unless the operational needs of the department are prohibitive. If a request is to be
denied, the operational needs must be thoroughly documented. If a request is granted, it will be for a one-
year period from the date of the child's birth or the placement of an adopted child in the home. No extensions

beyond the initial one year period will be granted. Only permanent, certified employees will be eligible for these provisions unless they are covered by collective bargaining provisions which supersede this policy.

A.  Employees shall submit a written request for an alternate work schedule to their immediate supervisor at least one month prior to the intended change of schedule. The request shall include the expected date of birth or placement of an adopted child in the home, the date the employee is requesting to begin the alternate work schedule, and the specific work schedule s/he is requesting.

B.  The employee's immediate supervisor must document the impact on the bureau/section/unit and forward his/her recommendation to the director, deputy director or central bureau chief. Upon review, the director, deputy director or central bureau chief will forward his/her final recommendation to the Bureau of Personnel Management for approval.

C.  The Bureau of Personnel Management will notify the employee of the approval or denial of his/her request in writing. An approved request will also indicate the expiration date of the approved schedule. Upon the expiration date, the employee is required to return to the work schedule held immediately prior to the birth or adoption of the child.

## 7-8   OVERTIME

A.  Eligible technical employees can receive overtime compensation. Overtime is work in excess of a normal work schedule and is to be worked only when it is authorized.

B.  Normal Work Schedule.  Full-Time Employees

1.  Office employees will work 7.5 hours per day, five days per week or an average of $9^3/_8$ hours per day, four days per week, for a total of 37.5 hours per week.

2.  Field employees will work eight hours per day, five days per week or 10 hours per day, four days per week, for a total of 40 hours per week.

C.  Eligible full-time employees earn overtime at the time and one-half rate for all hours worked in excess of their normal work schedule or as provided by the employee's applicable bargaining unit language or work rules.  Overtime will be earned at straight time for technical employees at the VI and VII levels who are not covered by a collective bargaining agreement. Time charged to leave with pay shall be considered as hours in the regular work day when overtime is a consideration. Time charged as authorized or unauthorized dock time shall not be considered as hours in the regular work day when overtime is a consideration, unless otherwise provided for in an applicable bargaining unit agreement.

D.  Part-time and hourly employees, unless otherwise provided by collective bargaining agreements or work rules, are eligible for time and one-half rate overtime for all hours worked in excess of the normal permanent full-time work week. All other hours worked are paid at straight time.

E.  Unless modified by a collective bargaining agreement, time and one-half rate shall be determined by computing the employee's hourly rate and multiplying 1.5 times the number of overtime hours. The hourly rate should be based on a 2,088-work hour year.

F.  The overtime payments provided for shall not be duplicated for the same hours worked. To the extent that hours are compensated for at overtime rates under one provision, they shall not be counted as hours worked in determining overtime under the same or any other provision.

G.  Compensation for overtime work may be in the form of cash or compensatory time off at the department's discretion, unless otherwise modified by a collective bargaining agreement. The employee may request cash payment or compensatory time, and budgetary restraints and/or operational need will be considered in the decision. During a given pay period, but not on the same day, technical employees may earn either compensatory time or overtime pay. Requests for paid overtime exceeding 10 hours in a given pay period must be approved by the district administrative manager or central office/division director. When compensatory time off is taken, it shall be scheduled at the convenience of the agency with due consideration of the employee's preference. All compensatory time off shall be liquidated in accordance with relevant collective bargaining agreements. Technical employees must schedule their compensatory time by June 1 to use by August 1. Merit compensation and salary grade employees must liquidate compensatory time within the fiscal year it was earned. All cash overtime shall be liquidated within the fiscal year it was earned.

Eligible employees on temporary assignment can earn either comp time or paid overtime.

All provisions outlined above for the compensation of overtime may be superseded by an employee's applicable bargaining unit language.

**7-9    EQUIVALENT EARNED TIME (EET)**

A.  Eligible technical employees who are not covered by a collective bargaining agreement and/or not otherwise eligible for overtime compensation may request EET for actual hours worked in excess of the employee's normal work hours in a work week. "Actual hours worked" in a work week includes vacation, sick and personal business time.

　　1.  EET must be requested and approved by the employee's supervisor for hours worked in excess of normal work hours per week. Such time may be granted in no less than one-half hour increments at the department's discretion based on current operating needs.

　　2.  Employees must submit documentation for supervisory approval for EET time within 60 days of earning it.

　　3.  Accrual of EET will be capped at 265 hours straight time and maintained indefinitely on a rolling basis. Travel time (other than travel to and from an employee's residence to the employee's designated headquarters) is counted toward accrual of EET.

　　4.  EET leave shall be taken at the employee's convenience consistent with the department's operating needs and with approval by the employee's supervisor.

　　5.  EET cannot be converted into cash payment or transferred from one agency to another agency. Upon separation of employment with IDOT, the balance of EET will be forfeited and cannot be used to extend the separation date. Employees entering into a union will forfeit the balance of EET.

B.  Effective July 1, 2007, all employees covered under the CMS Personnel Code *et seq*, who are not covered by a collective bargaining agreement and/or not otherwise eligible for overtime compensation may request EET off for actual hours worked in excess of the employee's normal work hours in a work week pursuant to *80 Ill. admin code 310.100(d) and 310.490(d)*. "Actual hours worked" in a work week includes vacation, sick and personal business time.

　　1.  EET must be requested and approved by the employee's supervisor before working in excess of normal work hours per work week and may be granted at the department's discretion based on current operating needs.

2.      Employees must submit documentation for supervisory approval for EET time within 30 days of earning it.

3.      EET is accrued at straight time in no less than one-half hour increments. An employee may not accrue more than 160 hours of EET to be maintained indefinitely on a rolling basis. Time spent in travel outside the normal work schedule is not counted toward accrual of EET.

4.      EET leave shall be taken at the employee's convenience consistent with the department's operating needs and with approval by the employee's supervisor.

5.      EET cannot be converted into cash payment or transferred from one agency to another agency. Upon separation of employment with IDOT, the balance of EET will be forfeited and cannot be used to extend the separation date. Employees entering into a union will forfeit the balance of EET.

# CHAPTER 8 - EMPLOYEE BENEFITS AND SERVICES

**8-1      POLICY**

The department shall provide eligible employees, retirees, annuitants, and their families with benefits programs designed to provide protection and security.

**8-2      RESPONSIBILITIES**

Employees should become familiar with the provisions of these programs and keep their information current at all times by reporting changes as they occur.

The department is responsible for notifying employees of program changes and options. Each office has a designated benefits representative to assist employees.

**8-3      HEALTH, DENTAL, VISION AND LIFE INSURANCE PROGRAMS**

A.       Health, dental, vision and life insurance benefits are available annually to department employees under the State Employees Group Insurance Programs.  Annual booklets detail the provisions of the programs in force for the contract year. The contract year coincides with the department's fiscal year.  A copy of these booklets shall be issued to each employee.

B.       The programs as outlined in these booklets are designed to provide protection for department employees, annuitants, retirees and their families. The benefits of these programs include state-paid life and health insurance for employees and annuitants and state-paid health insurance for individuals who retired prior to January 1, 1966.

C.       Health Maintenance Organizations (HMO) are available in most geographic areas of the state. This type of program offers an emphasis on well-care in addition to the traditional health insurance programs.

D.       Employees should become familiar with the provisions of the programs as presented in the booklets. It is incumbent on employees to keep their group insurance programs current at all times by reporting changes in needed coverage as they occur.

E.       Each office/division/district/central bureau has a designated insurance representative to assist employees in insurance matters.

**8-4      STATE EMPLOYEES' RETIREMENT SYSTEM**

The State Employees' Retirement System (SERS) offers a broad program of security for state employees, their dependents and beneficiaries to meet economic hazards incident to age, death and disability. Informational pamphlets briefly explaining the financing, management, benefits and contributory provisions of the system are made available to each employee. Additional information is provided through ongoing SERS presented workshops which detail the entitlements and benefits of the system. Each division/office/district/ central bureau has a designated SERS Coordinator to assist employees in retirement matters; however, it is the retiring employee's responsibility to confirm all retirement information directly through SERS. Workshop registration forms may be obtained from the Coordinator.

**8-5    WORKERS' COMPENSATION**

A.    The *Illinois Workers' Compensation Act* and *Illinois Workers' Occupational Diseases Act*, as amended, provide compensation and medical benefits to employees for personal injuries/diseases that arise out of and in the course of their employment. The Act also provides payment of benefits to certain beneficiaries if an employee's death results from a job-related injury or disease.

B.    When a permanent employee has an injury or disease ruled compensable by the Workers' Compensation Manager or the Illinois Industrial Commission, there is a waiting period of three working days, except as modified by collective bargaining agreement, before the employee is entitled to temporary total disability compensation. The injured employee will be continued on the regular payroll during the waiting period of up to three days, except as modified by collective bargaining agreement, provided medical information documents that the employee is unable to work because of the injury. This time is not charged against the employee's sick leave, vacation or personal business leave and is referred to as Policy Days.

C.    An employee absent from work longer than three working days will be removed from the regular payroll beginning the fourth work day after the injury, except as modified by collective bargaining agreement, and will be paid temporary total disability benefits in lieu of salary or wages pursuant to provision of the *Illinois Workers' Compensation Act.* The state pays all necessary medical expenses related to the injury. Temporary employees do not receive the Policy Days. Should they be required to be away from work for 14 calendar days or more, they will be paid for the first three working days as temporary total disability.

D.    Any employee injured on-the-job shall immediately report the injury to his/her supervisor and contact CareSys at 1-800-773-3221 to report the injury. The employee should also notify the Workers' Compensation coordinator in his/her Personnel Office. The injured employee will receive a packet of documents from the Workers' Compensation coordinator to be completed by the employee and the supervisor. If the employee is unable to contact CareSys and the Workers' Compensation coordinator, the supervisor is responsible for the notifications and retrieving claim documents for the employee.

E.    An employee injured on-the-job whose claim is ruled compensable will receive two-thirds of his/her average weekly earnings while off work and on temporary total disability unless the amount of compensation exceeds the maximum amount provided by law. The Illinois State Employees' Retirement System will pay the difference between the two-thirds average weekly wage and 75 percent of the employee's rate on the last day worked for those employees who are members of the system. The system will also credit the member's account for the contribution to the system. The employee retains state paid health and life insurance and accrues continuous service, but not vacation and sick leave, while on the Workers' Compensation payroll, except as modified by collective bargaining contracts.

F.    When it is determined that an employee is able to return to work with restrictions and there is needed work to be done within the employee's position description that the employee can perform, every effort will be made to provide suitable work for the employee. This program is for short-term job-related injury or illness only. In accordance with applicable collective bargaining agreement provisions, an employee who has suffered a service-connected injury or illness, or who is unable to perform his/her regular duties for a period of more than 60 calendar days, shall be assigned to light duty provided that a suitable light duty assignment is available.

G.    Supervisors and injured employees shall cooperate with the Workers' Compensation claims staff in the handling of all Workers' Compensation claims.

**8-6    MEDICAL SERVICES**

A.    On-the-job Injury or Illness

1.    All injuries, no matter how slight, shall be reported to the supervisor within 24 hours of the occurrence or as soon as reasonably possible.

2.    All employees shall be referred to an appropriate medical facility without delay if they are injured or become ill on-the-job and require emergency treatment.

3.    After medical attention is given or arranged for, the employee's supervisor shall report any on-the-job personal injury or illness immediately to his/her Personnel Manager.

4.    Field personnel, such as survey crews, construction and operations personnel, etc., are expected to understand the basic principles of first aid and should be thoroughly acquainted with emergency procedures. Injuries should not be treated except on an emergency basis.

B.    State Employee Assistance Program

1.    The Employee Assistance Program (EAP) is a confidential and voluntary program administered by a CMS-designated provider as a means of helping employees deal with personal problems which may affect job performance. Personal problems may include, but are not limited to, alcohol and/or drug abuse, family discord, psychological/emotional illness, financial matters, parenting and aging parent issues.

2.    Employees may contact the CMS-designated provider via a 24 hour/day seven days/week toll free number or they may contact the Employee Assistance Unit (EAU) within the Bureau of Personnel Management to obtain information. The EAU will not attempt to diagnose or treat a person's illness or problem. Charges for medical and professional treatment will be covered according to the provision in each employee's insurance plan.

3.    Supervisors may refer employees to the Employee Assistance Program due to declining job performance. Employees referred by supervisors who accept and follow a prescribed treatment schedule will not jeopardize their employment with the department as long as they demonstrate satisfactory progress in eliminating the job-related problems and follow a progressive and recommended program leading to rehabilitation. However, this is not to be interpreted as constituting any waiver of management's responsibility to maintain discipline or the right to invoke disciplinary measures in the case of misconduct or poor performance.

4.    The Employee Assistance Program is designed to restore employees to healthy productivity through early identification of declining job performance and subsequent referral to treatment in the community. The supervisors play a key role in accomplishing this goal.

**8-7    EMPLOYEE PERSONNEL RECORDS**

A.    Employees shall have access to their official personnel records. Employees shall be provided with a copy of all correspondence, forms and reports which have a negative bearing and influence on their employment with the department prior to it being placed in their personnel file. A copy of all other correspondence, forms and reports having a direct and personal bearing on or influencing an employee's employment and career within the department will be furnished to the employee upon request. This data may include but are not limited to: hours of work, wages, leaves, benefits, insurance, disciplinary action and grievances.

B.    The official personnel files for technical employees are in the Bureau of Personnel Management in Springfield; official personnel files for code employees are maintained by the Illinois Department of Central Management Services. All other files are considered working files.

C.    Employee personnel records are confidential and are available for review by employees or their authorized agent but are not available for public inspection, except as provided by law. Employees shall make advance arrangements with the Bureau of Personnel Management to review their personnel records.

D.    Outside written requests for information regarding an employee shall be limited to an acknowledgment that the person is an employee, the date of appointment, where employed and classification. No additional information such as salary, quality of performance, etc., shall be furnished. However, the employee can request the department to release specific information by authorizing the release in writing.

E.    Outside requests over the telephone regarding an employee shall be limited to an acknowledgment that the person is employed by the department.

F.    Any demand upon an employee, by a person in authority, to sign any blank form shall be considered coercion.  An employee is not required to sign such a form.

G.    Any information included on a form or any modification or alteration of a form subsequent to having been signed by the employee(s) shall be determined invalid as it may affect the employee(s), their positions or conditions of employment unless the changes are initialed by the employee. Employee(s) required to sign any form shall be given a copy of the form when they affix their signatures or as soon after as possible.

H.    In accordance with the *Americans with Disabilities Act (ADA)*, the department is required to maintain the confidentiality of information obtained regarding the medical condition or history and reasonable accommodation request(s) of any applicant or employee. Such information must be collected and maintained on separate forms and kept in medical files which are in separate, locked cabinets apart from other non-medical personnel files, including working files and must be treated as confidential medical records.  No medical-related material should be placed in an applicant's or employee's non-medical personnel or working file. A document containing medical information that is placed in a personnel file shall have all medical information removed before placement in the file. Medical information must be kept confidential even if someone is no longer an applicant or employee.

      Decision-makers involved in the hiring process may be provided with medical information on an applicant only after a conditional offer of employment has been made. Additionally, medical information may be disclosed to certain personnel only under the following circumstances:

      1.    supervisors and managers only regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

      2.    first aid and safety personnel if the disability might require emergency treatment;

      3.    government officials investigating compliance with ADA, on request;

      4.    state workers' compensation offices, state second injury funds or workers' compensation insurance carriers in accordance with state workers' compensation laws; or

      5.    use the information for insurance purposes.

## 8-8    25-YEAR SERVICE RECOGNITION

A.    Employees who have completed 25 years of service with the department and are in an active pay status will be honored at a recognition ceremony.

B.    Employees who have completed 25 years of service with the department and are in non-active pay status may request to be honored at the recognition ceremony. However, it will not be the department's responsibility to locate any separated employees for this purpose.

C.      Up to four years of military service may be used in the calculation of department service provided the employee returned to department employment within 90 days after release from military service. If military service in addition to four years is imposed pursuant to law, the additional time may be credited toward the 25-Year Service Award.

## 8-9     MEMBERSHIP AND DUES

A.      The department recognizes that membership on the part of key employees in leading technical, industrial and management organizations will be of benefit to the department and will help the department keep abreast of and have ready access to new developments in the many fields of endeavor in which it is engaged. The department also recognizes the public relations value of memberships in such bodies.

B.      When the department requests an employee to join a particular organization, it will pay his/her dues.

C.      For each organization in which the department has a membership, a sponsoring office or division shall be designated, and an official representative named by the director of the designated office or division. Where an office or division has the only departmental membership in an organization, it will normally be considered the sponsor. But where a corporate membership, such as in the American Public Works Association, entitles the department to select a number of participating individuals from different offices or divisions, or where there is both corporate membership and individual memberships in the one organization, the Policy & Research Center Library in the Office of Finance and Administration will name the sponsoring office or division and coordinate the payment of dues.

## 8-10    SECURITY

A.      In accordance with Departmental Order 13-10: *Order on Building Security*, all employees are issued a photo identification badge and must display this badge on their person at all times while on department property. These badges are to be used only in connection with official duties. Lost or stolen badges are to be reported immediately to a supervisor, the building manager or department security guard. Loaning an ID badge to anyone or using it to allow entry into a secure area by someone not properly identified is a security violation. This includes allowing someone to purposely "tailgate" behind an authorized entry. Violations may subject the violator to disciplinary action, up to and including discharge. Employees are to turn in their ID badges to their supervisors if they are suspended or when they terminate employment.

B.      Employees entering department premises after normal working hours or on weekends should notify the security guard, if one is available, or otherwise follow the security procedures established for that particular facility in Departmental Order 13-10: *Order on Building Security*. Positive identification will be required when admission by the guard to a locked office is requested. An appropriate record of such entrance will be required from the guard on duty by the Building/Facility Manager.

C.      All visitors to department facilities must have an employee escort when on the property. Employees who are expecting a visitor should notify the visitor ahead of time that they will be required to sign in, wear a visitor's identification badge and must be escorted by an employee at all times. Unexpected visitors will be required to follow the same procedures.

D.      The department cannot assume responsibility for the personal property of its employees. In the event a loss is experienced, a formal complaint should be filed with the division/office/region administrative unit.

## 8-11    PARKING

Parking may be provided for department employees and visitors. Parking restrictions apply to all assigned bays, marked perimeter curbs, disabled parking spaces, loading dock area and fire lanes. The cost for towed vehicles will be incurred by the owner. The department will not be liable for fire, theft, damage or personal injury involving employee vehicles.

# CHAPTER 9 - LEAVE ADMINISTRATION

## 9-1 POLICY

The Illinois Department of Transportation provides time off from work for reasonable and legitimate purposes such as recuperative rest periods, illness or disability and the resolution of personal affairs.

## 9-2 RESPONSIBILITIES

It is the responsibility of the Bureau of Personnel Management to oversee and administer this policy.

Employees are responsible for keeping track of their leave balances and notifying their supervisors in a timely fashion of their need to be away from work. Employees are responsible for submitting Form PM 91: Leave Request to their supervisors in advance when possible, but no later than one week after the absence. Employees are also responsible for providing any documentation necessary for the leave.

Supervisors are responsible for providing employees with a prompt response to leave requests and informing employees of any necessary documentation. It is their responsibility to submit approved leave request forms (PM 91: Leave Request) to their personnel office for processing in a timely manner. Supervisors must also notify their personnel office when an employee is absent for three consecutive scheduled work days due to illness or injury or any time an employee is injured on the job.

## 9-3 GUIDELINES

A permanent employee may be absent from work with pay, with management approval, for the following reasons:

A.     Holiday
B.     Vacation
C.     Personal business leave
D.     Sick leave
E.     Maternity/paternity leave
F.     Attendance in court
G.     Annual military reserve training or special duty
H.     Disaster service leave
I.     Leave to attend conferences of professional associations and societies
J.     Leave to take employment-related examinations
K.     Other excused absences

## 9-4 HOLIDAYS

A.     The department recognizes certain holidays each calendar year. The list of holidays to be observed annually is published by the Director of the Illinois Department of Central Management Services. The department shall observe those holidays as published.

B.     All employees who are scheduled to work full-time receive full holiday pay if they work on their last scheduled work day before and the first scheduled work day following the holiday or if absence on either or both of these days is for good cause and approved by the department.

C.     Regularly-scheduled, part-time employees receive holiday pay on a prorated basis.

D.     Temporary employees do not receive holiday pay.

E.     Employees on leave of absence without pay shall not receive holiday payment for any holiday which falls within such leave of absence. When a scheduled holiday falls within a period of disciplinary suspension, an employee shall not receive payment or any other compensation for the holiday.

F.     Any salaried employee whose work schedule is other than that of the usual Monday through Friday week shall receive no fewer holidays than employees who observe the normal work schedule.

## 9-5     VACATION

A.     All employees shall earn vacation time from the date of permanent employment. Permanent employees on part-time status shall earn vacation on a prorated basis. Vacation time shall be earned based upon the length of time of employment with the state of Illinois. This length of time shall include the current period of continuous permanent employment and any previous periods of employment, including previous full-time permanent employment within the State University System. It is the responsibility of the employee to provide the department with the satisfactory proof of previous periods of state employment to be included in total service time for vacation computations. Vacation credit for previous employment is effective the date the proof is received by the department. There is no provision for retroactivity.

B.     The vacation schedule is as follows: <u>DaysEarnedbyMonth</u>

| Years of Creditable Service | Days of Vacation | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 - 5 | 10 | 0.8 | 0.9 | 0.8 | 0.8 | 0.9 | 0.8 | 0.8 | 0.9 | 0.8 | 0.8 | 0.9 | 0.8 |
| 6 - 9 | 15 | 1.3 | 1.2 | 1.3 | 1.2 | 1.3 | 1.2 | 1.3 | 1.2 | 1.3 | 1.2 | 1.3 | 1.2 |
| 10 - 14 | 17 | 1.4 | 1.4 | 1.5 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.5 | 1.4 | 1.4 | 1.4 |
| 15 - 19 | 20 | 1.7 | 1.6 | 1.7 | 1.7 | 1.6 | 1.7 | 1.7 | 1.6 | 1.7 | 1.7 | 1.6 | 1.7 |
| 20 - 25 | 22 | 1.8 | 1.9 | 1.8 | 1.8 | 1.9 | 1.8 | 1.8 | 1.9 | 1.8 | 1.8 | 1.9 | 1.8 |
| 26 | 25 | 2.1 | 2.1 | 2.1 | 2.0 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.0 | 2.1 | 2.1 |

C.     Employees' vacation accounts shall be credited with vacation earned and charged with vacation used during that creditable month at the end of each month. A creditable month is one in which the employee works at least half of a month.

D.     Earned vacation time will be forfeited if not taken within two calendar years of the end of the calendar year in which the vacation was earned. On January 1 of each year, an employee's vacation account shall be charged with any time not taken within two years of the end of the calendar year in which it was earned. A director may make written request to the Secretary to extend an employee's vacation time into the next calendar year if the lack of usage was due to operational needs of the department. Such extensions, if granted, will be for a three-month period only.

E.     Unless modified by contract or the Department of Central Management Services' Personnel Rules, vacations may be granted in initial increments of not less than one-half hour and one-quarter hour increments thereafter.

F.     Unless modified by contract or the Department of Central Management Services' Personnel Rules, any balance of less than one-half hour in an employee's vacation account must be carried over until the employee has accumulated additional credit equal to or exceeding the minimum one-half hour increment of usage.

G.      Upon termination of employment, an employee shall be credited for vacation at the appropriate rate provided at least half of the month was worked. Payment for vacation will not be made upon termination unless six months of continuous employment with the department has been completed.

H.      The department has primary responsibility in scheduling vacations and, to the extent possible, will accommodate employee preferences while maintaining operational efficiency. In order to meet these requirements, supervisors will:

    1.   require requests for vacation in advance, and

    2.   prepare a vacation schedule for organizational units based upon departmental needs and employees' preference.

I.      An employee must liquidate all unused vacation before taking any of the following types of leaves of absence without pay:

    1.   military leave other than annual service training, and/or
    2.   Peace Corps/Vista leave.

J.      Payment in Lieu of Vacation

    1.   An employee with six months or more of continuous service shall receive lump sum payment in lieu of vacation if the employee has unused vacation available at the time of termination by resignation, discharge, retirement or death. The payment shall be in accordance with the following procedure:

        a)   The vacation time shall be paid as a lump sum on the payroll following the last wage payment.

        b)   Upon termination only, the amount in an employee's vacation account is rounded up to the next half hour or the next full hour.

    2.   Lump sum vacation rule is computed as:

        Annual Salary / 261 Days = Daily Rate

## 9-6   PERSONAL BUSINESS LEAVE

A.      Unless modified by a collective bargaining agreement, all full-time permanent department employees are permitted three days of personal business leave with pay each calendar year. Employees eligible to receive personal business leave who begin employment during the calendar year shall be given credit in accordance with the following schedule:

| Date of Employment | Number of Personal Business Days Credited for Remainder of Calendar Year |
|---|---|
| From January 1 through February 15 | 3.0 |
| From February 16 through April 15 | 2.5 |
| From April 16 through June 15 | 2.0 |
| From June 16 through August 15 | 1.5 |
| From August 16 through October 15 | 1.0 |
| From October 16 through December 15 | 0.5 |
| After December 15 | 0 |

Part-time permanent employees shall receive personal business leave on a prorated basis.

B.      Employees returning from leave of absence shall receive personal business days based on the schedule above unless superseded by CMS Personnel Rules.

C.      Personal business leave shall not be carried over from the calendar year in which it is credited. No employee shall be entitled to payment for unused personal business leave upon separation except in the case of death, retirement or disability as provided by statute in the amount of one-half of unused personal leave. In these cases, a lump sum payment will be made for one-half of any unused personal business leave.

D.      Personal business leave may be taken in initial increments of one-half hour and one-quarter hour increments thereafter, except as modified by contract or the CMS Personnel Rules. Personal business leave may be used at the mutual convenience of the employee and of the department. An employee's use of personal business leave requires advance supervisory approval except in the case of a bona fide emergency.

E.      All employees who work a full calendar year without using any sick time shall be granted an additional personal day in the subsequent calendar year. All part-time employees who work at least half time shall be awarded pro-rated additional personal leave on January 1 when the employee has not used sick leave during the previous calendar year.  In addition, employees who donate to the Sick Leave Bank are still eligible for the additional personal day provided they do not use any sick leave during the calendar year.

## 9-7     SICK LEAVE

A.      General. Sick leave is an accumulated benefit for permanent employees and will not be construed as being earned.  Sick leave abuse may be the basis for disciplinary action up to and including discharge.

B.      Accrual

1.      Sick leave is credited the first calendar day of the month and can be drawn upon during the month in accordance with the following guidelines. Full-time permanent employees are credited with sick leave at the rate of one day per month unless on leave of absence without pay or unless modified by collective bargaining agreement. Part-time permanent employees accumulate sick leave on a prorated basis. Sick leave is carried forward from year to year when not used.

2.      An employee who begins work or returns from leave during the first half of the month will receive a full day for the month's sick leave; after the first day of the second pay period of the month, no sick leave will be credited until the beginning of the following month.

3.      Employees assigned to a 7.5-hour day or an eight hour day, who make a permanent change in work hours will have sick leave balances converted to days based on the prior work schedule and adjusted to reflect the change.

C.      Use of Sick Leave. Accumulated sick leave shall be used only for the following circumstances:

1.      Illness, disability or injury of the employee. When the employee is incapacitated for duty because of sickness, injury, pregnancy or confinement.

2.      Appointments with doctors, dentists or other professional medical practitioners, including a person who holds a current national certification as a nurse practitioner.

3.      When a member of the employee's family is afflicted with a serious illness, disability, injury or when death occurs.  Family is defined as:

a)      a group of individuals living under one roof and usually, but not always, having a common ancestry and including the employee's spouse;

b) such natural relation of the employee, even though not living in the same household, as parent, sibling, or child;

c) adoptive, custodial and in-law individuals when residing in the employee's household but excluding persons not otherwise related of the same or opposite sex sharing the same living quarters but not meeting any other criteria for family; or

d) for bereavement purposes only, including funeral arrangements, travel, and attendance at funeral, the term family also includes grandparents, grandchildren, parents-in-law, brother- or sister-in-law and son- or daughter-in-law.

4. When treatment is required by specialists whose services are not available in the local area, a reasonable amount of time spent in traveling to the specialist may be charged to sick leave.

5. Sick leave may be taken in initial increments of one-half hour and one-quarter hour increments thereafter, except as modified by contract or the CMS Personnel Rules.

6. Employees injured while performing work duties are entitled to apply for benefits under the *Illinois Workers' Compensation Act* and *Illinois Workers' Occupational Diseases Act*. If such benefits are granted, the employee cannot use sick leave, personal leave or vacation in lieu of Workers' Compensation. In the event an injury or illness is determined to be non-compensable and later becomes the subject of an award by the Industrial Commission, the employee shall restore to the state the dollar equivalent which duplicates payment received as sick leave days, vacation days or personal days and the employee's sick leave, vacation, and/or personal leave account(s) shall be credited with leave day equivalents.

D. Approval of Sick Leave

1. Use of sick leave is subject to approval by the employee's supervisor. All absences charged to sick leave must be supported by the employee's certification on Form PM 91: Leave Request, which must be submitted within a week of the absence. When an employee is incapacitated, it is the employee's responsibility to notify the supervisor at the earliest possible moment. Such notification should include the exact duration of the absence, if possible. Sick leave requests should be submitted weekly in cases where an employee is absent for an extended period of time. Disapproved requests will be returned to the employee with full explanation for denial.

2. Requests for sick leave use for medical, optical and dental examinations or treatments must be made prior to the beginning of the absence and should be made so as to create minimal disruption of work schedules. Approved requests for sick leave will be forwarded with the time and attendance records of the employee for processing by the appropriate division/office/district/bureau.

3. When a supervisor has reason to believe that the use of sick leave is being abused, proof may be required of individual employees for every sick leave absence, regardless of the period of time. When utilizing this control, the employee concerned must be counseled and notified of the constraint being placed upon the use of sick leave. Failure to comply with proof status requirements will result in the absence being considered unauthorized/docked and subject to discipline, up to and including discharge.

4. For periods of absence of more than 10 consecutive work days the employee shall provide written verification from a medical practitioner for the absence.

E.      Advancing Sick Leave

1.      In addition to accumulated sick leave, employees may receive with pay an extension of sick leave for not more than 10 work days, if they have more than two years of continuous service and the employee's record so warrants. Such an extension is subject to the written approval of the Bureau Chief of Personnel Management (and the Director of the Illinois Department of Central Management Services for code employees) prior to its use. Such advances will be charged against sick leave accumulated during subsequent service.  The leave may be for the employee or family as described in Chapter 9-7: Sick Leave C.3. The department must consider the potential impact of the statutory limitation on recovery of advanced sick leave benefits as covered in Chapter 9-7: Sick Leave J.2 of this policy when considering requests for advanced sick leave.

2.      Sick leave accrued after an absence may not be retroactively substituted for such absence except as provided in 1 above.

F.      Sick Leave Bank. The *Sick Leave Bank Act* (5 ILCS 400/10*)* mandated the state of Illinois to establish Sick Leave Banks for state employees. Pursuant to the Public Act, the guidelines to participate are as follows:

1.      The definition of immediate family shall be husband, wife and children or any person living in the employee's household for whom the employee has custodial responsibilities or where such person is financially and emotionally dependent on the employee and where the presence of the employee is needed.

2.      The definition of catastrophic illness or injury shall be as follows:

a)      Sick Leave Banks are intended to cover temporarily disabled or incapacitated employees or members of the immediate family as defined herein resulting from a life-threatening or catastrophic illness or injury.

b)      Documentation of such catastrophic illness or injury shall be consistent with applicable rules and/or contractual provisions.

3.      Prior approval is required from the Sick Leave Bank Review Committee to allow employees use of up to 25 work days from the Sick Leave Bank per 12-month period year.

4.      Employees must have a minimum of five days of accumulated sick time on the books to enroll in the Sick Leave Bank and must have donated at least one day of sick leave to become a member. However, an employee may donate additional days as desired at the time of enrollment or any time thereafter, including separation from state service.

5.      A full-time employee with a minimum of six months' service and who has exhausted all available benefit time is eligible to request sick leave time from the bank.

6.      Employees may voluntarily enroll at any time pursuant to 4 and 5, above, but must wait 60 calendar days before utilizing the Sick Leave Bank.

7.      Employee injuries and illnesses being compensated under Workers' Compensation Act of Workers' Occupational Disease Act shall not be eligible for Sick Leave Bank use.

8.      Participating employees who transfer from one agency to another shall transfer their participation in the Sick Leave Bank.

9.      No employee shall withdraw the sick leave time he or she has contributed to the bank.

10.     Upon termination, retirement or death, neither a participating employee nor the participating employee's estate shall be entitled to payment for unused sick leave acquired from the Sick Leave Bank.

G.      Employees who separate and return to permanent status within five years of the date of separation shall, upon verification, have their sick leave balance reinstated to their accounts. This does not apply to situations in which the employee returned prior to March 31, 1980, or if the sick leave has been credited toward retirement benefits. This only applies to sick leave earned prior to January 1, 1984, and on or after January 1, 1998.

H.      If the employee resigns due to illness, separation will be effective at the expiration of sick leave.

I.      Sick leave is to be used by an employee within the following priority order:

1.      sick leave earned through December 31, 1983;
2.      sick leave earned on or after January 1, 1998;
3.      sick leave earned on or after January 1, 1984 and prior to December 31, 1997.

The first earned sick leave shall be the first utilized within each category.

J.      Payment in Lieu of Sick Leave.

1.      Upon termination of employment for any reason, movement from a position within the department to another state position or indeterminate layoff, an employee or the employee's estate is entitled to be paid at half rate for unused sick leave which has accrued on or after January 1, 1984, and prior to December 31, 1997, provided the employee is not employed in another position in state service within four calendar days of such termination.  Payment for unused sick leave shall be in accordance with the following procedures.

a)      Unused sick leave shall be paid as a lump sum on the payroll following the last wage payment.

b)      There shall be no deduction for contribution to the State Employees' Retirement System for the lump sum sick leave payment unless authorized by the employee and the employee is retiring from state service. FICA shall be deducted if the employee is covered by Social Security.

c)      In calculating lump sum sick leave payment, the employee is to be paid for all unused days earned between January 1, 1984 and December 31, 1997 at a rate one-half of the salary being earned at the time of separation.

2.      If an employee has a negative sick leave balance in accordance with Chapter 9-7 E.1 Advancing Sick Leave when employment is terminated, no payment shall be made to the employee and the un-recouped balance due is canceled.

3.      The method of computing the daily salary rate for sick leave qualifying for lump sum payment upon termination of employment shall be as illustrated in Chapter 9-7 J.1: Payment in Lieu of Sick Leave.

4.      An employee who is re-employed, reinstated or recalled from indeterminate layoff and who received lump sum payment in lieu of unused sick days will have such days restored provided the employee repays upon return to active employment, the gross amount paid by the state for the number of days to be restored to the employee's sick leave account.

5.      If termination is by death, lump sum payment in lieu of unused sick leave is to be made for the number of days of unused sick leave in accordance with Chapter 9-7 J.1: Payment in Lieu of Sick Leave as of the date of the employee's death.

**9-8    MATERNITY/PATERNITY LEAVE, ADOPTION LEAVE AND LEAVE IN THE EVENT OF A STILLBORN CHILD**

A.    Maternity/Paternity Leave

   1.    Eligibility Requirements.  Unless modified by contract, employees who provide written proof of their pregnancy or that of their female partner within 30 days of the expected due date will be eligible for four weeks (20 consecutive work days) paid maternity/paternity leave.

   2.    Proof Requirements.  Proof of pregnancy in 1 above shall be provided via Form PM 2407: Certification of Pregnancy and Expected Due Date, signed by their physician. Proof of birth will be required before a maternity/paternity leave commences. In addition, non-married male employees may be required to provide proof of paternity such as a birth certificate or other appropriate documentation confirming paternity.

B.    Adoption Leave. Employees who adopt a child are eligible for four weeks (20 consecutive work days) of paid leave with a new adoption, with the leave to commence when physical custody of the child or children has been granted to the employee, provided that the employee can show the formal adoption process is underway. The employee must provide information documenting the adoption process has been initiated.

C.    Leave in the Event of a Stillborn Child. All employees who provide proof of their pregnancy or that of their female partner at least 30 days prior to the expected due date will be eligible for four weeks (20 consecutive work days) of paid leave in the event of a full-term stillborn child, unless modified by contract. The State shall require proof of a stillbirth, such as a fetal death certificate or certificate of stillbirth. In addition, non-married male employees may be required to provide proof of paternity.

D.    Limitations.

   1.    Leaves covered under this section are limited to one leave per family for each pregnancy resulting in birth or multiple births, for each adoption, or for each pregnancy resulting in stillbirth or multiple stillbirths. As such, a second leave is permitted if a second birth, adoption or stillbirth takes place within the same 12-month period.

   2.    Leaves covered under this section are for entire consecutive days and may not be broken up over a period of time. In cases of multiple births only one four-week maternity/paternity leave is available. The leave will normally occur during the first four weeks following the birth of a child.  The leave may occur before or after any Retirement System disability benefits for which the employee may be eligible.

E.    Members who have elected the Opt Out insurance option **are** eligible for the paid leaves under this section. These leaves may also be granted to a state employee whose partner is not covered by the state's group insurance program, as long as eligibility and proof requirements are met.

**9-9    DISABILITY LEAVE**

A.    An employee who is unable to perform a substantial portion of regularly assigned duties due to temporary physical or mental disability shall, upon request, be granted a disability leave of absence for the duration of such disability.  A substantial portion of regularly assigned duties means those duties or responsibilities normally performed by the employee which constitute a significant portion of the employee's time or which constitute the differentiating factors which identify that particular position from other positions.

B.    If the disability does not arise out of and in the course of employment, the leave is called non-occupational disability leave. Leave for an occupational disability is one in which the employee's injury or illness arises out of and in the course of employment. To be eligible for occupational disability leave, the employee must be on a Workers' Compensation payroll.

C.      In granting a disability leave, the following standards shall apply:

   1.     A request for disability leave shall be in writing except when the department is advised by other appropriate means of the employee's disability.

   2.     Except for occupational disability, the employee shall have exhausted available sick leave prior to being granted a disability leave. See Chapter 8-5: *Workers' Compensation* for more details regarding Workers' Compensation for occupational disability.

   3.     During a disability leave, the disabled employee shall provide written verification by a person licensed under the *Illinois Medical Practice Act* or under similar laws of Illinois or of other states or countries or by an individual authorized by a recognized religious denomination to treat by prayer or spiritual means; such verification shall show the diagnosis, prognosis and expected duration of the disability. Such verification shall be made at least every 30 days during a period of disability, unless the nature of the disability precludes the need for such frequency of verification.

   4.     As soon as an employee becomes aware of an impending period of disability, the employee shall notify the appropriate supervisor of such disability and provide a written statement by the attending physician of the approximate date the employee will be unable to perform regularly assigned duties.

   5.     If the department has reason to believe that the employee is able or unable to perform a substantial portion of regularly assigned duties, it may seek and rely upon the decision of an impartial physician chosen by agreement of the parties or in the absence of such agreement upon the decision of an impartial physician selected by the department who is not a state employee.

D.      Failure of an employee to provide verification of continued disability upon reasonable request shall on due notice cause termination of such leave.

E.      An employee's disability leave shall terminate when s/he is able to perform regularly assigned duties.

   1.     An employee is no longer temporarily disabled when s/he is able to perform regularly assigned duties upon advice of the appropriate authority or, in the absence of such authority, the attending physician.

   2.     An employee is no longer temporarily disabled when s/he is found to be permanently disabled and unable to perform a substantial or significant portion of regularly assigned duties by the appropriate authority, or in the absence of such authority, by the attending physician.

   3.     In determining whether to discharge an employee for failure to return from a disability leave or for physical inability to perform the duties of a position, the department may seek and rely upon the advice of the State Employees Retirement System or other appropriate authority, including an impartial physician selected in accordance with C.5 above.

   4.     An employee no longer has a temporary occupational disability if the employee can return to work with short-term restrictions on physical activity. However, there must be work to be done which the employee can safely perform within their position description to terminate disability in this manner. (See Departmental Order 6-5: Workers' Compensation-Return to Work Policy.) In accordance with applicable collective bargaining agreements, an employee who has suffered a service-connected injury or illness, or who is unable to perform his/her regular duties for a period of more than 60 calendar days, shall be assigned to light duty provided that a suitable light duty assignment is available.

5.     An employee who returns from a disability leave of six months or less shall be returned by the department to the same or similar position in the same class in which the employee was incumbent at the time the leave commenced.

6.     When an employee returns from a disability leave exceeding six months and there is no vacant position available in the same class held by the employee at the commencement of such leave, s/he may be laid off in accordance with the Chapter 6, *Employment and Personnel Actions* unless such leave resulted from service-connected disability, in which case the employee shall be returned to employment as in E.5 above.

F.     An employee who is on disability leave while in temporary or emergency status shall be eligible for such leave for the balance of the appointment and shall earn or accrue no other benefits. However, if the employee is in a temporary or emergency status as a result of an approved leave to accept such a position, this restriction does not apply.

## 9-10    FAMILY RESPONSIBILITY LEAVE

A.     An employee who wishes to be absent from work in order to meet or fulfill responsibilities, as defined in Chapter 9-10 F, arising from the employee's role in their family or as head of the household may, upon request and in the absence of another more appropriate form of leave be granted a Family Responsibility Leave for a period not to exceed one year. Such request may be made without exhausting other benefit time and shall not be unreasonably denied.

B.     Any request for such leave shall be made in writing by the employee reasonably in advance of the leave unless precluded by emergency conditions, stating the purpose of the leave, the expected duration of absence and any additional information required by the department.

C.     Such leave may be granted to any permanent full-time or permanent part-time employee. An employee in a trainee, temporary, emergency or provisional status shall not be granted such leave.

D.     Family Responsibility for the purposes of this section (9-10) is defined as the duty or obligation perceived by the employee to provide care, full-time supervision, custodial or nonprofessional treatment for a member of the employee's immediate family or household under circumstances temporarily inconsistent with uninterrupted employment in state service.

E.     The term family is as defined earlier in this chapter, in Chapter 9-7 C.3: Use of Sick Leave.

F.     Such leave may be granted for any of the following reasons:

1.     To provide nursing and/or custodial care for the employee's newborn infant, whether natural born or adopted.

2.     To care for a temporarily disabled, incapacitated or bedridden resident of the employee's household or member of the employee's family.

3.     To furnish special guidance, care or supervision of a resident of the employee's household or member of the employee's family in extraordinary need.

4.     To respond to the temporary dislocation of the family due to a natural disaster, crime, insurrection, war or other disruptive event.

5.     To settle the estate of a deceased member of the employee's family or to act as conservator if so appointed and providing the exercise of such functions preclude the employee from working.

6.     To perform family responsibilities consistent with the intention of this section (9-10) but not otherwise specified.

G.  The department may require substantiation or verification of the need by the employee for such leave, the substantiation or verification being consistent with and appropriate to the reason cited in requesting the leave, such as:

    1.  A written statement by a physician or medical practitioner licensed under the *Illinois Medical Practice Act* or under similar laws of Illinois or of another state or country or by an individual authorized by a recognized religious denomination to treat by prayer or spiritual means. Such verification to show the diagnosis, prognosis and expected duration of the disability requiring the employee's presence.

    2.  A written report by a social worker, psychologist or other appropriate practitioner concerning the need for close supervision or care of a child or other family member.

    3.  Written direction by an appropriate officer of the courts, a probation officer or similar official directing close supervision of a member of the employee's household or family.

    4.  Any reasonable or independent verification substantiating that the need for such leave exists.

H.  Such leave may not be renewed; however, a new leave may be granted at any time for an appropriate reason other than that for which the original leave was granted.

I.  The department shall continue payment of its portion of employee health and dental insurance premiums for up to six months while an employee is on a Family Responsibility Leave consistent with section 9-11, *Family and Medical Leave Act of 1993,* subsections A.1, 2 and 3 listed below. The department shall not continue payment of its portion of employee health and dental insurance premiums while an employee is on a Family Responsibility Leave for any other reason. If the employee fails to return after the leave has expired, the department may recover premiums paid to maintain health insurance coverage. If the leave continues beyond six months, the employee is responsible for all applicable premium payments.

J.  If the department has reason to believe that the condition giving rise to the given need for such leave no longer exists during the course of the leave, it may require further substantiation or verification and, if appropriate, direct the employee to return to work on a certain date.

K.  Failure of an employee, upon reasonable request by the employing agency, to provide such verification or substantiation in a timely manner may be cause for termination of the leave.

L.  Such leave shall not be used for the purpose of securing alternative employment. An employee during such leave may not be gainfully employed full-time; otherwise the leave shall be terminated.

M.  Upon expiration of a Family Responsibility Leave, or prior to such expiration by mutual agreement between the employee and the employing agency, the department shall return the employee to the same or similar position classification that the employee held immediately prior to the commencement of the leave.  If there is no such position available, the employee will be subject to layoff in accordance with existing rules on Voluntary Reduction and Layoff.

N.  Nothing in this section (9-10) shall preclude the reallocation or abolition of the position classification of the employee during such leave nor shall the employee be exempt from the rules relating to Voluntary Reduction and Layoff by virtue of such leave.

## 9-11  FAMILY AND MEDICAL LEAVE ACT OF 1993

A.  Employees who have been employed by the state for at least 12 months and have worked at least 1,250 hours during the 12-month period preceding the start of the leave are eligible for up to a total of 12 work weeks of unpaid leave during any rolling 12-month period for one or more of the following reasons:

    1.  birth of a child and in order to care for such child (within 12 months after the birth of the child);

2.      placement of a child for adoption or foster care (within 12 months of the placement of the child);

3.      in order to care for a spouse, child, or parent if they have a "serious health condition;" or

4.      a "serious health condition" that makes the employee unable to perform the functions of his/her job.

B.      The federal law provides for FMLA leaves of absence to be unpaid. However, employees may qualify for additional benefits under other state leave policies. If a spouse also works for the state and both employees become eligible for a leave under paragraphs 1 or 2 above, or for the care of a sick parent under paragraph 3 above, the two employees together will be limited to a combined total of 12 work weeks of leave in any rolling 12-month period.

C.      Coordination with Other Policies.  An employee may substitute paid leave time for unpaid leave under this policy. If an employee uses paid leave time under this policy, it will run concurrently with Family and Medical Leave.  If an employee otherwise qualifies for disability pay or other leave benefits, he/she will collect it at the same time they are on Family and Medical Leave.  Similarly, if an employee otherwise qualifies for any other type of leave of absence, that leave must be taken concurrently with Family and Medical Leave.  An employee taking time off from work on an intermittent basis that qualifies for the Family and Medical Leave protection will be required to use their accumulated sick time concurrently with the Family and Medical Leave prior to using other benefit time or approved dock status.

D.      Medical Certification. Any request for a leave under A.3 or A.4, above, must be supported by certification issued by the applicable health care provider.  Certification forms are available from local personnel offices, the central Bureau of Personnel Management or as a word processing template. At its discretion, the department may require a second medical opinion and periodic recertification to support the continuation of a leave. If the first and second opinions differ, a third opinion can be obtained from a health care provider jointly approved by both the department and the employee.

E.      Serious Health Condition. For purposes of this policy, "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves one of the following:

1.      Hospital Care. Inpatient care in a hospital, hospice or residential medical care facility, including any period of incapacity or any subsequent treatment in connection with such inpatient care relating to the same condition.

2.      Absence Plus Treatment. A period of incapacity of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves either:

- treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services under orders of, or on referral by, a healthcare provider; or

- treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

3.      Pregnancy.  Any period of incapacity due to pregnancy, or for prenatal care.

4.      Chronic Conditions Requiring Treatment. A chronic condition which requires periodic visits over an extended period of time for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider and may cause episodic rather than a continuing period of incapacity.

5.  Permanent/Long-Term Conditions Requiring Supervision. A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider.

6.  Multiple Treatments (non-chronic conditions). Any period of absence to receive multiple treatment (including any period of recovery there from) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment.

F.  Intermittent Leave.  If certified as medically necessary for the serious health condition of the employee or the employee's spouse, child or parent, leave may be taken on an intermittent or reduced schedule. If leave is requested on this basis, however, the employee may be required to transfer temporarily to an alternative position which better accommodates recurring periods of absence or to a part-time schedule, provided that the position offers equivalent base pay and benefits. Reduced schedules for the purpose of child care will only be granted in accordance with the provisions of Chapter 9-10, *Family Responsibility Leave* and will run concurrently with FMLA leave. Employees taking time off from work on an intermittent basis that qualifies for the Family and Medical Leave protection will be required to use their accumulated sick time concurrently with the Family and Medical Leave prior to using other benefit time or approved dock status.

G.  Notification and Reporting Requirements.  All requests for leaves of absence must be submitted to the employee's supervisor in writing at least 30 days in advance of the start of the leave (except when the leave is due to an emergency or is otherwise not foreseeable). A delay in submitting this request could result in a delay of the start of the leave. The supervisor will forward the request to the appropriate personnel office for approval. If the leave request is approved, the employee will receive written notice to this effect. If the leave request is denied, the employee will be notified promptly after that decision is made and he/she can reapply in the event the circumstances for the denial have changed. Employees must also make an effort to schedule intermittent leave so as not to disrupt business operations. During the leave, employees may be required to report periodically on their status and intention to return to work.

1.  Any extension of time for a leave of absence must be requested in writing prior to the scheduled date of return to work, unless the need for the extension is unforeseeable, and written documentation may be required to support the extension. The maximum time on FMLA leave of absence cannot exceed a total of 12 weeks in a rolling 12-month period.

2.  A FMLA leave of absence will not affect the continuity of employment. An employee's original date of employment remains the same for seniority purposes. However, the employee will not accrue any benefits during the period they are on FMLA leave, except as provided by another leave policy.

H.  Employee Benefits during Family and Medical Leave of Absence. Employees will be permitted to maintain health insurance coverage for the duration of the FMLA leave under the same conditions coverage would have been provided if he/she had remained actively at work. However, employees must make arrangements for the continuation and payment of their portion of insurance premiums before they go on unpaid leave status. If the employee does not return to work after the leave, or if they fail to pay their portion of the premiums, they will be required in most cases to reimburse the state for the premiums paid during the leave.

I.  Return from Family and Medical Leave. Upon return from leave which has extended no longer than a total of 12 work weeks in a rolling 12-month period, employees will be restored to the same or equivalent position as the one they held when the leave started. Of course, the employee has no greater right to benefits and other conditions of employment than if they had been continuously employed during the FMLA leave period. Employees on leaves for their own serious health condition

will be required to submit a fitness for duty certification from their health care provider stating that they are able to perform the essential functions of the job before they will be permitted to return to work. An employee's failure to either return to work on the scheduled date of return or to apply in writing for an extension prior to that date may result in discipline up to and including discharge.

J.      An employee shall not be granted FMLA leave of absence for the purpose of seeking or taking employment elsewhere or operating a private business. Unauthorized work while on a leave of absence will result in disciplinary action, up to and including discharge.

K.      In the event there is a conflict between the notice and the Family and Medical Leave Act, the Act shall prevail.

## 9-12    ATTENDANCE IN COURT

A.      Jury Duty

1.      The department will not ask that its employees be excused from jury duty except in cases of necessity. Supervisors should request that their employees be excused from jury duty in those instances where their services are required to meet essential work schedules and where public interests are better served by the employees remaining on duty.

2.      Any permanent employee called for jury duty shall be allowed time away from work with pay for such purposes.

3.      Employees must report for work during any periods they are excused from jury duty.

4.      Employees whose normal work schedule falls entirely outside the core work hours (10 a.m. to 3 p.m.) as defined in Chapter 7-4, *Flexible Schedules,* Section A are not required to report to work while they are serving jury duty. Employees should be assigned temporarily to a day shift operation for the purposes of "calling in" for jury service and then report to work on those days that they are not required to serve for jury duty. In the event there is no day shift operation to assign the employee to, the employee must be excused from work for the duration of the jury duty assignment.

B.      Witness Service

1.      Whenever department employees are requested to be witnesses in civil lawsuits related to the department's operations, the employee must insist on being subpoenaed and not agree to serve voluntarily as a witness. The foregoing policy does not apply to an employee who is a party to the lawsuit, if the suit has no relationship to the department's operations or if the Attorney General requests voluntary appearance by the employee.

2.      Documents shall not be provided except in response to a subpoena handled in accordance with the procedures in Departmental Order 6-1: *Official Handling of Legal Papers and Related Communiqués* or in compliance with a request for public records in accordance with the procedures in Departmental Order 9-4: *Request for Public Information*.

3.      If a subpoena is issued by any judicial, legislative or administrative tribunal in a matter relating to department operations, the employee shall have time away from work with pay to serve as a witness. If an employee is subpoenaed for something other than a department-related matter, the employee shall be granted time off with pay unless the employee is personally involved. An employee who receives a subpoena or notice to appear in a personal litigation non-work-related matter must use available vacation, personal business leave, compensatory time or be absent without pay.

4.      The employee's supervisor is to be notified when the employee receives either a request to appear as a witness or is subpoenaed, and the supervisor shall be responsible for the approval of the leave request.

C.      Expert Witness Testimony. A department employee shall not serve as an expert witness if the employee's expertise is based in whole or in part on employment with the department. An employee who receives a subpoena to appear in a matter in which the employee is likely to be asked to give expert opinion testimony shall contact the Office of Chief Counsel which will contact the Attorney General's Office to request that a motion be filed to quash the subpoena. This provision does not apply to an employee asked to testify on behalf of the department, the state, another state or the United States.

D.      Jury/Witness Service Pay

1.      Pay received by an employee for jury duty or witness fees shall be turned over to the department for forwarding to the State Treasury by the Bureau of Business Services. The employee may not waive a fee set by law and is responsible for remitting the full amount of the fee to the department. The employee may keep any pay received for jury duty or for witness service if performed while on vacation, personal business leave, compensatory time off for accumulated overtime, or during other regularly scheduled time off. The employee may retain any portion of such pay that covers mileage and parking reimbursement.

2.      Temporary employees shall have time off without pay for jury duty or witness service not required by the department and may retain pay received for such services.

## 9-13  MILITARY LEAVE

A.      Military leaves of up to four years are granted to all permanent employees, except temporary employees who leave their positions to enter military service. A permanent employee may be restored to the same or a similar position by making application to the employing agency within 90 days after discharge or from hospitalization continuing after discharge for not more than one year.

B.      Military Reserve Training and Emergency Call-Up

1.      Any full-time employee who is a member of any reserve component of the United States Armed Forces or of any reserve component of the Illinois State Militia shall be granted leave from the department for any period actively spent in such military service including basic training and special or advanced training, whether or not within the state, and whether or not voluntary.

2.      To be eligible for military reserve leave or emergency call-up pay, the employee must provide the employing agency with a certificate from the commanding officer or his/her unit that the leave taken was for either such purpose.

3.      During basic training and up to 60 days of special or advanced training, if such employee's compensation for military activities is less than his/her compensation as a department employee, s/he shall receive his/her regular compensation as a department employee minus the amount of his/her base pay for military activities. During such training, the employee's seniority and other benefits shall continue to accrue.

4.      In the case of an emergency call-up (or order to state active duty) by the Governor, the leave shall be granted for the duration of the emergency with pay and without loss of seniority or other accrued benefits. Military earnings for the emergency call-up must be submitted and assigned to the department, and the employing agency shall return it to the payroll fund from which the employee's payroll check was drawn. If military pay exceeds the employee's earnings for the period, the employing agency shall return the difference to the employee.

5.      Should employees serve on their regular days off, they may keep the portion of military pay received. Affected employees may elect to take vacation time during the callout and receive both their salary and military payment.

6.    Annual Training Leave. Any full-time employee, who is a member of any reserve component of the United States Armed Forces or of any reserve component of the Illinois State Militia, shall be allowed annual leave with pay for one full pay period and such additions or extensions to fulfill the military reserve obligation. Such leaves will be granted without loss of seniority or other accrued benefits. During leave for annual training, the employee shall continue to receive regular compensation as a state employee.  The employee must present a copy of the military orders directing such training.  These orders must specify that the time is spent in training. If the employee volunteers to work on setting up the training facility, this time is not part of the training and not eligible for payment. An employee may not use annual reserve training benefits to be in paid status when meeting routine weekend or evening training obligations.

## 9-14    DISASTER SERVICE LEAVE WITH PAY

Any permanent employee who is a certified disaster service volunteer of the American Red Cross or assigned to the Illinois Emergency Management Agency (IEMA) in accordance with the Illinois Emergency Management Agency Act, the Emergency Management Assistance Compact Act, or other applicable administrative rules may be granted leave with pay for up to 20 work days in any 12-month period for disasters within the United States or its territories. The leave may be granted upon request of the American Red Cross or IEMA. Disasters must be designated at a Level III and above.

## 9-15    LEAVE TO ATTEND CONFERENCES AND MEETINGS OF ASSOCIATIONS AND SOCIETIES

A.    All full-time permanent department employees may request time to attend conferences and meetings of associations and societies pertinent to state government employment, but not sponsored by a state agency.  Judgment of the nature of conferences and meetings will be made by the Director of Finance & Administration or his/her designee based on the relevance of the program and its educational value.  Final approval for attendance at in-state conferences and meetings will be made by the employee's director, deputy director or central bureau chief, depending upon operational needs.

B.    Notice of the conference or meeting should be made in writing from the organization sufficiently in advance to allow the approval process to take place. Employees must demonstrate membership in the organization of at least six months prior to their request to attend.

C.    Upon supervisory approval, employees will be allowed one day to attend the meeting and up to one-half day for travel. No overtime hours shall be granted. Verification of attendance is required upon return to work. Employees will only be allowed to take advantage of this type of leave once per calendar year. No payment for registration fees, accommodations, or other related travel expenses will be made by the department, either by direct payment or reimbursement, unless expressly approved by the Secretary or the employee is a designated representative of the department.

D.    Prior written approval for attendance at out-of-state conferences must be obtained from the Secretary.

## 9-16    LEAVE TO TAKE EMPLOYMENT-RELATED EXAMINATIONS

Permanent technical staff may have a leave of absence with pay in order to take examinations for Professional Engineer, Professional Land Surveyor, etc., providing the examination pertains to their job requirements with the department. Employees shall obtain prior approval to take such leave through their director, deputy director, or central bureau chief. The leave time shall allow for reasonable transportation to and from the place of examination. This leave time is not to be deducted from the employee's accrued vacation, accrued overtime or personal business leave time.

**9-17    EDUCATIONAL LEAVE**

A.    The Director of Finance & Administration may grant an educational leave of absence without pay, and any extension thereof, to any employee in one of the following listed categories:

    1.    a staff member with a minimum of one year of uninterrupted continuous service with the department; and/or

    2.    a co-op employee, regardless of length of service, on the technical or engineering staff.

B.    The educational leave is to be used for a specific course of study. Leave for such reason is permissible if the employee's absence will not create an undue hardship on the department, and if in the Secretary's judgment, the course of study will:

    1.    enable the employee to perform more efficiently the duties of their current position, and

    2.    will also qualify the employee for a position the department ordinarily has a difficult time filling through recruitment channels.

C.    An outline of the proposed course of study must be included in an application for educational leave.

D.    The leave, or an extension, if approved, will be granted for not more than one school year (two semesters or three quarters at a time). The employee must work full time for at least three months of each year. There is no limitation on the total number of educational leave periods and extensions for an employee making satisfactory progress in the approved course.

E.    Progress in the course is to be reviewed at the time of each request for an extension. At the end of every quarter or semester of study, the director, deputy director, or central bureau chief may request an employee's up-to-date transcript of credits.

F.    Persons who have been on military leave of absence for any period of time are eligible for an educational leave after they have worked for the department for a minimum of 12 months following the military leave.

G.    An educational leave is not considered as an interruption of continuous service, provided the employee returns from leave. The employee on educational leave shall neither earn nor receive credit for any other employment benefits, except state-paid health and life insurance. A co-op employee must work at least half time during the co-op period to be eligible for state-paid health and life insurance, for which the employee pays a prorated share of the premium.

H.    The department shall reinstate the employee to the same or an equivalent position to the one held immediately prior to the leave.

I.    An employee may be discharged if they fail to return to work within five days after an educational leave has expired.

**9-18    OTHER EXCUSED ABSENCES**

A.    Emergency Closing. If a departmental facility is officially closed due to a disruption of work at the worksite caused by a condition beyond the control of the department such as equipment failure, fire, flood, snow, tornado, or other natural disasters, or interruption of essential services such as water or electricity, the employees who are at work may be dismissed with pay for the remainder of that day. In accordance with CMS Personnel Rules and Departmental Order 14-2: *Emergency Closure Policy and Procedures*, the employees will also be paid for any subsequent days that the facility is closed for the same reason (up to five days).  If weather conditions prevent employees from reporting to work or if they choose to leave work due to severe weather, employees may opt to charge their absenteeism against earned vacation, compensatory time or unused personal business leave.  If the employee does not have appropriate unused leave time, they may be docked.

B.    Blood and Organ Donations. An employee is allowed up to one hour every 56 days, without loss of pay, for the purpose of blood donation. An employee is allowed up to two hours to donate or attempt to donate blood platelets without loss of pay. Subject to supervisory approval, reasonable requests to extend the above noted time allowances may be granted. Leave to donate blood platelets may not be granted more than 24 times in a 12-month period. An employee may be required to submit documentation after donating or attempting to donate blood or blood platelets.

An employee is entitled to Organ Donor Leave with pay if approved. An employee may use up to six weeks of Organ Donor Leave in any 12-month period to serve as a bone marrow donor or up to six weeks in any 12-month period to serve as an organ donor. Time off is subject to prior supervisory approval and operational needs. This time will not be charged against any accrued leave time of the employee.

If the employee's medical condition from the organ donation precludes him/her from returning from leave after expiration of the six-week paid leave, the employee may use his/her own accumulated sick time to account for his/her remaining absence. If no sick time is available, the employee may use other accumulated time or request a Non-Service Disability Leave to account for the absence.

C.    School Visitation. An employee with at least six consecutive months of service may be granted leave to attend his/her child's or children's school conference(s) or classroom activity(ies) if such cannot be scheduled during non-work hours. A total of four hours on any given day, not to exceed eight hours during any school year, may be granted. This is an unpaid leave and is available only after the employee has liquidated all accrued leave except sick time. A written request must be submitted at least seven calendar days in advance (or at least 24 hours in case of an emergency, if possible). Written proof of the visit must be submitted to the employee's immediate supervisor within two working days and attached to the leave request, or the employee may be subject to disciplinary procedures for unexcused absences.

D.    Veterans Hospital Visits. An employee who is also a veteran shall be permitted four days per year to visit a veteran's hospital or clinic for examination of a military service-connected disability. The four days shall not be charged against any sick leave currently available to the employee. Written proof of the visit must be submitted to the employee's immediate supervisor within two working days and attached to the leave request, or the employee may be subject to disciplinary procedures for unexcused absences.

## 9-19    JOB ABANDONMENT

An employee who is absent for five consecutive work days without reporting to the department may be discharged.

## 9-20    LEAVE WITHOUT PAY

A.    Employees will not be granted leave without pay as a matter of right. Granting of leave without pay is a matter of administrative discretion and is subject to the following conditions:

1.    an employee who has been authorized time off shall not be docked for an absence until s/he has exhausted the appropriate earned benefit time;

2.    leave of absence is not to be granted to a temporary or emergency employee;

3.    one or more extensions of up to six months of leave of absence are permissible;

4.    leave of absence for an entire pay period or more is subject to the approval of the Bureau Chief of Personnel Management;

5.      if an employee is on leave of absence without pay for more than 30 days in any 12-month period, the time on leave is to be deducted from creditable service, continuous service seniority (if applicable) and vacation earning dates unless the leave is for military or educational purposes, to serve in the Peace or Job Corps or due to occupational and non-occupational disability;

6.      upon return from a leave without pay within six months, the department shall assign the employee to the same position or an equivalent position as held before the leave;

7.      upon return from a leave without pay in excess of six months, an employee may be laid off if there is no vacant position available in the same class or grade in which the employee was the incumbent. (Refer to Illinois Department of Central Management Services Rule 303-148 for additional conditions for Code employees.); or

8.      failure to return from leave within five days after the expiration date may be cause for discharge.

B.     Absence without pay is excused absence from work for personal reasons other than those addressed in this chapter. Requests for such leave may be granted only under the following conditions:

1.      the requested leave is one in which unusual circumstances exist;

2.      the department especially desires to retain the employee in its service, even at the cost of replacing another employee;

3.      work requirements permit the employee's absence without unreasonable disruption of work; and

4.      the employee intends to return to the department at the end of the leave of absence.

C.     Leave Policy Requirements for Non-Occupational Disability Benefits. Sick leave may be used for disability of the employee.  In addition, a State Employees Retirement System member with at least $1\frac{1}{2}$ years retirement credits may be granted non-occupational disability benefits. The rules of the retirement system state that disability benefits are provided for periods for which there is no sick leave pay. Based on the foregoing, therefore, it is necessary for an employee who is subject to non-occupational disability to use all sick leave prior to becoming eligible for non-occupational disability benefits through the retirement system. If it appears that the disability is of a temporary nature, the utilization of vacation time is optional.

# CHAPTER 10 - EMPLOYEE CONDUCT

**10-1    POLICY**

The department now has in effect and will establish from time to time such reasonable rules as it considers necessary to maintain the orderly and efficient conduct of its business, to maintain good order and discipline, to provide for the safety of its employees and property and to comply with public laws.

**10-2    RESPONSIBILITIES**

All department employees are required to adhere to and comply with Departmental Orders, Departmental Policies, rules and objectives as well as comply with all of the following sections. Failure to do so could result in disciplinary action, up to and including discharge.

Supervisors are expected to exercise proper supervision over subordinates. Supervisors shall take corrective action when warranted and address/report misconduct and/or rule violations of subordinates in a fair, consistent, and equitable manner.

**10-3    GUIDELINES**

A.      Alcohol and Drugs

    1.      Possession of alcoholic beverages or addicting and/or illegal drugs on department property, including in state vehicles, department sites or on state time is prohibited (*see Vehicle Operator's Manual*). Reporting for work under the influence of any illegal drug or alcohol is forbidden, and no employee will be permitted to remain at work while under the influence.

    2.      Employees may possess and use prescription drugs provided solely for their use by a physician unless the medication adversely affects the employee's ability to perform the job and/or is a risk to the safety of the employee, co-workers, or the public.

    3.      Employees who are approached by anyone on department premises or worksites with regard to the purchase of illegal drugs must report this fact to their supervisors.

B.      Cell Phones/Pagers. The employer recognizes the occasional need for emergency usage of wireless communication devices. Such usage, however, shall not occur while driving, operating equipment or while engaged in other potentially hazardous activities (*see Vehicle Operator's Manual*).

C.      Civil Rights Violations. An employee shall not engage in actions which constitute a violation of federal and state laws and Executive Orders. Examples of conduct which could constitute such violations are: sexual harassment, racial harassment, sexually or racially-offensive remarks/materials, discrimination on the basis of an individual's race, color, national origin, religion, age, sex, marital status, disability, unfavorable discharge from military service or any other non-merit factor. See also Chapter 2: *Equal Employment Opportunity/Affirmative Action* for further information.

D.      Courtesy. Employees shall treat all members of the public and other employees fairly, impartially, and with respect and promote a positive public image of the department.

E.      Disruptive Conduct. Employees shall not engage in disruptive conduct or activities, including but not limited to, instigating or participating in disruptive behavior, horseplay, interrupting work or impeding the work effort of others.

F.      Distribution of Materials. No employee may distribute written or printed matter of any description (non work-related) on department premises or at department worksites unless approved by management or otherwise authorized by a collective bargaining agreement.

G.      Employee Appearance. Reasonable modes of dress and personal hygiene currently acceptable to the community standards with consideration to the nature of the assignment should be followed by department employees so as not to disrupt the work place. This shall prevail except where a certain mode of dress is required by the department's Employee Safety Code or other safe practice directives, or bargaining unit language. Supervisors shall be responsible for making determinations of reasonable modes of dress and personal hygiene for their work area.

Where required and/or where provided, employees shall wear their uniforms.

Wearing clothing and hats that display the name of contractors or consultants doing business with the department may be considered a conflict of interest as outlined in Chapter 15: *Conflict of Interest*.

H.      Employee Ethics. Employees shall comply with all provisions set forth in the *State Officials and Employees Ethics Act (5 ILCS 430)*.  Employees of the department are subject to a higher standard of conduct and scrutiny than most citizens.  The efficient operation of the department requires public trust and confidence in its employees. Employees shall conduct themselves and their business to the highest possible ethical standards that reflect professional management and/or engineering practices.

An employee shall keep confidential all information acquired through his/her employment with the department unless and until such information becomes available to the general public or is required to be released pursuant to the *Illinois Freedom of Information Act*, or other lawful authority, or is requested by the person(s) to whom the information relates pursuant to a valid written release. In accordance with the *State Records Act* and Departmental Order 6-10: *Order on Personal Employee & Private Entity Confidential Information*, all documents containing sensitive personal information such as social security numbers, FEIN or TIN numbers, medical information, financial information or any other personal/confidential information must be properly shredded prior to disposal with the exception that such documents may be deposited into secure department-approved receptacles specifically designated for confidential disposal.

Employees shall not use their official position for personal gain or influence.

I.      Gambling.  All gambling on state property or during work hours is prohibited.

J.      Insubordination/Failure to Perform Duties

1.      Employees will comply with the instructions or orders given by their immediate supervisor or higher-ranking supervisory personnel.

2.      Employees shall not show disrespect toward their immediate supervisor or higher-ranking supervisory personnel.

3.      Employees shall not interact with a person in authority in an argumentative or hostile manner, including the use of insulting, abusive, or profane language.

K.      Investigations. In accordance with Departmental Order 6-9: *Departmental Quality Compliance*, the Office of Quality Compliance and Review is designated as the liaison with the Division of Internal Investigations of the Illinois Department of State Police. All employees are required to participate in, and cooperate with, all official internal administrative department investigations, as well as administrative investigations conducted by the Office of the Executive Inspector General and the Illinois State Police. Employee cooperation may include providing oral and written statements to investigators and sworn testimony as required by law.

The existence of and an employee's participation in an internal administrative investigation is strictly confidential, with exception of disclosures made to those on a need-to-know basis during the course of a subsequent disciplinary proceeding.

Revealing the existence of an investigation, its contents, or the identity of an employee who is the target of an investigation could result in discipline up to and including discharge, with the exception of disclosures made to those on a need-to-know basis during the course of a subsequent disciplinary proceeding, or as otherwise required by law.

Any investigation or inquiry shall be conducted within the parameters of the provisions of any applicable collective bargaining agreement as well as employee rights afforded by state and federal laws.

Failure to cooperate by asserting a Fifth Amendment right against self-incrimination in an administrative investigation will be construed as impeding the process and could result in termination of employment.

L.     Lawfulness. Employees shall obey all laws and ordinances of the state of Illinois and all rules and regulations of the Department of Transportation.

M.     Lost and Found Articles. Employees shall make every effort to return articles found by employees to their rightful owners after proper identification. If not claimed, the article is sent to the appropriate state agencies for disposition.

   1.     Articles found on state highways are retained at the department office in the vicinity they are found for 10 days for claim by the rightful owner. After that time, unclaimed articles should be turned over to Central Management Services just as any other item of state property for which a need no longer exists.

   2.     Lost articles found on private property belong to the property owner.

   3.     A department employee who has found the articles cannot claim them as their own.

   4.     Vehicle license plates found along state highways are to be given to the Illinois State Police for disposition.

   5.     The department is not required to expend public funds to advertise items found.

N.     Personal Mail. Personal mail shall not be received at the employee's office or work area. The department's mailroom and/or reception desk personnel will not be held responsible for any deliveries.

O.     Professionalism. Employees shall act in an orderly manner, with honesty and integrity and preserve confidentiality in the performance of their duties. Employees shall not post or display obscene or profane material and/or use obscene or profane language or gestures.

P.     Public Image. The department and its employees are constantly in the public eye. Employees shall promote a positive public image of the department and refrain from actions which could bring discredit or embarrassment to the department. Employees are expected to exercise discretion when operating/parking department vehicles; such operation shall be in a manner that does not jeopardize the attitude of the public toward the department.

Q.     Reporting Questionable Incidents. All employees are responsible for reporting to their immediate supervisors or their chain of command any incidents or allegations of misconduct, corruption, conflicts of interest, malfeasance or misfeasance.

R.    Safety. Employees shall know that no task is so important or urgent that he/she might consider compromising safety, violating a safety rule, or taking a risk of injury/illness in order to get the job done. All employees shall follow the department's safety standards as set forth in *Departmental Order 5-1: Employee Safety Code* and all safety rules and standards applicable to their work assignment. Employees who fail to follow safety rules and standards shall be subject to disciplinary action, up to and including discharge. Supervisors are required to follow and enforce safety rules and standards consistently. Supervisors who fail to address safety violations by subordinate employees and/or allow for circumvention of safety rules and standards will be subject to disciplinary action, up to and including discharge. Employees shall not operate equipment or vehicles in a negligent or careless manner. Pranks, jokes or other activities which endanger the safety of the employee or others will not be tolerated.

1.    Safety Equipment. The department provides a variety of Personal Protective Equipment (PPE) and safety equipment for employees to protect them from the hazards of the particular task being performed. Employees are required to use the provided safety equipment and wear required Personal Protective Equipment.

2.    Safety Shoes

a)    Steel-toe (or equivalent composite toe that meets the ANSI Class 75 Standard or current ASTM Standard) safety shoes shall be worn by the employees as a condition of employment when their position or work assignment requires them. Safety shoes for employees shall be a 6-inch or higher work shoe of sturdy construction and shall meet the requirements and specifications for ANSI Class 75 footwear or current ASTM Standard. Casual style footwear, such as canvas, sport, slip-on, tennis shoes and loafers, even though constructed with steel (or equivalent composite toe that meets the ANSI 75 Class or current ASTM Standards), are not acceptable.

b)    All air hammer operators shall wear metatarsal arch protection. Separate metatarsal guards shall be provided by the department.

S.    Smoking. In accordance with *The Smoke Free Illinois Act*, smoking is prohibited in all state-owned vehicles and facilities, including buildings and vehicles owned, leased, or operated by the state or state subcontract (*see Vehicle Operator's Manual*). Smoking is also prohibited in an area within 15 feet of entrances, exits, windows that open, and ventilation intakes.

T.    State Property

1.    State property is defined as any real or personal property, legally owned or leased by the state of Illinois, or acquired by state employees while performing official state business. This means all property including but not limited to real estate, buildings, vehicles, furniture, equipment, tools, supplies and any scrap items of value.

2.    Employees shall not:

a)    use or consume state property, including state credit cards, for personal or private purposes. State property is to be utilized only for conducting official state business and disposed of in accordance with rules and regulations.

b)    remove any property belonging to the state or property belonging to any person without state authorization or authorization of the owner of the property.

c)    intentionally or carelessly damage, deface, lose, misuse or waste state property or the property of others.

d)    use state telephone services for personal use. Authorized/unauthorized use of state telephone services is outlined in 10-3 U below.

e) use state information technology resources for personal use. Authorized use of information technology resources are outlined in *Departmental Order 8-2: Information Technology Resources Usage Code.*

f) permit, without authorization from a supervisor, another person the use of their state-assigned identification cards, pager, telephone, keys, state vehicle, computer or other state property.

g) retain any state assigned property upon separation from the department.

h) intentionally or carelessly fail to properly maintain state equipment, materials, supplies, or other state property.

3. Employees may be held financially liable for damage or loss of state property resulting from unauthorized use or negligence. Intentional damage or destruction of state property may result in prosecution.

4. Disposal of State Property.

a) Prior to the disposal of any state property, written approval must be granted by the Property Control Division of the Department of Central Management Services. State property cannot be given away, sold, traded-in, salvaged for parts, or otherwise disposed of without securing proper approval. The region or central bureau property control manager is responsible for coordinating the disposal of state property. No employee shall profit from the sale of state property.

b) This policy is based upon the requirements of the state *Property Control Act* and the department's *Property Control and Inventory Procedures* manual. Section 9 of the Act provides that a violation of the provisions of the Act or the regulations constitutes a Class B Misdemeanor.

c) *Departmental Order 12-5: Department of Transportation Procedures for Property Control and Inventory* establishes standardized procedures for the control and inventory of department property.

U. Telephone Systems. The use of state telephone services is limited to official business and emergency calls. Official business calls are calls that are in the best interest of the state.

1. A call may be considered as authorized and/or in the best interest of the state if it does not adversely affect the performance of official duties by the employee or the employee's organization; it is of reasonable duration and frequency; and it could not have reasonably been made during non-work hours.

2. For any use of the state telephones beyond the parameters of this section, employees shall be charged actual DCMS billed charges plus $1.00 per minute for long distance calls and $.50 per minute for local calls. Payment of toll and other charges does not preclude the department from instituting appropriate disciplinary action.

4. Third number calls (calls billed to a telephone number other than the calling or called number but not a credit card or collect call) are prohibited.

5. Collect calls will not be accepted except in the event of a business-related emergency.

6. Reimbursement of employee owned/leased cellular phone use from any state appropriation is strictly prohibited.

V. Theft. Employee theft of state property, state resources or the property of fellow employees or the public will not be tolerated. Aiding and/or abetting such actions is also prohibited.

W.      Truth in Reporting. Employees are expected to report accurately and truthfully all information pertaining to employment including, but not limited to, applications, timekeeping records, travel vouchers, and any written reports, verbal reports or testimony given during an official investigation. Employees shall not knowingly make false accusations against other employees.

X.      Weapons, Explosives, Etc. No employee is allowed to carry, retain or bring to the department's premises or worksites any explosives, firearms or other weapons.

Y.      Work Performance. Employees shall perform their duties to the best of their abilities and cooperate with others in the performance of their duties as assigned. Inattention to work, including but not limited to, sleeping, loitering or loafing shall not be tolerated. Employees are expected to possess and demonstrate the skills and abilities necessary to perform the duties and responsibilities of their position. Work assignments shall be completed accurately, in a timely fashion and with good workmanship and judgment.

# CHAPTER 11 - SEXUAL HARASSMENT POLICY

## 11-1    POLICY

It is the policy of the department to ensure the workplace is free from sexual harassment. The department's policy on sexual harassment protects applicants and employees against sexual harassment and protects an employee who files a sexual harassment from retaliation.

## 11-2    RESPONSIBILITIES

A.     It is the responsibility of each employee to refrain from sexual harassment, and it is the right of each employee to work in an environment free from sexual harassment. An employee who sexually harasses a fellow worker is liable for his or her individual conduct. The harassing employee will be subject to disciplinary action up to and including discharge.

B.     Each supervisor is responsible for maintaining the workplace free of sexual harassment. This is accomplished by promoting a professional environment and by dealing with sexual harassment as with all forms of employee misconduct. Supervisors will be held liable for any damages related to sexual harassment. S/he could be subject to disciplinary action up to and including discharge.

Specifically, a supervisor must address an observed incident of sexual harassment or a complaint, with seriousness, take prompt action to document it, conduct preliminary interviews to gather fact and information, and observe strict confidentiality. This also applies to cases where an employee tells the supervisor about behavior considered sexual harassment but does not want to make a formal complaint.

Form EEO 1944: Supervisor's Sexual Harassment Complaint Checklist is available to guide supervisors through this process. Failure by a supervisor to appropriately report or address sexual harassment complaints or suspected acts shall be considered a violation of this policy.

In addition, supervisors must ensure that no retaliation will result against an employee making a sexual harassment complaint. It is unlawful for an employer to retaliate against an individual for filing a sexual harassment complaint. It is also unlawful to retaliate against any employee for participating in an investigation of a sexual harassment complaint. Retaliation is a serious violation that will subject the offender to sanctions independent of the merits of the sexual harassment allegation. Common forms of retaliation include, but are not limited to:

• "suspending" the charging party during investigation;

• giving the complainant and/or witnesses a bad evaluation as a result of filing a discrimination complaint or participating in the investigation of a discrimination complaint; or

• moving the complainant and/or witnesses to another shift/location during the course of or after an investigation without due cause.

C.     The Bureau of Civil Rights is available to consult with supervisors regarding the proper procedures to follow.

**11-3    GUIDELINES**

A.    The courts have determined that sexual harassment is a form of discrimination under Title VII of the *Civil Rights Act of 1964*, as amended in 1991. The courts have determined that the department, as well as supervisors, can be held liable for damages related to sexual harassment by a supervisor, employee, or third party (an individual who is not an employee but does business with the department). According to the *Illinois Human Rights Act,* sexual harassment is defined as, "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when":

   1.    submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;

   2.    submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or

   3.    such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

B.    Other conduct commonly considered to be sexual harassment includes:

   1.    Verbal. Sexual innuendoes, suggestive comments, insults, humor and jokes about sex, anatomy or gender-specific traits, sexual propositions, threats, repeated requests for dates, or statements about other employees, even outside of their presence, of a sexual nature.

   2.    Non-Verbal. Suggestive or insulting sounds (whistling), leering, obscene gestures, sexually suggestive bodily gestures, "catcalls," "smacking" or "kissing" noises.

   3.    Visual. Posters, signs, pin-ups, reading material, pictures, slogans, etc. of a sexual nature that are displayed on lockers, doors, walls and other state occupied property.

   4.    Physical. Touching, unwelcome hugging or kissing, pinching, brushing the body, coerced sexual intercourse, or actual assault.

C.    Sexual harassment most frequently involves a man harassing a woman. However, it can also involve a woman harassing a man or between members of the same gender.

**11-4    PROCEDURES FOR FILING A COMPLAINT**

As required by the Rules and Regulations of the Department of Human Rights, the official procedure for filing a sexual harassment complaint is detailed in the department's Affirmative Action Plan.

**11-5    FALSE AND FRIVOLOUS COMPLAINTS**

False and frivolous charges refer to cases where the accuser is using a sexual harassment complaint to accomplish some end other than stopping sexual harassment. It does not refer to charges made in good faith which cannot be proven. Given the seriousness of the consequences for the accused, a false and frivolous charge is a severe offense that can result in disciplinary action, up to and including discharge.

# CHAPTER 12 - VIOLENCE IN THE WORKPLACE

**12-1    POLICY**

A.    The department promotes and strives to maintain a work environment that is free from violence, threats of violence, harassment, intimidation, and other behaviors which by intent, action, or outcome threatens, frightens, harms or endangers the safety of others.

B.    All reports of violence in the workplace will be taken seriously, promptly investigated, and acted upon accordingly by the department.

C.    Employees displaying or threatening violence in the workplace may be removed from the premises and may be subject to disciplinary action up to and including discharge, criminal penalties, or both.

**12-2    RESPONSIBILITIES**

A.    An employee who witnesses, is a victim of, or becomes aware of any incident of workplace violence must immediately report the incident to his/her supervisor. If the supervisor is unavailable, it shall be reported to the next person available in the chain of command. The employee will be required, subsequent to informing his/her supervisor of the incident, to submit a written statement regarding the incident.

B.    A supervisor who receives a report of workplace violence must immediately notify their Administrative Manager, Director or Deputy Director or, if none is available, the next available person in the chain of command, who will then contact Labor Relations and/or the Office of Quality, Compliance & Review for further guidance. If the situation or preliminary investigation at any point reveals potential criminal activity, stop the investigation immediately and contact the Administrative Manager who will then contact the Office of Quality, Compliance & Review.

Supervisors are responsible for submitting written reports of incidents of workplace violence to Labor Relations. The report must include the following: the name(s) of involved individual(s), the time(s), date(s) and location(s) of the incident(s), a detailed narrative of the event, and signed witness statements. Form LR 10: Incident Investigation Interview is available as a tool to aid in the documentation of the event. The report must be prepared and submitted immediately, but should not be held up in the event there is a delay in obtaining signed witness statements, which should be submitted as soon as possible thereafter.

C.    Labor Relations will review all reports and supporting documentation provided by the supervisor and individual(s) involved and, based on that information, will respond and/or direct follow-up investigation as indicated. The department's level of response will be in direct correlation to the severity of the incident. The first priority is to prevent further incidents of workplace violence or injuries. This may entail both administrative action, including the imposition of discipline, up to and including discharge, and the involvement of local or state law enforcement. If deemed appropriate, criminal prosecution may be pursued.

D.    Failure to report an incident or false accusations or reports of workplace violence by any employee or supervisor may be viewed as willful negligence and may result in disciplinary action up to and including discharge.

E.     When dealing with a potentially dangerous or volatile situation that could involve immediate harm to others such as, but not limited to, a person with a gun, a supervisor must call 911 or the local police agency that can provide the fastest response and request immediate assistance. In such instances follow-up contact should be made with the Office of Quality, Compliance & Review.

## 12-3    GUIDELINES

A.     Examples of workplace violence include, but are not be limited to, the following:

1.     Physical Assault. Acts resulting in intentional physical harm or injury. Such an assault can occur by use of a portion of the attacker's body or by use of a weapon or other item capable of causing harm (e.g., hitting an individual with a thrown hammer).

2.     Direct Threat. An action, gesture or statement which directly threatens or shows an intent to do harm (e.g., "I'm going to kill you."). Invading another person's personal space in an aggressive or threatening manner or brandishing a weapon such as a gun, knife, or other item capable of causing harm, can also be considered a direct threat.

3.     Indirect Threat. An action, gesture or statement that threatens or shows intent to harm another (e.g., an employee holds up a hammer and says, "Tomorrow John is going to get this.").

4.     Veiled Threat. An indirect statement which partially conceals the intent or desire to harm another (e.g., "Wouldn't it be unfortunate if the boss were to accidentally fall down the stairs tomorrow morning?").

5.     Conditional Threat. An indirect statement or act that establishes the intent to do harm in the event a certain condition exists (e.g., "If he writes me up tomorrow, he's going to get hurt.").

6.     Intimidation. An act or statement which places an individual in reasonable fear of harm to his person or property (e.g., leaving a photo of an employee on his desk with an "X" through his face).

7.     Harassment. Repeated acts or statements perceived as threatening, such as stalking, following another person, destruction of personal property, verbal demands, or other acts that torment or mentally wear down the recipient.

B.     Jokes about committing violence are prohibited and will be treated as if they are an actual threat.

C.     This order shall be deemed supplemental to all applicable state and federal laws.

# CHAPTER 13 - ALCOHOL AND DRUG TESTING

## 13-1 POLICY

The use of unauthorized controlled substances by any employee poses a significant danger to the health and safety of the employee, co-workers and the public. It undermines public trust, adversely affects productivity, and is, therefore, prohibited (*see Vehicle Operators Manual*). The department shall test for the use of illegal drugs in order to identify possible illegal drug usage and to curtail the introduction of illegal drugs into department facilities.

## 13-2 RESPONSIBILITY

The Bureau of Personnel Management, Employee Services Section is responsible for administering this policy.

## 13-3 GUIDELINES

A.     Random Testing. Employees holding safety-sensitive positions shall be subject to random testing in accordance with the policy and procedures outlined in the department's Alcohol/Drug Testing Policy and Procedures Manual which incorporates certain aspects of the federal *Omnibus Transportation Employee Testing Act of 1991*.

B.     Reasonable Suspicion. Any department employee may be tested when there is reasonable suspicion that the employee is under the influence of alcohol or an unauthorized controlled substance. Reasonable suspicion exists if specific objective facts and circumstances warrant rational inferences that a person may be under the influence of alcohol and/or an unauthorized controlled substance.

C.     Post-Accident. Employees driving a state vehicle or private vehicle at state expense involved in an accident in which a ticket is issued, and either a vehicle is towed, or an injury occurs will be tested as soon as possible after the accident. If the accident involves a fatality, the employee will automatically be tested (*see Vehicle Operator's Manual*).

## 13-4 DISCIPLINE

Disciplinary action for a positive test result shall be imposed as follows:

A.     Refusal to test for alcohol or drugs will result in a suspension pending discharge.

B.     Any positive drug/alcohol test while operating a state vehicle, private vehicle or other motorized equipment on state business or at state expense will result in a suspension pending discharge.

C.     Drugs. A positive drug test will result in a suspension pending discharge. Abuse of prescribed and/or over-the-counter drugs will result in a 30-day suspension, mandatory enrollment in the Employee Assistance Program and periodic random tests for one year from the effective date of suspension.

D.     Alcohol.

   1.     First Offense: 30-day suspension, mandatory enrollment in the Employee Assistance Program and periodic random tests for one year from the effective date of suspension, except as provided for in B. above.

   2.     Second Offense:  Suspension pending discharge.

**13-5     DRUG-FREE WORKPLACE**

The department has established and maintains an ongoing drug-free workplace for all employees, and has an ongoing drug-free awareness and education program in compliance with the *Federal Drug-Free Workplace Act*.

Employees are notified of the following:

A.     That the unlawful manufacture, distribution, dispensing and possession or use of a controlled substance is prohibited in the workplace.

B.     All employees must notify the department in writing of their conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction.

Failure to comply with the above could result in disciplinary action up to and including discharge.

# CHAPTER 14 - VEHICLE OPERATION AND LICENSURE

**14-1    POLICY**

Employees are required to operate vehicles within the law and in accordance with the department's guidelines.

**14-2    RESPONSIBILITY**

A.     Employees are responsible for ensuring they are in compliance with all laws and regulations regarding the use and operation of motor vehicles. Employees whose position requires a valid operator's license or who operation a vehicle and/or mobile equipment at state expense are responsible for (*see Vehicle Operator's Manual 1-1 D (1), 1-2 A (1)*):

　　　　1.     maintaining a valid driver's or operator's license or special permit in the correct classification for the type of vehicle operated;

　　　　2.     immediately notifying their supervisor, in writing, if their license becomes invalid, suspended, revoked or lost;

　　　　3.     renewing their driver's or operator's license prior to the expiration date;

　　　　4.     requesting the SOS to reinstate a suspended or revoked driver's license or to issue a driving permit (reinstatement is not automatic and must be applied for on a form supplied by the SOS);

　　　　5.     requesting, through the courts, a MDDP and a work exemption in order to drive after serving 30 days of statutory summary suspension; and,

　　　　6.     verifying, after any sanction imposed by SOS, that valid driving privileges have been restored (purchase of a driving record abstract from SOS will verify compliance).

B.     Labor Relations is responsible for coordinating and administering the department's Vehicle Operation and Licensure policy and monitors invalid employee driver's licenses via bi-monthly reporting in coordination with SOS.

C.     Bureau Chiefs (or his/her supervisor if the employee is a bureau chief lever or higher) are responsible for completing Form LR 2566: Invalid License Impact Statement in all instances when an employee's driver's or operator's license becomes invalid.

D.     An employee's supervisor(s) shall not knowingly permit an employee to operate departmental vehicles or equipment or private vehicles or equipment at the department's expense, without a valid license or operator's permit. Permitting an employee to do so shall be cause for discipline of the supervisor(s) up to and including discharge.

**14-3    GUIDELINES**

A.     Appendix 1 to Departmental Order 11-2: *Vehicle Use and Security*, details instructions governing operation of departmental vehicles. Illinois Executive Order No. 4 (1992) states that employees possessing or consuming alcohol or drugs in state vehicles or in private vehicles being used at state expense shall be subject to discipline, up to and including discharge .

B.    Employees whose positions require that they possess a valid operator's license, or who operate state vehicles, private vehicles at state expense, state vessels, and/or mobile equipment must have a valid driver's or operator's license or special permit in the correct classification for the type of equipment operated. A "vehicle" is defined in the department's *Vehicle Operator's Manual* as "any form of motorized transportation, including but not limited to cars, trucks, motorcycles, boats, and aircraft."

C.    All employees shall immediately notify their supervisor, in writing, if their license becomes invalid, suspended, or revoked. Failure to report the above information could result in disciplinary action.

D.    Invalid License - Impact Statement

In all instances when an employee's driver's or operator's license becomes invalid, the employee's bureau chief (or his/her supervisor if the employee is bureau chief level or above) will prepare Form LR 2566: Invalid License Impact Statement.

The bureau chief or higher-level supervisor shall submit the impact statement through his/her director to the Director of Finance & Administration or the director's designee.

1.    Significant Impact. In those instances when an employee's driver's or operator's license becomes invalid, and where said loss will have significant effect on the performance of the employee's duties, will increase the costs of the department's operations, the department's liability, or create an adverse public image, or where the employee's position requires that s/he possess a valid operator's license, the employee must choose one of the options listed in subsections a) and b) below. The employee, in exercising one of these options, shall not be permitted to utilize benefit time and shall not be permitted to take a leave of absence (other than the unpaid general leave of absence provided for in subsection a. below) during any period when the employee's license is invalid, unless state or federal law dictates otherwise.

a)    The employee may opt to take an unpaid general leave of absence not greater than 90 calendar days from the date the license becomes invalid. If the employee obtains a license or permit to operate the appropriate class(es) of vehicle(s) during the 90-day period, the employee will be allowed to return to work on the earliest appropriate date after the appropriate documentation is submitted to the employee's bureau chief or higher-level supervisor indicating vehicle operation privileges have been restored.

If this option is selected by the employee and s/he has not obtained a vehicle operator's license or acceptable operator's permit by a date 15-working days prior to the end of his/her unpaid leave of absence, the employee shall be notified of his/her pre-termination meeting in writing by certified mail, return receipt requested, at the employee's last home address listed in the personnel file. The pre-termination meeting shall be scheduled 10 working days prior to the 90th day of the employee's leave.

The employee shall be discharged effective the day after the leave of absence expires.

b)    The employee may opt to terminate his/her employment through resignation with no prejudice.

c)    Failure on the part of an employee to exercise either option a) or b), above, will result in discipline as provided in Section E.1 a) or Section E.1 b) below.

2.    Minimal Impact. If the department determines through the impact statement that the employee's job description or duties require the occasional operation of a state vehicle or an employee's vehicle on behalf of the department, and the invalidity or loss of the employee's

driver's or operator's license will have some impact on the department's operations, the employee will not be allowed to perform duties that require the operation of a vehicle on behalf of the state until the employee has a valid license.

3.      If an employee who is required to occasionally operate a vehicle on behalf of the department fails to notify his/her supervisor about the invalidity or loss of their license, the employee will be subject to discipline as provided in Section E.2 below.

4.      No Impact. In those instances when an employee's driver's or operator's license becomes invalid or lost, and where said loss or invalidity will not have effect upon the department as determined through the impact statement, appropriate action will be taken by the employee's supervisor to ensure that the employee is not allowed to operate a state vehicle, or the employee's vehicle on behalf of the department, until the employee has a valid license in his or her possession and no other action will be taken.

E.      Discipline

1.      Any employee who falls within the provisions of Section D.1, above, and who fails to exercise either option provided for in Section D.1a) or Section D.1b) shall be disciplined as follows:

a)      An employee whose violation does not exceed 90 calendar days shall be suspended one calendar day for each day their license was invalid.

b)      An employee whose violation exceeds 90 calendar days shall be discharged.

2.      Employees who fall within the provisions of Section D.2, above, shall be suspended one day for each day the employee's license was invalid and drove or was assigned a state vehicle, or operated a personal vehicle at state expense. An employee whose violation exceeds 90 calendar days shall be discharged.

3.      Any employee whose license becomes invalid for a second time in five years while employed by the department in a position that has impact as described in Section D.1 and/or Section D.2 above, shall be discharged.

G.      If an employee has any restrictions on his/her driver's license, he/she will operate vehicles or equipment in compliance with those restrictions.

## 14-4   DRIVING PERMITS

Any employee who may lose or have his driver's license invalidated, suspended or revoked by the Secretary of State's (SOS) office may make application for a driving permit which is subject to provisions established by the SOS. Current federal regulations, however, prohibit the SOS from issuing any type of driving permit for commercial motor vehicle (CMV) driving privileges.

A.      Statutory Summary Suspension. A Statutory Summary Suspension is an administrative procedure providing for the automatic driver's license suspension of a driver arrested for driving under the influence (DUI) who fails chemical testing or who refuses to submit to or fails to complete testing. Summary suspensions are automatic, effective on the 46th day from the notice date of the suspension. If a commercial driver's license (CDL) holder receives a Statutory Summary Suspension, his/her CDL privileges will be disqualified for 12 months if a first offender and lifetime disqualification for a second offender.

B.      Monitoring Device Driving Permit (MDDP). Replaces the Judicial Driving Permit (JDP) and allows an eligible first time DUI offender driving privileges after serving 30 days of the Statutory Summary Suspension. This permit allows driving with the requirement that the vehicle be equipped with a Breath Alcohol Ignition Interlock Device (BAIID). A MDDP will not allow a CDL holder to operate a CMV during the offender's Statutory Summary Suspension.

Employees who are eligible for the work exemption should bring their supervisor's name, address and phone number with them to court so that the SOS can contact them for verification.

C.      Breath Alcohol Ignition Interlock Device (BAIID). A device hooked to the ignition of a vehicle that prevents the person from starting the car if the breath sample registers above the allowable threshold. BAIID devices are not allowed on state vehicles or vehicles operated at state expense, but MDDP holders may be eligible for a work exemption.

D.      Restricted Driving Permit (RDP).  A SOS-issued permit granting the privilege of driving a motor vehicle between the petitioner's residence and petitioner's place of employment or within the scope of the petitioner's employment-related duties during a license suspension period. The SOS may not issue a restricted driving permit for the operation of a commercial motor vehicle to a person holding a CDL whose driving privileges have been revoked, suspended, cancelled or disqualified under any provisions of the Illinois Vehicle Code.

When the employee requests a restricted driving permit, the SOS may in turn request proof of the need for the employee to operate a vehicle in the course of employment. If such a request is made, the Director, Regional Engineer or Central Bureau Chief shall submit a statement of fact limited to the following:

1.      Employee's name
2.      Job title
3.      Job requirements
4.      Vehicle operation requirements of job
5.      Work hours (regular)
6.      Work days (regular)
7.      Is employee subject to emergency call-out?
8.      Vehicle operation requirement to and from job
9.      Number of dependents

## 14-5    VEHICLE RISK MANAGEMENT CONSIDERATIONS

A.      The Department of Central Management Services (CMS) is responsible for the administration of the State of Illinois Self-Insured Motor Vehicle Liability Plan. The Plan provides liability coverage (legal representation and self-insurance) for employees, or other authorized vehicle users, when the vehicle use is in the course and scope of employment.

The Office of Chief Counsel, Bureau of Claims, is the designated liaison with CMS in the reporting and litigation defense of auto liability cases. The Bureau of Personnel Management is the designated liaison in auto liability cases where an employee injury occurred, and litigation is not pending against the state.

B.      All accidents, when the vehicle use is in the course and scope of employment, must be reported through the appropriate police agency as well as to the employee's supervisor. A copy of the report should be forwarded to the Office of Chief Counsel, Bureau of Claims, within 24 hours of the occurrence of the mishap (see Vehicle Operator's Manual 1-1 E (8)). Failure to promptly report a vehicle accident is cause for the claim to be denied, and the employee can be held personally liable for all costs associated with the accident.

C.      Per the Illinois Vehicle Code (625 ILCS 5/7-601) every employee who is assigned a specific vehicle owned or leased by the state of Illinois on an ongoing basis shall provide certification of proof of liability insurance coverage extending to the employee when the assigned vehicle is used for other than official state business. This requirement for liability coverage does not change the department's policy that state vehicles are authorized for use only in the performance of essential travel duties related to the completion of official state business.

# CHAPTER 15 - CONFLICT OF INTEREST

**15-1    POLICY**

It is essential that department employees maintain unusually high standards of honesty, integrity, impartiality and conduct in order to avoid conflicts of interest and ensure the proper performance of department business and the citizens' confidence in their state government.

**15-2    RESPONSIBILITY**

It is the responsibility of all department employees and members of their immediate families to avoid situations involving conflict of interest and the appearance of conflict of interest.

**15-3    GUIDELINES**

A conflict of interest occurs when an employee's private interest, usually of a personal, financial or beneficial nature, conflicts with public duties or responsibilities. Such a conflict exists when an employee or an employee's family shares an investment, partnership, employment, other relationship or interest which might interfere or appears to interfere with the employee's ability to exercise independent judgment in the department's best interest. Interests and relationships connected with those persons, businesses, government agencies or other organizations that the department regulates, or that regulate or do business with the department are of particular concern since they may create a real or apparent conflict of interest.

A real or apparent conflict of interest may arise from, but is not limited to situations where employees or a member of their immediate family (spouse, parent, child, brother, sister, grandparent, grandchild, uncle, aunt, first cousin, nephew, niece, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law) would:

A.    receive a direct economic benefit.

B.    accept a fee or other item of economic value from any outside source.

C.    accept remittance for an office or honor from any organization.

D.    solicit donations from businesses or vendors for department-sponsored social events.

E.    be employed by a vendor or entity doing business with the department.

F.    accept honoraria, similar small fees or gratuities for speeches, presentations or other business, or solicit letters of commendation from an entity regulated by or doing business with the department (if these activities are conducted with entities where a conflict of interest does not exist, the activities must occur on the employees' own time).

G.    be reimbursed for travel and related expenses from an entity other than the department if:

   • the entity is regulated by or doing business with the department, or
   • the reimbursement is significantly greater than normal department reimbursement.

H.    manage a contract with any business where the employee's relatives (spouse, parent, child, brother, sister, grandparent, grandchild, uncle, aunt, first cousin, nephew, niece, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law) would receive a direct economic benefit.

I.       gain a direct economic interest in the employee's own name or any other person's name in any contract work, or business of the department, or in the sale of an item where payment for such services or consideration for a contract is paid by:

- department funds,
- funds administered by the department, or
- authorized by the department.

J.       directly or indirectly solicit, accept, or agree to accept for the employee or other person anything of value to influence the employee's job performance or to create an opportunity to defraud the state.

K.       accept outside employment which conflicts with the employee's regular work hours, impairs efficiency or creates a conflict of interest in the performance of assigned duties. In accepting any outside employment, an employee must comply with section 15-4: *Outside Employment* located directly below.

L.       use department personnel, equipment, or supplies in secondary employment.

M.       advertise or endorse (whether or not any compensation is received) any product or service where the advertisement or endorsement includes a reference to employment with the department.

N.       bid on any surplus property, real or personal, offered at auction by the department pursuant to the provisions of Section 4-508 of the *Illinois Highway Code*. This prohibition shall extend to employees as well as family members living within the employee's household.

If an employee feels a real or perceived conflict of interest might be developing, s/he is obligated to promptly disclose the details of the situation to his/her supervisor and the Office of Chief Counsel (OCC). Blanket recusals will not be granted if the basis of the proposed recusal is in anticipation of future employment. However, if a conflict does exist because of active employment negotiations with a specific employer, OCC will determine what the appropriate remedy should be.

If the OCC determines a conflict of interest exists, the OCC will work with the employee and the employee's supervisor to determine if the employee must recuse himself/herself from any aspect of his/her department responsibilities due to the conflict. If a determination is made by OCC that the employee must recuse himself/herself, a recusal letter specifying the steps to address the conflict of interest will be prepared by the employee and must be approved by the employee's supervisor. After approval by the supervisor, the approved recusal letter must be submitted to OCC for review. OCC will determine if the proposed recusal steps appropriately address the conflict of interest and will advise the supervisor and employee. The OCC and supervisor approved letter will be maintained in the OCC recusal file and a copy will be maintained in the office where the employee is assigned.

Employees are not prohibited from participation in charitable, educational and similar organizations provided they do not conflict with the guidelines set forth under this policy. If there is any question of a conflict of interest with outside work or other activities, the employee shall obtain the approval of the OCC before proceeding.

Violation of this policy may be cause for disciplinary action up to and including discharge.

## 15-4     OUTSIDE EMPLOYMENT

Employees may hold outside employment if it does not interfere with the employee's normal department job activities and responsibilities and is not determined to be a conflict of interest as defined *by Illinois State Officials and Employees Ethics* (5 ILCS 430).

It is the responsibility of the employee to notify their immediate supervisor of any outside employment through the completion of Form PM 2538: Notice of Outside Employment. If an employee terminates an outside employment, no notification of that termination is required. If an employee takes a new outside employment, a new form must be completed and submitted to their immediate supervisor.

It is the responsibility of the supervisor to initial the form acknowledging concurrence that the outside employment conforms to this policy and to forward the form to the Bureau of Personnel Management.

It is the responsibility of the Bureau Chief of Personnel Management to initial the form acknowledging concurrence that the outside employment conforms to this policy and to forward the form to the Office of Chief Counsel. It is the responsibility of the Office of Chief Counsel to review the form for any conflict of interest issues and to resolve those issues. Once satisfied that no conflict of interest issues exist, the Office of Chief Counsel shall initial the form and forward to the appropriate Director for final review.

The Director of the Division that the employee is assigned will sign the form. The form will then be returned to the Bureau of Personnel Management for inclusion in the employee's permanent file. A copy of the fully executed form will be made by Personnel and returned to the employee.

Outside employment is defined as the performance of any service which results in payment of money, goods, or services and/or the exercise of control of an enterprise, either public or private, which results in profits.

Limitations to outside employment include:

- An employee may not compete with any department services through outside employment.

- An employee may not hold outside employment that involves the use of information gained through employment with the department.

- An employee may not use any department equipment or supplies in any outside employment, nor conduct outside employment on department premises or during department work hours.

- An employee's outside employment cannot create a real or perceived conflict of interest.

## 15-5    LIMITATIONS ON RETIRED EMPLOYEES

Retired employees who are re-employed with the department on a 75-day per calendar year basis shall not work for a consultant/contractor who is doing work for the department within the same calendar year.

Case: 1:17-cv-08658 Document #: 89-17 Filed: 02/11/21 Page 87 of 119 PageID #:1187

IDOT 001256

Personnel Policies Manual       Chapter 16: Political Activities, Contributions and Gift Ban

# CHAPTER 16 - POLITICAL ACTIVITIES, CONTRIBUTIONS AND GIFT BAN

## 16-1 POLICY

The provisions of this Chapter are developed from the *Illinois State Officials and Employees Ethics* (5 ILCS 430). Any employee who knowingly violates any of the provisions set forth in this chapter shall be subject to discipline, up to and including discharge. The employee may also be criminally prosecuted for violation of certain provisions as noted.

## 16-2 RESPONSIBILITIES

The Office of Chief Counsel will ensure that all employees are aware of and in compliance with these rules. Employees are responsible for complying with these rules. Any questions as to the application or interpretation of these rules and laws summarized herein should be referred by the affected employee through the appropriate director to the Office of Chief Counsel.

## 16-3 GUIDELINES

Political Activities and Contributions: The right of departmental employees to voluntarily engage in political activities and to make political contributions must be recognized and respected when they comply with the provisions of this chapter and the Ethics Act.

A. Department employees may not engage in any prohibited political activities while on "state time/premises."

B. Department employees may not misappropriate any state property or resources for the benefit of a campaign for elective office or for any political organization.

C. Department employees may not be required by supervisors to perform prohibited political activities as a condition of employment with the state, or in consideration for any state compensation or benefit.

D. As used in the Ethics Act, the term "political" means any activity in support of or in connection with any campaign for elective office or any political organization, but does not include activities relating to the support or opposition of any executive, legislative, or administrative activities relating to collective bargaining, or that are otherwise in the furtherance of the person's official state duties.

E. Fifteen Specific Prohibited Political Activities. Employees who violate any of the following are subject to disciplinary action:

  1. Preparing for, organizing, or participating in any political meeting, political rally, political demonstration, or other political event.

  2. Soliciting contributions, including but not limited to the purchase of, selling, distributing, or receiving payment for tickets for any political fundraiser, political meeting, or other political event.

  3. Soliciting, planning the solicitation of, or preparing any document or report regarding anything of value intended as a campaign contribution.

  4. Planning, conducting, or participating in a public opinion poll in connection with a campaign for elective office or on behalf of a political organization for political purposes or for or against any referendum question.

5.  Surveying or gathering information from potential or actual voters in an election to determine probable vote outcome in connection with a campaign for elective office or on behalf of a political organization for political purposes or for or against any referendum question.

6.  Assisting at polls on Election Day on behalf of any political organization or candidate for elective office or for or against any referendum question.

7.  Soliciting votes on behalf of a candidate for elective office or a political organization or for or against any referendum question or helping in an effort to get voters to the poll.

8.  Initiating for circulation, preparing, circulating, reviewing, or filing any petition on behalf of a candidate for elective office or for or against any referendum question.

9.  Making contributions on behalf of any candidate for elective office in that capacity or in connection with a campaign for elective office.

10. Preparing or reviewing responses to candidate questionnaires in connection with a campaign for elective office or on behalf of a political organization for political purposes.

11. Distributing, preparing for distribution, or mailing campaign literature, campaign signs, or other campaign material on behalf of any candidate for elective office or for or against any referendum question.

12. Campaigning for any elective office or for or against any referendum question.

13. Managing or working on a campaign for elective office or for or against any referendum question.

14. Serving as a delegate, alternate, or proxy to a political party convention.

15. Participating in any recount or challenge to outcome of any election.

Employees are not precluded from voluntarily participating in any of these activities while on their own time and using non-state resources. Violation of these provisions is a Class A misdemeanor. Officers and employees who violate this section are also subject to discipline up to and including discharge.

F.  Campaign Contributions on State Property

Campaign contributions may not be made, solicited, offered, or accepted by public officials, state employees, candidates for office, any political organizations, or lobbyists in any building owned or leased exclusively by the state. There is a limited exception for residences of state officers and employees that are supported with state funds. An inadvertent solicitation returned to the source on a "timely" basis is not to be considered a violation. Intentional violation of this section is a business offense and can result in fines ranging from $1,001 to $5,000. Officers or employees who violate this section are also subject to discipline up to and including discharge. The State Board of Elections may also impose a civil penalty in an amount equal to 100% of any contribution made in violation of this section.

G.  Fundraising in Sangamon County

No constitutional officer, member of the General Assembly, or any candidate for constitutional office or the General Assembly may hold a fundraiser in Sangamon County on any day the legislature is in session beginning February 1 until the day after adjournment of the Spring session or during the Fall Veto Session. A limited exception is provided for members or candidates from a district that is located entirely within Sangamon County, for the period between June 1 and the first day of the veto

session. Violation of this section is a Class A misdemeanor. Officers or employees who violate this chapter are subject to discipline up to and including discharge.

H.      Prohibited Offer or Promise

Department employees may not promise anything of value related in any way to state government, including employment, promotions, or salary increases, in return for a campaign contribution.

I.      *Hatch Act* Violations

An employee whose principal employment is in connection with an activity financed in whole or part by loans or grants made by the federal government and who exercises any function in connection with that activity may not at any time:

1.      use their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office;

2.      directly or indirectly coerce, attempt to coerce, command or advise other employee whose principal employment is in connection with a federally-funded activity to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes; or

3.      be a candidate for elective office in a partisan election.

Such an employee may participate in all political activities not specified above, including candidacy for office in a nonpartisan election and candidacy for political party office.

The *United States Merit System Protection Board* is responsible for enforcing the prohibitions of the Hatch Act. If the Commission determines that an employee has violated any of these prohibitions, it may order the employee's removal from employment (5 U.S.C. Sec. 1501, et seq.).

J.      No employee may promise anything of value, including but not limited to, positions in government, promotions, salary increases or preferred treatment of any type whatsoever, in return for a contribution of anything of value to any political party or other entity which has as one of its purposes the financial support of candidates for elective office.

K.      No political work shall be done on any state premises.

L.      No employee's performance shall be graded with respect to his/her contribution of work for political parties.

## 16-4      GIFT BAN

A.      State employees are compensated by the State of Illinois for their service and employees should not expect additional gifts or favors from other sources. The purpose of this IDOT Gift Ban is to:

1.      reduce the perception that a gratuitous gift received by any employee could affect the performance of his/her duties in a manner not in the public's best interest;

2.      help ensure that the Illinois Department of Transportation's employees are constant and diligent stewards of taxpayers' funds; and

3.      avoid the perception by "prohibited sources" and those entities who want to be "prohibited sources" that gifts or favors are required to do business with the State of Illinois.

B.      No department employee or their spouse, domestic partner, or immediate family member can directly or indirectly **solicit** gifts from a "prohibited source."

C.      Except as otherwise provided in this Section, no department employee or their spouse, domestic

partner, or immediate family member can directly or indirectly **accept** gifts from a prohibited source.

D.  If a prohibited source offers an employee a non-meal type gift that does not meet one of the exceptions in this Section, the employee shall refuse the gift and report the offer to the IDOT Ethics Officer. Article 10 Section 15 of the Illinois State Officials and Employees Ethics Act specifically states, "No prohibited source shall intentionally offer or make a gift that violates this Section."

E.  A "prohibited source" is any person or entity who:

1.  is seeking official action by the employee or by the department;

2.  does business or seeks to do business with the employee or with the department;

3.  conducts activities regulated by the employee or the department;

4.  has interests that may be substantially affected by the performance or non-performance, of the employee or by the department; or

5.  is registered or required to be registered, as a lobbyist. An entity that is not otherwise a prohibited source does not become a prohibited source merely because a registered lobbyist is one of its members or serves on its board of directors.

F.  A "gift" includes any gratuity, discount, entertainment, hospitality, loan, forbearance or other tangible or intangible item having monetary value. A "gift" includes but is not limited to cash, food, and drink and honoraria for speaking engagements related to or attributable to state employment. Examples of gifts include attendance as a guest to any entertainment events or venues (i.e. sporting events, concerts, golf outings, etc.). Attending events and socializing with prohibited sources is allowed if the employee pays the actual amount of the event which would accrue to a member of the public or a member of the association/group, whichever is greater.  A participating employee who wishes to attend events at their own expense shall obtain supervisory approval and take appropriate time off if the event is being held during the employee's work hours.

G.  Exceptions: Each of the exceptions listed below are mutually exclusive and independent of one another.  The exceptions are as follows:

1.  small gifts of nominal value to commemorate specific, special occasions (i.e., plaques, pen sets, mugs, certificates, etc., for anniversaries or retirements).

2.  opportunities, benefits, and services that also are available on the same conditions as for the general public;

3.  anything for which the employee pays the market value;

4.  any (i) campaign contribution that is lawfully made under the Election Code or under the Illinois State Officials and Employees Ethics Act or (ii) activities associated with a fundraising event in support of a political organization or candidate;

5.  educational materials and missions;

6.  travel expenses for a meeting to discuss state business;

7.  a gift from a relative;

8.  a gift from a friend unless the employee has reason to believe that, under the circumstances, the gift was provided because of the official position or employment of the employee;

9.  food or refreshments not exceeding $75 per person in value on a single calendar day, provided that the food or refreshments are (i) consumed where they were purchased or prepared or (ii) catered. This exception is only allowed up to a maximum of four times per calendar year per employee from any and all prohibited sources.  However:

    a)  prohibited source events where an employee is being honored for exemplary service or is participating as a speaker or panel participant and accepts food or refreshments not exceeding $75, do not need to be counted as one of the four allowed exceptions;

      b)    customary nominal refreshments such as coffee, soft drinks, and pastries provided at meetings or other business settings are not counted as one of the four allowed exceptions;

      c)    conference meals provided by non-grantee, charitable organizations and business leagues recognized under 501(c)(3) and 501(c)(6) of the Internal Revenue Code are not counted as one of the four allowed exceptions. Typically, most charities and churches fall under the 501(c)(3) classification and most transportation trade organizations fall under the 501(c)(6) classification; and

      d)    if an employee exceeds the maximum of four times per calendar year for meals, the employee is in violation of this policy unless they make a contribution to an acceptable charity of equal or greater value. The charitable donation must be separate and in addition to any donations regularly made by the employee (i.e. an employee may not use payroll deductions, or regular weekly church donations, etc.) The donation must be made after the receipt of the gift and must be in an appropriate monetary form (i.e. cash, check, debit or credit cards are examples of acceptable monetary forms.) Donations of goods are not acceptable for this purpose. The charity must be exempt from income taxation under Section 501(c)(3) of the Internal Revenue Code. As a matter of record, employees are required to document these transactions on Form OCC 2505. The documentation must be submitted to the IDOT Ethics Officer within 30 calendar days of receipt of gift. Also, employees are not allowed to pay, or contribute to a charity, the value of the food or refreshments in excess of the $75 as a means of staying at or below the $75 limit.

10.    intra-governmental and inter-governmental gifts;

11.    bequests, inheritances, and other transfers at death; or

12.    perishable gifts that can be shared such as food or refreshments or decorative items such as flowers, from an anonymous source or a prohibited source and in the opinion of the supervisor, impractical to return, the employee or employees shall place the item or items in a common area for the general enjoyment of any IDOT employee.

H.    If a non-meal type gift that does not meet one of the exceptions in this Section is received from a prohibited source by an employee in a manner that did not allow for the employee to refuse the gift as required (i.e. overnight deliveries, inadvertent mistake, etc.), the employee must do the following:

1.    the gift shall be returned to the prohibited source within 14 calendar days; or

2.    if the gift cannot be returned, the gift shall be given to a charity classified as a 501(c)(3); or

3.    if the gift cannot be returned and the employee's supervisor determines that it is unreasonable to donate the gift to a charity then it should be discarded.

In all of these instances, the facts pertaining to the discovery, description, and disposition of the gift shall be reported to the IDOT Ethics Officer through email or memorandum within 21 calendar days of receipt of the gift.

Questions pertaining to Section 16 Gift Ban should be directed to the IDOT Ethics Officer.

## 16-5   ATTENDANCE AT EVENTS

A.    An employee may accept an offer of free attendance at a widely attended convention, conference, symposium, forum, panel discussion, dinner, reviewing, reception, or similar event, provided by the sponsor, if:

1.    the employee participates in the event as a speaker or a panel participant, by presenting information related to government, or by performing a ceremonial function appropriate to the employee's job; or

2.      attendance at the event is appropriate to the performance of civic affairs in Illinois or the official duties or representative function of the employee.

B.      An employee who attends an event described in Section A, above, may accept a sponsor's unsolicited offer of free attendance at the event for an accompanying individual.

C.      An employee, or the spouse or dependent thereof, may accept a sponsor's unsolicited offer of free attendance at a charity event, except the reimbursement for transportation and lodging may not be accepted in connection with the event.

D.      For the purpose of this section, the term "free attendance" may include waiver of all part of a conference or other fee, the provision of transportation, or the provision of food, refreshments, entertainment, and instructional materials furnished to all attendees as an integral part of the event. The term does not include entertainment collateral to the event, nor does it include food or refreshments taken other than in a group setting with all or substantially all other attendees.

## 16-6    REIMBURSEMENT

A.      A reimbursement (including payment in kind) to an employee from a private source other than a "prohibited source" or an agent of a foreign principal for necessary transportation, lodging, and related travel expenses for travel to a meeting, speaking engagement, fact finding trip, or similar event in connection with the duties of the employee shall be deemed to be a reimbursement to the governmental entity and not a prohibited gift if the employee:

1.      discloses expenses reimbursed to his or her supervisor within 30 days after the travel is completed;

2.      receives advance authorization, from his or her supervisor to accept reimbursement; and

3.      any questions or concerns about reimbursement should be directed to the Office of Chief Counsel for clarification.

B.      An employee who attends an event described in Section 16-5 A, above, the activities of which are substantially recreational in nature, shall not be considered to be in connection with employment-related duties of a member, officer, employee, or judge as an officeholder or employee.

C.      Each advance authorization to accept reimbursement shall be signed by the employee's direct supervisor and shall include:

1.      the name of the employee;
2.      the name of the person who will make the reimbursement;
3.      the time, place, and purpose of the travel; and
4.      a determination that the travel is in connection with the duties of the employee as an employee and would not create the appearance that the employee is using public employment for private gain.

D.      Each disclosure made under Chapter 16-5: *Attendance at Events,* Section A. of expense reimbursed or to be reimbursed shall be signed by the employee's direct supervisor and shall include a:

1.      good faith estimate of total transportation expenses reimbursed or to be reimbursed;
2.      good faith estimate of total lodging expenses reimbursed or to be reimbursed;
3.      good faith estimate of the total meal expenses reimbursed or to be reimbursed;
4.      good faith estimate of the total of other expenses reimbursed or to be reimbursed; and
5.      determination that all those expenses are necessary transportation, lodging, and related expenses.

E.      The department's Ethics Officer, as designated by the Secretary, shall provide guidance to employees in the interpretation and implementation of the *State Gift Ban Act* and this policy.

F.      Any discounts for state purchases should be reflected on the invoice rendered for goods and services and should not be in the form of cash.

G.      Office collections for illness, retirement, marriage, etc. for a fellow employee will be limited to the organizational unit in which the recipient works. In all cases, the collection must be authorized by the supervisor for whom the recipient works. In some situations, the employee has longevity and has worked for more than one department organizational unit. The supervisor for whom the employee currently works will approve a collection in other department organizational unit only after coordination and approval of the other supervisor.

## 16-7    STATEMENTS OF ECONOMIC INTEREST

A.      The *Illinois State Officials and Employees Ethics* requires certain employees to file an annual Statement of Economic Interest with the Office of the Secretary of State. Section 430/20-23(2) of the Act requires that the department's Ethics Officer review all Statements of Economic Interests completed by department employees prior to submission to the Secretary of State.  The Chief Counsel has been designated as the department's Ethics Officer.

B.      The Office of the Secretary of State issues a direct mailing of the statement forms to employee's home addresses who are required to file Statements of Economic Interest. Employees are responsible for the completion and submission of the form to the Office of Chief Counsel.

C.      Late filing fees and other penalties may result for employees who fail to file their statements within the prescribed time frames each year. Failure to file by May 31 of each year shall result in forfeiture of office or position of employment.

# CHAPTER 17 - DISCIPLINE

## 17-1 POLICY

The department's policy is to administer discipline equitably, consistently, and in accordance with the principles of progressive discipline. Progressive discipline is predicated on the theory that management has informed employees of the performance and behavior expected of them and that employees are subject to disciplinary action to the extent they violate the rules of the organization. The step-by-step process of progressive discipline focuses on correcting behavior at the earliest stage with the goal of eliminating future occurrences of inappropriate conduct. While it is desirable to follow the normal sequence of progressive discipline, an infraction may be of such a nature as to warrant the initiation of more severe actions immediately.

The Secretary (or his/her designee) may issue an order placing an employee on an immediate administrative leave of absence for purposes deemed appropriate. Unless otherwise provided by a collective bargaining agreement or the CMS Personnel Rules, 80 II Admin Code 301 et seq., the Secretary shall determine the duration of the leave and whether the leave shall be with or without pay and with or without state-paid benefits.

## 17-2     RESPONSIBILITIES

It is the responsibility of Labor Relations for overseeing and administering this policy. Supervisors are responsible for recommending discipline in a fair, consistent and equitable manner and in accordance with applicable laws, rules and policies; failure to do so may result in disciplinary action up to and including discharge.

## 17-3     GUIDELINES

A.     Investigation. When a situation arises which may necessitate disciplinary action, the supervisor must conduct a prompt, fair, equitable and thorough investigation and concurrently apprise his/her immediate supervisor and Administrative Manager. The investigation should include:

     1.     a discussion with the employee(s) involved;
     2.     interviews and signed statements from witnesses;
     3.     a preliminary determination of whether a rule or policy has been violated;
     4.     a review of the employee's file or any other relevant documents; and,
     5.     a preliminary determination of whether or not disciplinary action is warranted.

B.     Counseling. Counseling is not a disciplinary action; however, a counseling session should be documented in writing by the supervisor. A counseling session with the employee may be more appropriate than disciplinary action in order to put an employee on notice for behavior that suggests a pattern or the beginning of a perceived problem when:

     1.     the infraction is of a minor nature;
     2.     a misunderstanding of a rule occurs; or,
     3.     an infraction occurs as a result of a misunderstanding of a supervisor's expectations.

C.     Pre-Disciplinary/Pre-Termination Meetings. Unless otherwise modified by a collective bargaining agreement, in cases where the level of discipline being considered could be more than a written reprimand, the supervisor shall, prior to notifying the employee of the contemplated measure of discipline to be imposed, meet with the employee involved and inform them of the reason for such contemplated disciplinary action including any names of witnesses and copies of all pertinent documents. Employees shall be informed of their rights to representation and shall be entitled to

such if they so request. During the course of the meeting the employee or his/her representative shall be given the opportunity to rebut or clarify the reasons for such discipline including argument in mitigation of the offense. Reasonable extensions of time for rebuttal purposes will be allowed when warranted and if requested.

D.      Steps of Progressive Discipline. Unless modified by the appropriate collective bargaining agreement, the steps of progressive discipline may be as follows:

1.      Oral Reprimand. Subject to prior review by Labor Relations, an oral reprimand may be given. An oral reprimand is a private conversation between the employee, his/her supervisor and a union representative, if appropriate. The employee shall be notified of the specific infraction and shall be permitted to present his/her side of the story. During the conversation the supervisor and employee shall discuss the:

    a)      facts regarding the incident/infraction and the rule(s) which were violated;
    b)      negative impact of the act;
    c)      expectations for improvement;
    d)      consequences of failure to improve; and,
    e)      relevant previous documented counseling(s).

    The supervisor shall document the oral reprimand [utilizing either Form LR 1714A: Notice of Disciplinary Action: Oral Reprimand (Non-AFSCME) or LR 1714B: Notice of Disciplinary Action: Oral Reprimand (AFSCME)], give a signed copy to the employee and submit a signed copy to Labor Relations and the employee's official personnel file.

2.      Written Reprimand. Subject to prior review by Labor Relations, a written reprimand may be issued. In accordance with applicable collective bargaining agreements, a pre-disciplinary meeting shall be conducted prior to issuing the reprimand. The written reprimand shall cover the following points in a direct and concise manner:

    a)      the charge(s) and applicable rule(s) which were violated;

    b)      a notation of relevant previous documented counseling or discipline pertinent to the case;

    c)      applicable rule(s) which were violated;

    d)      the expectations for improvement; and,

    e)      the consequences of failure to improve.

    The supervisor shall document the written reprimand, give a signed copy to the employee and submit a signed copy to Labor Relations and the employee's official personnel file.

3.      Suspension. Subject to prior review by Labor Relations, suspension without pay is appropriate if oral or written warnings have been unsuccessful or when the gravity of the offense necessitates corrective action of a greater severity.

    a)      Unless delay in the imposition of discipline will result in clear harm or damage to the department or the employee is not afforded a pre-disciplinary meeting and does not fall under a collective bargaining agreement which requires a pre-disciplinary meeting, the employee shall be informed in writing of the proposed suspension and the reasons at least six working days prior to the effective date of the proposed suspension and be provided with copies of all pertinent documents on which the proposed suspension is based. An employee shall have five working days from the date they are informed of the proposed suspension within which to address to the Secretary or designee written rebuttal to the reasons given for the suspension.

b)      A decision of the Secretary or designee not to suspend the employee shall be rendered in writing before the proposed suspension date.

c)      Suspensions of five days or less shall be served on consecutive regularly scheduled work days. Suspensions of more than five days shall be served in consecutive calendar days.

d)      An employee may appeal their suspension for cause through their appropriate grievance procedure.

The supervisor shall document the suspension, give a copy to the employee and submit a copy to Labor Relations and the employee's official personnel file.

4.      Suspension Pending Decision on Discharge. Subject to prior review by Labor Relations, an employee may be suspended without pay up to 30 days pending the decision of the department to discharge for cause. The procedures outlined in 17-3.D.3: Steps of Progressive Discipline shall apply when suspending an employee pending the decision to discharge.  Suspension pending discharge is not a final determination.

a)      The department shall promptly investigate the facts and circumstances and render its decision.

b)      Should the department determine that the facts and circumstances do not warrant disciplinary suspension or charges for discharge, the employee shall be notified and made whole.

c)      Should the department determine that a disciplinary suspension is appropriate, the suspension shall apply in its entirety in lieu of all or part of the period of suspension served.

d)      Should the department determine that a discharge for cause is appropriate, the following section shall apply.

5.      Discharge. Subject to prior review by Labor Relations an employee may be discharged for cause if prior disciplinary actions have failed to rectify the problem or if the employee's offense is serious enough in nature to warrant dismissal.

a)      The employee to be discharged must be notified as outlined in 17-3 C, above, unless s/he has already been afforded such notification as a result of a suspension pending the decision on discharge or judicial verdict.

b)      Written charges shall be signed by the Secretary, director, deputy director or central bureau chief and shall contain clear and concise facts warranting discharge.

c)      Notice of charges approved by the Secretary or designee for discharge shall be served on the employee personally or by certified mail, return receipt requested, at the employee's last known home address listed in the personnel office.

d)      An employee may appeal the discharge through his/her appropriate grievance procedure.

The supervisor shall document the suspension pending decision to discharge and the discharge, give a copy to the employee and submit a copy to Labor Relations and the employee's official personnel file.

E.      Civil Rights Violations. Disciplinary action involving matters which represent a potential violation of the *Illinois Human Rights Act* or federal *Civil Rights Act* shall be treated as follows:

1.      Any office/division/bureau which receives a complaint against an employee alleging an act which constitutes a potential violation of the *Illinois Human Rights Act* or federal *Civil Rights Act* (e.g., racial or sexual harassment) shall immediately report such matter to the Bureau of Civil Rights. Employees may file a complaint directly with the Bureau of Civil Rights.

2.      The Bureau of Civil Rights shall investigate the matter and report its investigation to the Civil Rights Committee.

3.      Employees shall be allowed scheduled time of a reasonable duration during working hours to present their complaints, with no deduction of pay or benefit time. Such time shall not interfere with the operations of the department.

4.      The Civil Rights Committee shall consist of the following persons: the Secretary or his/her designee, the Chief Counsel or his/her designee, and the Bureau Chief of Civil Rights.

5.      The committee shall review all information concerning the alleged violation, including but not limited to the investigative reports prepared by the Bureau of Civil Rights and shall have the authority to interview witnesses and discuss the matter with the employee's supervisor(s).

6.      Subsequent to review, the committee shall make the following recommendations to the Secretary:

        a)      whether the employee has committed a violation of department policy, and,
        b)      if such a violation has occurred, the level of discipline to be imposed.

7.      The Secretary may concur with recommendation of committee, change the discipline to be imposed, or return the matter to the committee for further review.

8.      Once the Secretary has set the discipline to be imposed, the Director of Finance & Administration in conjunction with the bureau where the complaint originated shall act on that discipline.

9.      An employee who is disciplined pursuant to a recommendation by the committee shall retain all grievance rights set forth in this chapter or the employee's applicable collective bargaining agreement.

## 17-4    GRIEVANCES

Code employees shall be subject to the grievance procedures as outlined in their respective collective bargaining agreements or the CMS Personnel Rules.

Technical employees shall be subject to the grievance procedures as outlined below:

A.      Clear and open channels of communication must be made available at all times to technical employees for the redress of their complaints in a prompt, fair and equitable manner. The formal grievance procedure shall be available to all technical employees at pay grade 17 and below. The intent is to resolve complaints concerning improper or incorrect application of department policy or abuse of management authority. Probationary termination, appeals of allocation and matters pending before the courts, the Illinois Department of Human Rights and/or other tribunals whose decisions supersede the authority of this policy are not subject to the Technical Grievance Procedure.

B.      Employees shall have the right to present their grievances. Under no circumstances will an employee's job status, security, working conditions or relationship with management be jeopardized because a complaint is appealed to a higher level of management.

C.      Employees shall be allowed scheduled time of a reasonable duration during working hours to present their grievances, with no deduction of pay or benefit time. Such time shall not interfere with the operations of the department.

D.      Grievances must be submitted through the channels defined below in the form and manner as described within the specified time limits. Grievances not appealed within the designated time limits shall be considered withdrawn. Time limits established in this policy are in scheduled working days and may be extended by mutual agreement in writing by the grievant and the reviewer at the Intermediate and Final Levels.  Termination of any grievance at the Local or Intermediate Level, either by the department granting whole or partial relief, or by the grievant withdrawing or failing to further pursue the grievance, shall not constitute a precedent for the settlement of any future grievances at any level of the grievance procedure. However, such termination shall not constitute an eradication of the events which lead to the grievance.

1.      Local Level. It is mutually desired that grievances be satisfactorily settled as quickly as possible; therefore, the time limits may not be extended at the Local Level.

    a)      First Level of Supervision. When a grievance arises, the employee shall identify the issue by indicating the specific action or non-action on the part of the department which prompted the grievance. The aggrieved employee will present the grievance orally to their designated immediate supervisor without undue delay, not to exceed five scheduled work days after the employee learns of the circumstances or conditions which prompted the grievance. A full and complete oral explanation of the supervisor's response is to be given to the grievant within five scheduled work days.

    b)      Next Higher Level of Supervision. If the grievance is not resolved to the employee's satisfaction by the immediate supervisor within five scheduled work days after submission, the employee may submit the grievance in writing to the next higher level of supervision on Form LR 1486B: Grievance Review, indicating the specific action or non-action of the department within 10 scheduled work days after submission of the grievance to the immediate supervisor. A full and complete written explanation of the next higher supervisor's response is to be given the grievant within five scheduled work days.

2.      Intermediate Level. If the grievance is not resolved to the employee's satisfaction within five scheduled work days after submission of the grievance to the employee's next higher supervisor, the employee may submit the grievance in writing to the director, deputy director, central bureau chief or designee within 10 scheduled work days after submission of the grievance to the next higher supervisor.

    a)      In presenting the grievance to the director, deputy director, central bureau chief or designee, the employee may be represented by an individual of his/her choice in any oral discussion of the grievance which they attend.

    b)      Within five scheduled work days, a written response signed by the director, district engineer, central bureau chief or designee shall be given to the employee.

3.      Final Level. If the grievance is not resolved to the employee's satisfaction within five scheduled work days after submission to the director, deputy director, central bureau chief or designee, the employee may submit the grievance to the Secretary of Transportation for review and final determination. The written copy of the grievance shall be submitted to the Secretary of Transportation within 15 scheduled work days after its submission to the director, deputy director, central bureau chief or designee.

a)      The Secretary of Transportation, through Labor Relations, shall appoint a three-member panel to hear the grievance at the Final Level. Panel members may be private citizens or employees of an agency of government other than the Department of Transportation.

b)      In addition to the three-member panel, the Secretary of Transportation shall appoint a review moderator from Labor Relations who will chair all final level grievance hearings and deliberations. The review moderator will preside over the hearing and shall be the judge of relevance and materiality of the evidence offered. The review moderator shall be entitled to be heard by the mediator.  The review moderator has the authority to maintain order and records of the review. There will be no record made of the review other than that made or ordered by the moderator.

c)      Upon review of all facts, circumstances and evidence presented, the members of the grievance panel shall make recommendations in writing to the Secretary of Transportation as to the proper resolution of the grievance.

All recommendations shall bear the signatures of the concurring panel members. A dissenting member of the panel may make a recommendation to the Secretary of Transportation, in writing, and shall also sign such recommendation.

d)      Upon receipt of the recommendation of the grievance panel, the Secretary of Transportation shall approve, disapprove or modify the panel's recommendation and render a decision in writing, a copy of which shall be served upon the employee. The decision of the Secretary of Transportation shall be final.

e)      The written statement of the employee's grievance, the recommendation of the panel and the decision of the Secretary of Transportation shall be made a part of the employee's official personnel file maintained by the Bureau of Personnel Management.

## 17-5   ARREST OR CRIMINAL INDICTMENT

A.      The arrest or criminal indictment of an employee may be grounds for disciplinary action if one of the following situations exists:

1.      The arrest or criminal indictment resulted from an employee's conduct in the course of employment duties including a failure to perform such duties.

2.      The incident occurred on or proximate to state premises and as a result of the employee's conduct thereon.

3.      The nature of the charges raises reasonable doubt concerning the employee's suitability for continued employment.

B.      If an employee is not subject to suspension or discharge, the Secretary may, at the request of the employee, place such employee on indefinite leave status without pay.

## 17-6   DISCIPLINE FOR CRIMINAL CONDUCT

A.      Conduct by an employee which constitutes a violation of criminal law may also constitute cause for discipline. Accordingly, the department may commence disciplinary proceedings based on the same conduct upon which criminal proceedings are commenced. The conduct may constitute cause for discipline although it does not occur on department premises or involve department property.

B.  When the department is informed that an employee has been accused of committing a criminal act, the department will review all available information. Upon review of all available information the department may take no action, commence disciplinary proceedings, or suspend the employee pending the criminal proceedings. All suspensions pending criminal proceedings shall be in accordance with the provisions of the following subparagraphs.

C.  When the department has reasonable grounds to believe an employee has committed a crime for which a sentence of imprisonment may be imposed, the department may suspend the employee indefinitely, without pay and benefits, pending termination of the criminal proceedings. Reasonable grounds exist when the employee has been indicted or a court has found that there is probable cause to believe that the employee committed the crime. An arrest by itself does not constitute reasonable grounds.

D.  Upon termination of the criminal proceedings, the department will determine whether there is cause for discipline. In making the determination the department shall consider the following:

1.  whether continued employment of the employee could reasonably be perceived to endanger the safety of other employees or members of the public;

2.  whether the employee is in a position of trust and his/her integrity may reasonably be questioned;

3.  whether the employee has responsibility for public funds and his/her honesty may reasonably be questioned;

4.  whether continued employment of the employee would impair the department's ability to maintain discipline and order in the workplace;

5.  whether the employee has brought discredit upon the department and his/her continued employment would erode the public's confidence in the department; or,

6.  whether the employee will be available to perform the job duties. If the department's work needs do not permit the employee's position to remain unfilled until the employee is released from incarceration, the employee should be discharged so that the position may be filled.

E.  If the department determines that there exists cause for discipline, the department will commence disciplinary proceedings. The outcome of the criminal proceedings or an appeal is not conclusive as to whether there exists cause for discipline.

F.  If the department does not commence disciplinary proceedings, the department will return the employee to his/her position or another position of the same classification and restore any lost pay and benefits.

## 17-7  ACCESS TO DEPARTMENT PREMISES

A.  The department reserves the right to restrict access to or ban individuals from department buildings and properties.

B.  Employees who have been notified and placed on administrative leave, suspension, suspension pending discharge or suspension pending judicial verdict shall not be permitted to enter department buildings or properties without prior authorization from a higher-ranking supervisor in his/her chain of command:

1.  Notification must be given to the employee in writing via hand-delivered or certified mail.

2.    Standard notification language shall be obtained from Labor Relations and should include the start date of the ban, the length of the ban, and a contact person that can authorize re-admittance to department property during the ban.

3.    A copy of such notification must be provided to the applicable Facility Manager/s, building security, the central Bureau of Personnel, Labor Relations, and the appropriate labor union, if applicable.

4.    An employee who has been notified in accordance with B., above, may enter department buildings or properties only upon prior approval and with accompaniment by a higher-ranking supervisor in his/her chain of command for the entirety of the visit. The time and location of such visit shall be pre-arranged by the supervisor (who shall also notify building security of the visit) and be in a neutral, safe location.

C.    Non-employees and former employees who have been notified in writing by the department that they are permanently banned from department buildings and property shall not be permitted to enter department buildings or property without authorization of the appropriate Facility Manager (per Departmental Order 13-10: *Order on Building Security*) with the concurrence of the Office of Chief Counsel.

1.    Any individual that is to be permanently banned from department property shall receive written notice via hand-delivered or certified mail.

2.    Circumstances of a request to permanently ban an individual from department property must be presented to the Office of Chief Counsel in writing, which will review the information, and if warranted and legally defensible, will issue the written notification.

3.    An individual who has been notified in accordance with section C. above may enter department buildings or properties only upon prior written approval and with accompaniment of a properly appointed department employee for the entirety of the visit. The time and location of such visit shall be pre-arranged by the appropriate Facility Manager (who shall appoint the department employee to accompany the individual and also notify security personnel of the visit) and be in a neutral, safe location.

4.    At a minimum, a copy of each notification must be provided to the applicable Facility Manager, security personnel, the central Bureau of Personnel, Labor Relations, the supervisor (if applicable) and the appropriate labor union (if applicable).

D.    In compliance with Departmental Order 13-10: *Order on Building Security*, security personnel shall be provided with a current photo of the banned individual and shall comply with the department's orders. Security personnel will report any attempt by an individual to violate an existing ban to the appropriate Facility Manager, and, if necessary, the appropriate law enforcement agency.

E.    All bans shall stay in effect per the following:

1.    The ban of an employee shall be lifted per the time limit given in their written notification of the ban or upon the issuance of written notification that the ban is being lifted prior to that time limit.

2.    The ban of a non-employee or a former employee shall be lifted only upon written notification from the Office of Chief Counsel.

3.    Facility Manager, security personnel, the central Bureau of Personnel, Labor Relations, the supervisor (if applicable), and the appropriate labor union (if applicable) must be notified of the lifting of any ban.

# CHAPTER 18 - LABOR – MANAGEMENT RELATIONS

**18-1 POLICY**

It is the department's policy to act in good faith with duly certified representatives of employees and to strive for the maximum degree of mutual understanding, confidence and respect in its relations with such representatives. All personnel are expected to abide by and demonstrate an affirmative willingness to comply with governing regulations. No interference, restraint, coercion or discrimination will be practiced to encourage or discourage membership in any labor organization.

**18-2 RESPONSIBILITIES**

Labor Relations is designated as the principal contact point for conducting business with labor organizations. Management is responsible for maintaining a strictly neutral position with employees in matters concerning labor organizations, refraining from discussion of strengths and/or weaknesses of organization membership or the merits of one organization over another. Those management officials and supervisors dealing with labor organizations should become thoroughly familiar with the labor-management policies of the department and have an active, working knowledge of the contract provisions which apply to their work areas. Interpretation of collective bargaining agreements shall be directed to Labor Relations.

**18-3 GUIDELINES**

A. The Rules promulgated and decisions issued by the State Labor Relations Board created by the *Public Labor Relations Act* (*5 ILCS 315/5)* will govern the Illinois Department of Transportation's labor-management relations.

B. Wherever there is disagreement between these general guidelines and the specific provisions of a Collective Bargaining Agreement, the agreement shall control.

**18-4 DEALING WITH LABOR ORGANIZATIONS**

Labor organizations granted exclusive recognition in addition to their right to bargain with respect to wages, hours and working conditions have a right to be consulted by management on matters of legitimate concern to the organization. A labor organization granted exclusive recognition also has the right to act for employees and negotiate agreements.

**18-5 LIMITS OF A STEWARD'S AUTHORITY**

The job of the steward is limited to the amount of authority delegated by the union, the terms of the written agreement and restrictions imposed by the state personnel system (in particular, the *Civil Service Law*).

**18-6 THE SUPERVISOR AND THE STEWARD**

The employee's right to be represented by the union in presenting a complaint must be recognized and accepted. The fact that an employee chooses to be represented should not influence the supervisor's attitude in any way.

**18-7 UNION SOLICITATION ACTIVITIES**

Solicitation is permitted except during working time. Working time and/or work days for most department facilities is normally from 8 a.m. to 4:30 p.m. with the exception of those operations customarily on a different schedule. Unless otherwise modified by a collective bargaining agreement, non-work hours are those times before and after starting and stopping time and lunch periods. Solicitation is absolutely prohibited during work hours and in work areas unless specifically granted by contract.

IDOT 001272

**18-8     DISTRIBUTION OF UNION LITERATURE AND MATERIAL**

Recognized employee organizations may distribute their literature during the lunch period in department facilities commonly available to the public, such as lobbies, auditoriums and cafeteria. However, the distribution of literature and material by employee organizations and/or the distribution of any printed or written materials concerning collective bargaining in work areas by employees is prohibited. Nothing in this paragraph shall be construed to waive the requirement that requests to distribute union literature and materials must be made and approved in advance.

**18-9     USE OF DEPARTMENT FACILITIES BY UNION ORGANIZATIONS**

A.     State facilities will not be used by employee organizations for meetings unless a request has been submitted and approved. Such approval will only be granted to the exclusive representative or to intervening and petitioning organizations when the determination of a recognized representative is before the State Labor Relations Board.

B.     Unless allowed by contract, no request for the use of state facilities will be approved unless it is outside of work hours of the employees involved, will not interfere with the regular functions of state activities, will not involve additional expense to the state and will comply with the rules and regulations established by the Director of the Illinois Department Central Management Services. Under no circumstances is employee organization business to be conducted utilizing state resources or equipment.

C.     With prior approval of the head of a department facility, auditoriums, conference rooms or portions of a lobby with a table may be available before or after work time or during lunch periods. Other locations removed from regional offices may be approved for meetings by the deputy director.

**18-10    USE OF BULLETIN BOARDS BY UNION ORGANIZATIONS**

A.     Recognized employee organizations, at all times, and petitioning and intervening employee organizations during periods when the processing of representation petitions is timely, may place informational material on department bulletin boards subject to the following conditions:

    1.     The employee organization must be readily identified in the materials.

    2.     The contents of the material posted must relate to the activities of the employee organization and cannot relate to partisan political matters or be defamatory in nature.

    3.     Employee organizations must receive prior approval of department management for the privilege of using bulletin board space and such approval will not be withheld unless bulletin board space has been provided by contract.

    4.     Employee organizations shall assume all costs incidental to the preparation, production, reproduction and/or distribution of material.

B.     It will be necessary for deputy directors and directors of department organizations not located in the department's Hanley (Administration) Building to designate a representative from their management staffs to determine if the union material to be posted meets the conditions established in the paragraph above. Labor Relations will approve or disapprove the posting of union material in the department's Hanley (Administration) Building. Any questions regarding postings or any other labor relations matter should be directed to this office.

Case: 1:17-cv-08658 Document #: 89-17 Filed: 02/11/21 Page 104 of 119 PageID #:1204

# CHAPTER 19 - TRAVEL REGULATIONS

## 19-1    POLICY

It is the policy of the Department of Transportation to authorize travel performed by employees essential for accomplishing the department's objectives. Such travel shall be made by the most economical means and in the most efficient manner.

The purpose of this chapter is to provide clearly defined departmental travel regulations in compliance with regulations as issued by the Department of Central Management Services (CMS) through the Governor's Travel Control Board (GTCB). The contents of this chapter shall apply to all employees of the department in order to:

- provide for prior authorization and control of travel costs,

- hold travel to the minimum required for the efficient and economical conduct of the state's business, and

- reimburse employees for reasonable authorized expenses incurred by them in the performance of their duties.

## 19-2    RESPONSIBILITIES

A.    The Secretary of Transportation or designee identifies the official headquarters for each employee and maintains a record of the headquarters' designations.

B.    Divisions, offices, bureaus and districts are responsible for designating a Travel Coordinator, e.g., Bureau Chief or Regional Engineer or his/her designee. All travel shall have advance approval from the employee's supervisor using Form PM 3405: Travel Pre-Approval or Form BoBS 3405b: Blanket Travel Pre-Approval . Accounting procedures shall be established to avoid duplicate payment of travel expenses.

C.    The Agency Travel Coordinator may further restrict these regulations provided that such restrictions do not conflict with published travel regulations by GTCB. Such further restrictions must be submitted to the Director of Finance & Administration for approval prior to implementation.

D.    Each Travel Coordinator submits to the Agency Travel Coordinator a Travel Headquarters Designation Report (TA-2) twice each year listing all employees whose duties required them to spend the largest part of  their working time during the reporting period at a location other than their official headquarters. TA-2 reports are filed no later than July 15 for the period from January 1 through June 30 of that year and no later than January 15 for the period from July 1 through December 31 of the preceding year.

E.    The Bureau of Business Services is responsible for preparing and distributing procedures for the correct preparation and submittal of travel invoices.

F.    Employees or individuals submitting travel invoices are personally responsible for:

1)    obtaining approval prior to travel via Form PM 3405: Travel Pre-Approval or Form PM 3405b: Blanket Travel Pre-Approval;

2)    complying with the state travel regulations;

3)      providing for proper authorization and control of travel costs;

4)      holding travel to the minimum required to efficiently and economically conduct state business; and,

5)      maintaining accuracy and propriety. Any misrepresentation is a cause for disciplinary or legal action; and,

6)      utilizing Form PM 2541: Travel Invoice Checklist for Reimbursable Travel Receipts.

## 19-3    DEFINITIONS

A.      Agency Travel Coordinator. The department employee who manages and coordinates the travel control system for the department and acts as liaison to GTCB on travel control issues. This position shall function within the Office of Finance & Administration (F&A), Bureau of Personnel Management.

B.      Approval. The verbal or written concurrence by the Director of Finance & Administration or his/her designee, unless otherwise specified.

C.      Commuting Expense. The cost of one round trip between residence and headquarters, regardless of mode of transportation, on any given day.

D.      Employee-Controlled Housing. Housing or lodging procured for an employee or employees on extended assignment with travel status and controlled by the employee or employees. This includes housing leased or rented in the name of one or more employees.

E.      Extended Assignment with Travel Status. A field assignment at a specific location or geographic area that places the employee on travel status for a period of more than 20 consecutive work days.

F.      Headquarters.  The post of duty or the station at which official duties require the employee to report for work and/or spend the largest amount of working time. For an employee required to travel almost every day, the employee's residence may be his/her headquarters.

G.      Lodging. Accommodations including: hotel, motel, rooming house, apartment and rental of trailer or motor home space.

H.      Meal Allowance. A monetary allowance provided when the traveler is not eligible for per diem. Specific maximum meal allowance rates are established by the Travel Regulation Council. If actual meal and tip costs are less than the maximum allowed, the lesser shall be claimed. For current allowance amounts, refer to the current GTCB Travel Guide for State Employees - Reimbursement Schedule. Receipts are not required to support this allowance. Section 19-5 B.1 of this chapter provides specific information on computing meal allowance.

I.      Per Diem Allowance. A monetary allowance to be paid for travel which includes overnight lodging or is 18 or more continuous hours in length. It is given in lieu of a meal allowance and is to cover the cost of meals and tips. Per Diem is limited as defined below and not based on the actual cost of meals and tips. Receipts need not be submitted to support this allowance.

Per Diem allowance is based on the length of travel status with a calendar day split into four equal quarters. Each quarter shall be six hours commencing at midnight, 6:00 a.m., noon, and 6:00 p.m. Travelers will be paid for each six-hour quarter or a fraction thereof. Allowance rates are established by GTCB and published in the current Travel Guide for State Employees - Reimbursement Schedule.

J.      Public Transportation. Public transportation includes air, rail, water and over-the-road common carriers.

K.   Reimbursement.  The payment to an employee for goods or services that the employee has purchased with the approval of the department. Pursuant to Internal Revenue Service (IRS) rules and regulations, reimbursements required by the IRS to be reported will, accordingly, appear on the employee's federal Form W-2: Wage and Tax Statement for tax purposes.  Some reimbursements are viewed as accountable (non-taxable) while others are viewed as non-accountable (taxable). Employees are urged to contact their tax advisor to determine how this will impact their state and federal income tax returns.

Reimbursement may also include the assignment to an employee of a vehicle on a long-term basis by the department in which the employee uses the vehicle daily to drive to and from headquarters or assigned work location.  Short-term use of a vehicle which is checked out of the department's Motor Pool and subsequently returned but is not used daily to drive to and from headquarters or assigned work location may not necessarily be considered as a reimbursement. Employees are urged to contact their tax advisor to determine how this will impact their state and federal income tax returns.

L.   Reimbursement Schedule. The rates of reimbursement are approved by the Travel Regulation Council and contained in the Travel Regulation Council Rules [80 Ill Adm. Code 3000]. The Reimbursement Schedule is published by GTCB in the Travel Guide for State Employees. This publication is periodically updated as reimbursement rates change.

M.   Residence. The location approved by the Director, Bureau Chief or Regional Engineer as the employee's permanent residence in the performance of official duties.

N.   Settling Period. The period of time to establish permanent residency at headquarters to which the employee is either transferred and must relocate or the employee is newly hired and must relocate. Under the settling period, the transferred or newly hired employee may be eligible for reimbursement of lodging and moving expenses as outlined in Section 19-12, Moving Expenses.  An employee who is relocating his/her residence to a new headquarters is not considered on travel status since the individual is working at his/her new headquarters.

O.   State Vehicle.  Any vehicle legally owned or leased by the state of Illinois.

P.   Travel Coordinator. The person responsible for approving and coordinating all travel for employees within a budget responsibility, typically a district or central bureau.

Q.   Travel Status. The status of an employee who is away from headquarters in the performance of official state business.

**19-4   GUIDELINES**

A.   The department's regulations are intended to conform to the Governor's Travel Control Board Rules and the Travel Regulation Council Rules. In case of conflict, GTCB regulations shall govern, except where the department's regulations are more restrictive.

B.   Exceptions to the regulations must have advance approval of the Director of Finance & Administration and/or GTCB as appropriate. All requests for exceptions shall be directed to the Agency Travel Coordinator.

C.   Reimbursements required by the IRS to be reported will, accordingly, appear on the employee's federal Form W-2: Wage and Tax Statement for tax purposes. Some reimbursements are viewed as accountable (non-taxable) while others are viewed as non-accountable (taxable). Internal Revenue Publication 535: Business Expenses, Chapter 13 states a reimbursement is accountable and, therefore, non-taxed if the employee has:

1.      paid or incurred deductible expenses while performing services for the department,

2.     adequately accounted for those expenses within the 60-day required period, and

3.     returned any excess reimbursement received within a reasonable period of time.

A reimbursement that does not satisfy the three conditions above would be considered non-accountable and, therefore, would be subject to taxation as wages under this IRS rule. This applies to both travel reimbursements and settling period reimbursements. Non-accountable or taxable reimbursements for a settling period include temporary lodging, per diem, mileage and other reimbursements not directly related to the day of the actual move. Employees are encouraged to consult their tax advisor to determine how their federal and state income tax returns will be impacted.

## 19-5    MEALS AND LODGING

A.    Expenses While Not on Travel Status

Employees who are not on travel status shall be reimbursed for certain expenses. Mileage, parking fees and other expenses resulting from the performance of state business, which are in excess of normal commuting expenses, are reimbursable.

B.    In-State Travel Without Lodging and/or Less Than 18 Continuous Hours

1.    Meal Allowance. An employee may not receive both meal allowance and per diem on the same day or trip. These allowances are subject to the following restrictions:

a)    Breakfast is payable when an employee is on travel status and leaves headquarters or residence (if reporting directly to destination) at or before 6:00 a.m.

b)    Lunch is not a reimbursable expense. The amount for lunch is established for the purpose of setting a per meal ceiling on conference lunches purchased for non-state employees and for indicating the amount to be deducted from per diem when lunch is provided.

c)    Dinner is payable when an employee is on travel status and arrives back at headquarters or residence (if reporting directly from destination) at or after 7:00 p.m. Additionally, for employees commencing travel after close of business, but before 6:30 p.m., dinner reimbursement is allowed if the traveler would not be eligible for per diem.

d)    The Secretary, Directors, Deputy Directors, Regional Engineers, Central Bureau Chiefs and other employees designated by the Secretary shall be permitted to submit travel invoices for meals purchased for other persons who are not state officers, state employees or family members, providing sufficient explanation is given on the invoices and that this expense was incurred while conducting authorized departmental business. The amount of the meal shall be reasonable.

e)    If a meal is provided as a part of a conference, seminar, etc., the meal allowance due the traveler shall be reduced by the actual value of the meal or the amount of the applicable meal allowance shown in the Reimbursement Schedule of the current Travel Guide for State Employees, whichever is less. When an employee purchases a meal at a conference as an expense separate from the conference fee and the amount is in excess of the meal allowance shown in the Reimbursement Schedule, the employee may request an exception seeking reimbursement for the actual cost of the meal. If the exception is granted, the employee is not eligible to receive the meal allowance shown in the Reimbursement Schedule. Such exceptions must be granted by the GTCB through the Agency Travel Coordinator prior to submittal of the employee's Form C-10: Travel Invoice.

In-State Travel with Lodging and/or 18 or More Continuous Hours

1. Per Diem. Refer to the Reimbursement Schedule of the current Travel Guide for State Employees for applicable rates. An employee may not receive both per diem and meal allowance on the same trip or day. The restrictions listed in Section 19-5 B.1.e of this chapter also apply to per diem reimbursement.

2. Lodging. Refer to the Reimbursement Schedule of the current Travel Guide for State Employees for current maximum lodging rates.

3. An employee with a disability is reimbursed for the actual cost of the least costly lodging that is accessible.

4. An employee shall request the lowest available state government lodging rate at the time of making reservations. Upon registration the employee shall confirm that the hotel rate is within the maximum rate provided by the Reimbursement Schedule of the current Travel Guide for State Employees. An employee must receive an exception to surpass the maximum rate through the Agency Travel Coordinator and GTCB, if applicable.  A minimum number of hotels from the Preferred Hotel Listing must be contacted prior to an employee requesting an exception.  The Preferred Hotel Listing and the criteria for approval of exceptions are published periodically by GTCB. The names of the hotels contacted and the fact that no vacancies at state rates were available shall be indicated on the justification for the exception. Employees should be prepared to provide identification and proof of state employment to obtain the lodging rates within reimbursable limits. An employee will be held financially responsible for that amount in excess of the maximum rate if an exception is not granted. For those instances where the allowable state rate is not available, employees may request lodging exception through the Agency Travel Coordinator (please see Section 19-11 E for more information).

5. An employee attending a conference in the course of state business that is sponsored by an organization other than the State of Illinois may stay in the lowest priced room available at or near the hotel or motel in which the conference is located or in accommodations arranged by the conference organizations. The department shall pay for the actual lodging expenses, even if in excess of those allowed by the Reimbursement Schedule of the current Travel Guide for State Employees.  The traveler must note that the accommodations were the lowest priced at or near the conference site when submitting both the hotel invoice and their personal travel invoice for payment. A copy of the conference registration/agenda shall be attached to the employee's Form C-10: Travel Invoice when it is submitted.

6. An employee who lodges with relatives or friends while on travel status is not entitled to reimbursement for lodging expenses.  However, the employee is entitled to per diem if the per diem allowance requirements are met.

7. Extended Assignment with Travel Status. An employee on an extended assignment is entitled to actual expenses for lodging not to exceed the established lodging rate per day for the first 20 work days. After such time, the employee must find alternative lodging at the extended assignment rate as defined in Section 2800.410 of the GTCB rules. Alternative lodging may be either rented or leased directly by the department or by the employee. Such lodging rented or leased by the employee is considered to be employee-controlled housing. The employee will continue to be eligible for per diem.

   a) Requests for employee-controlled housing must be approved in advance by F&A and GTCB, if applicable. A quarterly expenditure report must also be submitted by all offices and divisions to F&A for each employee utilizing employee-controlled housing. If related housing expenses (gas, electric or propane) are involved, an exception to the travel regulations must also be processed by the Agency Travel Coordinator and approved by GTCB in advance.

b)     If an office determines that suitable lodging for an employee on extended assignment cannot be obtained at the extended assignment rate, i.e., due to short-term lease restrictions or rental space availability, an exception may be requested to continue the employee on standard travel and reimbursable lodging. Approval of such an exception may be granted by the Agency Travel Coordinator and may extend for the duration of the extended assignment. Lodging rates may not exceed the limits imposed by the Reimbursement Schedule of the current Travel Guide for State Employees.

c)     The Agency Travel Coordinator will retain a record of and rationale for any decision to approve standard travel reimbursement in lieu of the extended assignment rate of an employee on extended travel assignment.

8.     Employee-Controlled Housing Security Deposit. An employee on extended assignment and utilizing controlled housing may request, at the end of a lease, reimbursement for a security deposit. However, if the leaseholder or landlord provides reimbursement of the security deposit to the employee, the employee is ineligible to receive a second reimbursement from the department. If the leaseholder or landlord provides reimbursement of the security deposit to the employee after the employee has been compensated by the department, the employee shall reimburse the department accordingly. The applicable budget responsibility through the administrative manager, fiscal manager or designee, shall be responsible for checking with the employee and the leaseholder or landlord to determine whether any security deposit reimbursement is or has occurred.

9.     Employee-Owned Housing. Use of employee-owned housing must be approved in advance by the Director of Finance & Administration.

## 19-6   TRANSPORTATION

A.     All travel shall be made by the most direct route and by the most economical mode of transportation available, considering travel time, cost and work requirements. Reimbursement for expenses shall be based only on such charges as would have been incurred by the most direct and economical route.

1.     Prior to operating a state vehicle, or private vehicle on departmental business, an employee shall file a one-time certification statement with their Travel Coordinator that he/she is duly licensed and, in the case of a private vehicle, has appropriate auto liability insurance in effect. Form ES 2330: Certification of License and Automotive Liability Coverage shall be kept in the employee's personnel file.

2.     An employee who has previously filed the certification must immediately notify their supervisor if their driver's license is revoked, suspended, lost or invalid, or if they fail to have the appropriate auto liability coverage in the form of insurance or bond (see Vehicle Operator's Manual 1-2 A (2), (3)).

a)     Motor Pool Vehicles. It is the policy of the department to utilize state vehicles in the most effective and economic fashion. To this end, employee travel needs are to be satisfied using Motor Pool vehicles whenever possible.

b)     Operation of State Vehicles. All state vehicles shall be operated in compliance with Departmental Order 11-2: Vehicle Use and Security and, where applicable, CMS regulations.

c)     Privately-Owned Transportation including Motorcycles, etc. Department Directors and Regional Engineers or their designee may authorize the use of a private vehicle to conduct state business when a state vehicle is not available or where it is in the best interest of the state.

1) The use of privately-owned vehicles is permitted when such use is necessary or desirable due to a lack of other convenient means of transportation or is otherwise in the best interest of the state.

2) Individuals using private vehicles must possess the appropriate amount of liability insurance in accordance with state law. Minimum amounts of insurance coverage are currently as follows (*see Vehicle Operator's Manual*):

   - Bodily Injury - $20,000/$40,000
   - Property Damage - $15,000

3) When an individual rendering service to the state uses a privately-owned vehicle to conduct official business, payment must be made on the mileage rate shown in the Reimbursement Schedule of the current Travel Guide for State Employees. Expenses associated with commuting between an employee's residence and headquarters are not reimbursable; however, when traveling from residence to travel status destination, reimbursable mileage shall be the lesser of residence-to-travel destination or headquarters-to-travel destination.

4) When using a private vehicle for state business, employees must comply with Departmental Order 11-2: Vehicle Use and Security and, where applicable, CMS regulations.

5) In addition to the restrictions previously stated for private transportation, the use of motorcycles in the course of employment is allowable with the prior written approval of the employee's supervisor, certifying that the following conditions have been met:

   - possess a valid operator's license that is appropriate for the class of vehicle to be operated, and provide documentation of such;

   - possess the appropriate amount of liability insurance in accordance with state law, and provide documentation of such;

   - provide documentation of the successful completion of a 20-hour motorcycle safety course approved by the department;

   - have six months of accident-free experience operating a licensed motorcycle immediately prior to requesting approval;

   - wear a face shield, shatter-resistant glasses or shatter-resistant goggles;

   - wear a federally approved helmet;

   - wear shoes or boots that cover the ankles;

   - wear high-visibility protective clothing (long-sleeve shirt or jacket, long pants, made of a heavy material and full-fingered gloves);

   - possess the appropriate vehicle registration and display required licenses and stickers;

   - meet all legal requirements for motorcycle equipment; and,

- carry no passengers while operating the motorcycle.

The supervisor must ensure compliance regarding the use of this form of transportation. Employees with a questionable safe driving record or accident-prone history shall not be granted approval to use a motorcycle on the job. The supervisor shall review the Secretary of State Driver Abstract available through Labor Relations to verify the driving record. Each supervisor shall file a list of employees authorized to operate motorcycles in the course of employment with the Travel Coordinator.

These restrictions are applicable whenever the employee uses a motorcycle in the performance of assigned duties as well as when the employee is reimbursed for miles driven. Exceptions to these conditions must be submitted to and approved by the Agency Travel Coordinator.

6) The approval for the operation of mopeds, scooters, etc., in the course of employment shall be limited to intercity travel. All requirements of motorcycles are required of this mode of transportation, except the employee is exempt from the requirement concerning the completion of an approved safety course.

d) Privately-Owned Aircraft. The use of privately-owned aircraft is strictly forbidden unless advance written approval by the Secretary is received through the Director of Finance & Administration. Requests must comply with the Travel Regulation Council Rules [80 Ill Adm. Code 3000.300] and be accompanied by written justification for the use of private aircraft.

e) Vehicle Rental. Rental of vehicles shall be kept to a minimum. Where travel situations require the use of a rental vehicle, the most economical vehicle available shall be obtained. The employee should always contact any vehicle rental firm under contract or written agreement with GTCB when determining the lowest rate. Complete justification for the use of a rented vehicle must be included or, if charged directly to the department, shown on the invoice submitted for payment. Collision damage insurance options and personal accident insurance are not reimbursable.

If no contract is currently in place, the employee shall contact three vehicle rental firms and obtain price quotations for the most economical vehicle to meet the travel situation. The rental cannot exceed 30 days in duration.

f) Public Transportation. The use of public transportation is encouraged when it is a reasonable alternative and an economical mode of transportation, considering travel time, cost and work requirements. When the use of public transportation is a reasonable alternative, the mileage reimbursement must not exceed the cost of the public transportation use. A reasonable alternative exists when the cost of travel, taking into account transportation, time and per diem expenses, would be less if public transportation were used.

1) Air Travel. Travel by aircraft shall be at the most economical fare. The employee should always contact any air carrier under contract or written agreement with GTCB when determining the most economical fare. The employee should ask all air carriers contacted for the lowest state government rate. If coach class is unavailable, advance approval of the Director of Finance & Administration through the Agency Travel Coordinator is required to authorize a higher fare class.

2) Train Travel. The employee shall utilize coach accommodations if they are available. One seat in a sleeping or parlor car shall be allowed if coach accommodations are not available. One standard roomette is allowed when overnight travel is involved.

**19-7    OUT OF STATE TRAVEL**

No payment for out-of-state travel shall be allowed unless written approval by the Secretary of Transportation and the Governor's Office of Management and Budget (GOMB) is obtained in advance. Requests for out-of-state travel involving lodging or other expenses shall be submitted through the GOMB eTravel system at least six weeks in advance of the date of departure, if circumstances allow.

A.    Per Diem. Refer to the Reimbursement Schedule of the current Travel Guide for State Employees for applicable rates. The restrictions listed in Section 19-5 B.1.e of this chapter also apply to per diem reimbursement.

B.    Lodging. Refer to the Reimbursement Schedule of the Travel Guide for State Employees for the current maximum lodging rate. This rate is applicable except as stated in Section 19-5 C.5 of this chapter. All requests for out-of-state travel which involve lodging require the approval of the Secretary of Transportation and the GOMB and must be submitted through the GOMB eTravel System. Contact the Bureau of Personnel Management for assistance with the Electronic Travel Voucher System.

C.    Out-of-state travel on state time must have advance approval even if travel expenses are not borne by the department.

D.    For work functions performed near the borders of Illinois where lodging may be secured outside of Illinois, advance approval is required by GOMB. This is still considered out-of-state travel even though the purpose of the trip is in state and/or the in-state lodging rate is not exceeded. In such cases where out-of-state lodging is the only option, the Travel Coordinator of the bureau or district shall also approve such lodging as the closest acceptable lodging to the work site.

E.    Out-of-State travel involving demonstrations, seminars and conferences (including those that involve disbursements for registration fees) always require advance approval via Form PM TA-1: Out of State Travel Request. Advance written approval is not required for out-of-state travel necessitated by the normal day-to-day operations that do not require overnight lodging. Form PM TA-1: Out of State Travel Request shall be completed by the traveler and approved by the corresponding Director or designee.

**19-8                                  OUT OF COUNTRY TRAVEL**

No travel shall be approved for payment for reimbursement of out-of-country or noncontiguous United States travel costs unless it has been approved by the Secretary or designee through the GOMB eTravel system. In cases of emergency where advance approval could not be obtained, a memorandum stating the circumstances must be submitted to the Director of Finance & Administration for approval. A copy of the approved memorandum shall be attached to the travel invoice.

**19-9    SPECIAL EXPENSES**

The cost of reasonable miscellaneous expenses shall be allowed to an employee on travel status. All miscellaneous expenses shall be itemized on Form C-10: Travel Invoice and receipts attached if the individual expenditure exceeds $10.00.  The following are examples of special expenses for which reimbursement may or may not be given.

A.    Reimbursable:

    1.    Hire of room, exhibit space, set up, etc., for official business
    2.    Laundry and dry cleaning if on travel status for at least seven consecutive days
    3.    Storage and handling of baggage
    4.    Taxis including reasonable tips
    5.    Telephone calls on official business including calls of three minutes or less to announce safe arrival, delay or change in plans

6.       Telephone calls to secure lodging
7.       Roadway and toll charges
8.       Parking

B.    Non-Reimbursable:

1.       Alcoholic beverages
2.       Cellular telephone charges, whether personal or business-related
3.       Coat check
4.       Entertainment
5.       Late check-out and room guarantee charges (including no show charges)
6.       Parking tickets and other traffic fines
7.       Tips incurred except those specifically provided for in this chapter
8.       Personal accident insurance
9.       Collision damage insurance options (motor vehicle rentals)
10.      Meals for other state employees or officers

## 19-10   TRAVEL PREPARATION

In addition to the following rules pertaining to travel preparation, the Bureau of Business Services (BoBS) will promulgate travel procedures.

A.    Internal Revenue Publication 535: Business Expenses, Chapter 13 requires employees to give an adequate accounting for travel, meals and entertainment expenses. This includes documentary evidence of travel, mileage and other employee business expenses. The department utilizes Form C-10: Travel Invoice process to account for employee expenses and to provide a means to reimburse employees for expenses, which are properly owed to them.

B.    The process of completing a travel invoice requires the employee or designee to enter the trip data into the Electronic Travel Voucher System.  Upon successful completion of entering the trip data, Form C-10: Travel Invoice should be printed and forwarded with any attachments to the supervisor for signature. Questions regarding the Electronic Travel Voucher System should be addressed to the Agency Travel Coordinator within the Bureau of Personnel Management.

C.    Alterations of the amounts or dates on supporting documentation are not allowed. It is the traveler's responsibility to obtain legible, complete documentation showing rate, tax, dates and payments. A record of all travel expenditures properly chargeable to the state shall be kept by the employee for use in preparing the travel invoice.

D.    Form C-10: Travel Invoice submitted for payment must be signed by the supervisor of the individual who incurred the expense.

E.    It is critical for employees to submit travel invoices to supervisors for approval and payment within 60 days of the completion of a trip. In cases where multiple trips are listed on the same invoice, the 60-day timetable begins when the traveler returns from the first trip. Failure to submit invoices within the 60-day period could result in taxation of the employee's reimbursement payments pursuant to IRS rules and regulations defined in Section 19-4. C of this chapter. Accordingly, reimbursements that are taxable will appear on the employee's federal Form W-2: Wage and Tax Statement for tax purposes. Consequently, the department strongly recommends that employees consult their tax advisor to determine how this will impact their federal and state income tax returns.

F.    Multiple trips may be combined on one travel invoice as long as all trips on the travel invoice have ending dates within the same calendar month. If an individual trip crosses over a month end, that trip must be reported on a travel invoice for the subsequent month. Trips which cross over the end of a month are not to be split (i.e., part of the trip on one invoice and the other part on a second invoice).

G.    Instances requiring exception to the travel submittal process along with any corresponding explanations must be approved by the Secretary or designee.

H.    Travel vouchers for trips occurring for the last fiscal year must be completed by August 1 of the current calendar year or they may not be printed by the Electronic Travel Voucher System. When a voucher cannot be printed due to the print date, the employee will need to seek reimbursement through the Illinois Court of Claims.

## 19-11    EXCEPTIONS TO REGULATIONS

A.    An advance written request must be provided for any exceptions to these travel regulations or those promulgated by GTCB. Complete information and justification shall be furnished by the office or division requesting the exception and be forwarded to the Agency Travel Coordinator. If GTCB approval of the proposed exception is necessary, the Agency Travel Coordinator will forward the request to GTCB.

B.    In the event that circumstances prohibit an advance written request, a request must be submitted to the Agency Travel Coordinator, with all accompanying documentation upon the conclusion of travel. Such documentation shall include an explanation why an advance written request was not submitted.

C.    The Agency Travel Coordinator will be advised of the decision by GTCB and, in turn, will inform the employee's office of the disposition of the request for exception. The employee's office shall process travel invoices through BoBS, attaching a copy of the approved exception to the original of the travel invoice if the employee is being reimbursed. If the expense is being billed directly to the department, the exception approval should accompany the vendor's invoices.

D.    All travel invoices that contain a request for reimbursement for expenditures above the allowable limits must meet GTCB rules and regulations. The Agency Travel Coordinator should be contacted for specific direction. When such expenses are incurred, they must be kept to a minimum. It is the employee's responsibility to stay within rates established by current travel regulations.

E.    Employees are required to utilize the Preferred Hotel Listing distributed by GTCB to secure lodging. The use of hotels not on the Preferred Hotel Listing is allowable if the lodging is within the allowable state rate. A minimum number of hotels from the Preferred Hotel Listing must be contacted prior to an employee requesting an exception. The Preferred Hotel Listing and the criteria for approval of exceptions are published periodically by GTCB. The names of the hotels contacted are indicated on the justification for the exception. An employee will be held financially responsible for that amount in excess of the maximum rate if an exception is not granted.

F.    State agencies may process requests for excessive lodging charges without approval from the Governor's Travel Control Board provided the request is in compliance with the travel rules. A request is considered in compliance if in:

   1.    the City of Chicago, a minimum of 5 Preferred hotels were contacted (i.e., hotels appearing in the current Travel Guide for State Employees or subsequent Travel Updates).

   2.    all other areas within the state of Illinois, a minimum of 3 Preferred hotels were contacted.

   3.    all out of state locations, a minimum of 3 properties were contacted.

   For areas with less than 3 hotels on the Preferred Hotel Listing, a minimum of 3 budget to mid-price hotels must have been contacted (where available). Upscale or deluxe properties would not count as contacted properties unless they appear on the Preferred Hotel Listing. Lodging is only allowed at non-Preferred hotels if the rate offered is lower than the rates of Preferred hotels in that particular area.

The following types of lodging requests require written approval from the Governor's Travel Control Board prior to submitting a claim to the Office of the Comptroller for payment:

1.     all excessive lodging requests not in compliance with the travel rules

2.     all requests for in-headquarters lodging expenses

3.     all requests for unanticipated fees/charges assessed by hotels including: early departure fees, unused hotel room charges, etc. Energy fees/charges assessed by hotels are reimbursable and do not require an exception.

Employees should check with the Agency Travel Coordinator located in the Bureau of Personnel Management for specific policies and procedures related to the exception process.

## 19-12   MOVING EXPENSES

A.     Settling Period - Transfer of Employee

1.     The lodging expenses of an employee transferred to a new headquarters may be paid, in accordance with these regulations, for a period not to exceed 45 calendar days. In addition, as many as three round trips for the employee may be permitted to locate housing prior to the employee's move.  The department shall reimburse the employee per diem in accordance with the provisions of Section 19-5. C of this chapter. Family members shall not, however, be transported by state vehicle.  Reimbursement for these expenses shall be within the maximum rates established in the Reimbursement Schedule of the current Travel Guide for State Employees.

2.     The applicable budget responsibility at the new headquarters shall be responsible for the travel expenses of an employee changing headquarters at the request of the department. For employees changing headquarters, transportation between home and the new headquarters during the settling period shall be paid, not to exceed one round trip per week unless a holiday falls between two consecutive work days. In this case, an additional round trip may be allowed. A state vehicle may be used, if available. Family members and other non-departmental employees shall not be transported by state vehicles. If public transportation is used, the actual cost must not exceed the allowance for private auto usage. The expenses shall be paid by the office authorizing the travel as a contractual services expenditure.

3.     Expenses may also be paid for moving the household furniture and for storing the furniture, if necessary, for a maximum of 45 calendar days.  The moving of household furniture need not occur within the 45-day settling period. The employee changing headquarters, with assistance from the division, office, district or bureau to which the employee is transferring, shall obtain three quotations for moving the employee's possessions or mobile home. Cartons, packing of cartons and full insurance coverage while in transit shall be included.

4.     Quotations should be sought from movers who are willing to bill the department directly. If the movers are unwilling to do so, the employee must be prepared to make a total settlement with the mover at completion of the move. The employee shall then submit an invoice for reimbursement to the Travel Coordinator of the new headquarters. The quotations and recommendation of a mover shall be forwarded to the Travel Coordinator at the employee's new headquarters.

5.     Authorization to approve the carrier shall be by letter from the Travel Coordinator at the employee's new headquarters. The actual moving date shall be worked out between the employee and the mover. Upon completion of the move, the mover is to transmit an invoice to the employee's new headquarters.  If rental trucks and trailers are to be used, it should be

noted that personal accident insurance and collision damage waivers are not reimbursable. The state is not liable for any damage or loss of an employee's personal possessions or damage to rental vehicles.

6.      Employee-owned vehicles may be utilized to transport household possessions, with reimbursement based on the Reimbursement Schedule of the current Travel Guide for State Employees. Any damage incurred to employee-owned vehicles or household possessions would be the personal liability of the employee and not the department. State vehicles may not be used to move employee's household possessions or transport family members.

7.      Settling expenses may be limited as determined by the Secretary of Transportation.

8.      The settling period for a transferred employee can be extended when circumstances warrant with the advance written approval of the Director of Finance & Administration. The Travel Coordinator for the new headquarters must submit a request for extension to the Agency Travel Coordinator. The extension must be granted by the Director of F&A prior to the end of the initial 45-day period.

B.      Settling Period - Newly Hired Employee

1.      The lodging expenses of a newly hired, full-time, permanent employee who must relocate may be paid, in accordance with these regulations, for a period not to exceed 15 calendar days. In addition, one round trip for the employee may be permitted to locate housing prior to the employee's move. The department shall reimburse the employee per diem in accordance with the provisions of Section 19-5 C. of this chapter. Family members shall not, however, be transported by state vehicle.  Reimbursement for these expenses shall be within the maximum rates established in the Reimbursement Schedule of the current Travel Guide for State Employees. Expenses may also be paid for moving the household furniture and for storing the furniture, if necessary, for a maximum of 45 calendar days. All settling period expenditures must be authorized in writing by the employee's new headquarters Travel Coordinator. The same restrictions regarding moving expenses described in Section 19-12 A of this chapter also apply here.

2.      Employee-owned vehicles may be utilized to transport household goods, with reimbursement in the form of the private vehicle mileage rate. Any damage incurred to employee-owned vehicles or household possessions would be the personal liability of the employee and not the department. State vehicles may not be used to move employee's household possessions or transport family members.

C.      Payment for Moving Expenses

The applicable budget responsibility at the new headquarters shall be responsible for the travel expenses of the newly hired employee who must relocate. Such expenses shall be paid as a contractual services expenditure.

1.      In situations in which the department and the new hire have agreed to compensation by the department as outlined in this chapter for moving and temporary housing expenses, a new employee must work for a designated time period as outlined in Form PM ES 2600: Reimbursable Expenses Agreement or reimburse the department for applicable expenses.

2.      The applicable budget responsibility through the administrative manager, fiscal manager or designee shall be responsible for:

IDOT 001286

a)      forwarding a signed copy of the Reimbursable Expenses Agreement to:

> Illinois Department of Transportation
> Bureau of Personnel Management
> Attn: Agency Travel Coordinator
> 2300 South Dirksen Parkway
> Springfield, IL 62764

b)      forwarding a signed copy of the Reimbursable Expenses Agreement to:

> Illinois Department of Transportation
> Bureau of Personnel Management
> Attn:  Bureau Chief
> 2300 South Dirksen Parkway
> Springfield, IL 62764

c)      maintaining all documents and total expenditures for the employee in question; and,

d)      obtaining the reimbursement for expenditure amount should an employee leave before the designated time period.

## 19-13   RECRUITMENT AND INTERVIEW EXPENSES

Prospective employees may be reimbursed for reasonable expenses (transportation, lodging, meals and per diem, when applicable) incurred during the recruitment and interviewing process. Such expenses must be supported by receipts. The expenses shall be paid by the office authorizing the travel as contractual services expenditure. Any reimbursement paid to the prospective employee is also subject to the 60-day submittal period as set by the IRS. These expenditures shall be within the maximum rates established in the Reimbursement Schedule of the current Travel Guide for State Employees.

# INDEX

absence without pay ............................. 42-44, 57, 59

affirmative action plan ...................................... 4-5, 67

age requirement ....................................................... 7

agency travel coordinator ............ 96-101, 103, 105-09

aircraft operations ................................................... 9

alcohol ................................... 8-9, 37, 59, 69, 71, 104

alcohol and drug testing ...................................... 9, 70

americans with disabilities act of 1990................. 4-5,

appeal............................................. 25, 28,88-90,

application .................................7–8, 17, 55-57, 65, 74

appointment ........................... 4, 10, 22, 29, 38, 44, 50

attendance...............11, 13, 15, 30, 40, 44, 55, 81-83


candidate................................................. 6, 8, 80–82

career guidance and support ...................... 11, 13-14

career services .................................................. 11-12

citizenship........................................................... 7

civil rights act.............................................4-5, 67, 89

classification..... 2, 7, 15, 24-27, 38, 51, 72-73, 83, 92

code employees ...2, 19-20, 22, 24, 30, 37, 46, 59, 89

collective bargaining agreement .vi, 2, 6-9, 23, 25-28,
30-33, 36, 43-44, 49, 61-62, 86-87, 94

compensatory time........................... 13, 33, 54-55, 57

complaint ................................. 3-4, 39, 65-66, 88, 93

confidential .......... 3, 7-8, 13, 26, 30, 37-38, 61-62, 66

conflict of interest .......................................... 61, 76-78

contract ... vi, 2, 5, 7, 22, 35-36, 42, 44-45, 48, 76-77,
94-95, 103

contractual employees ..............................................2


department of CMS' personnel rules........ vi, 2, 19, 21,
23-24 42, 59

departmental orders ............................................... 60

dependent .............................................. 35, 46, 75, 84

disability...... 3-4, 22-23, 28, 35-36, 38, 41, 44, 48-52,
58-60, 100

discharge........ 3-4, 7-8, 22-24, 28, 31, 39, 42-44, 48,
53-54, 56-59, 61-62, 65-67, 69-73, 76, 78-79, 85,
87, 90-91

discrimination ......................... 1, 3-4, 8, 59, 65-66, 93

diversity action plan................................................. 4

dock time ............................................................. 32

domestic partner ............................................... 9, 81

drugs ......................................................... 60, 70, 72


earned equivalent time ......................................... 13

education..... 7-8, 11-12, 15-18, 24, 28, 56-57, 59, 71,
77, 82

EEO .................................................... 4, 22, 26

employee assistance program .......................... 37, 70

ePAR ..................................................................... 6

ethics ....................................30, 61, 77, 79, 82-83, 85

evaluation....................................... 12, 19–22, 25, 66

executive order............................................6, 60, 72

fair labor standards act ........................................... 30

family .......31, 37, 43-45, 47, 49-53, 75-76, 80-81, 98,
106-107

fit for duty ............................................................. 22

furlough ................................................................ 28


gambling ............................................................... 61

gift ban ..................................................... 79, 81, 83, 85

governor's travel control board.............. 96, 98, 106

grievance .............................. 1, 25, 28, 37, 88-91

guiding principles .................................................... vi


harassment..................................... 3-4, 60, 66-69, 89

headquarters .................. 30, 33, 96-99, 102, 107-08

holiday ...................................... 1, 13, 31, 41-42, 107


illinois human rights act ................................. 4, 67, 89

illness.................. 22, 26, 36-37, 41, 44-48, 52, 63, 85

injury ...... 22-23, 26, 36-40, 43-45, 47-48, 51-52, 62,
68-69, 74, 101

insurance ...............35-38, 48, 51, 53, 57, 75, 101-03,
105, 108

interview ......... 6-9, 21, 23-24, 26, 66, 68, 86, 89, 109

intimidation ................................................. 3-4, 68-69

investigation................. 3-4, 24, 61-62, 66, 68, 86, 89


jury duty ............................................................54-55


labor relations .............. 68, 72, 86-88, 91, 93-95, 103

layoff .......................................... 26-29, 46, 50

learning management system.................................11

leave .. 1, 7-8, 17-18, 23, 26, 28, 30-34, 36-37, 41-59,
73, 86, 91-92

leave of absence ...... 7, 23, 26, 28, 42, 44, 48, 52-54,
56-59,                    73,                     86

library.......................................................... v, vi, 39

license .......... 7, 14-15, 24, 49, 51, 62, 72-75, 101-02

lodging .......................... 6, 8, 15, 84, 97-101, 104-108


meal allowance ......................................... 97, 99-100

merit compensation .......................................19-20, 33

military ..................3-4, 22-23, 28, 39, 41, 43, 55-60

mission statement...................................................vi


national driver registry .............................................9

new employee onboarding .............................. 11, 14


orientation ....................................................... 3,  14

outside employment ..........................................77-78

overtime........................... 8, 13, 15, 30, 32-33, 55-56


per diem.............. 6, 8, 15, 96, 98-99, 102-03, 106-08

personnel code ............................. 2, 7, 19-20, 28, 33

personnel records ............................................. 37-38

physical examination................................................. 9
pilot records improvement act of 1996 .................... 9
pregnancy.................................................... 44, 48, 52
probation ............................................................. 51
probationary period ..........................................22-23

reimbursement .......... 6, 12, 14-18, 55-56, 64, 76, 84, 97-109
relatives.................................................... 9, 76, 100
restitution ..................................................... 30
retaliation..................................................... 3, 66
retired ..................................................... 35, 78
retirement ........... 25, 35-36, 43-44, 46-48, 59, 82, 85

safety................ 7, 38, 60-61, 63, 68, 70, 92, 102-103
security............................. 35, 39, 72, 89, 93, 101-102
separation.....................18, 26, 33-34, 44, 46-47, 64
sick leave.............. 1, 23, 36, 41, 44-47, 49-50, 58-59
smoking.................................................... 63
state property ..........................................60-63, 78-79
steward.................................................... 94

suspension .... 23, 28, 42, 70, 72, 74-75, 87-88, 91-92

technical employees .......... 2, 19,  21-22, 24, 27,  32-33, 37, 88
termination .................. 43, 47, 49, 51, 62, 73, 77, 86, 89-90, 92
title vi program.......................................................3
training ......................... 4, 11-15, 18-19, 41, 43, 55-56
travel .... 6, 8, 13, 15, 25, 33-34, 45, 56, 65, 75-76, 82, 84, 96-109
tuition  .............................................. 12,  15-18

union ........................... 1, 8, 28, 30, 33-34, 87, 93-95

vacation .............. 1, 15, 33, 36, 41-43, 45, 54-57, 59
vehicle... 8, 39, 59, 61-63, 69, 71-74, 97, 100-02, 104, 106-07
visitor .............................................................39-40

witness...................................... 54-55, 65, 67, 85, 88