UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZENON MCHUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 17 C 8658 |
| | ) |
| ILLINOIS DEPARTMENT OF TRANSPORTATION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a). For the reasons that follow, Defendants' Motion [ECF Nos. 87, 92, 93] is granted.

## BACKGROUND

The following facts are from the record and are undisputed unless otherwise noted.

Following an investigation conducted by the Office of Executive Inspector General ("OEIG") and a pre-disciplinary hearing, Plaintiff Zenon McHugh was terminated for cause from his position of Highway Maintenance Lead Lead Worker ("LLW") within the Emergency Traffic Patrol ("ETP") unit for Defendant Illinois Department of Transportation ("IDOT"). Plaintiff filed his fifteen-count Second

Amended Complaint on April 18, 2019, asserting claims against the Individual Defendants for violations of his procedural and substantive due process rights, and a claim against IDOT for violation of the State Officials and Employees Ethics Act. Defendants now move for summary judgment on all counts.

**The Parties**

IDOT is an agency of the State of Illinois, created to oversee and maintain the transportation systems of the State of Illinois.

Defendant Colleen Alderman was employed by the Illinois Department of Central Management Services ("CMS") as a Senior Labor Relations Administrator.

Beginning in January 2016, Defendant Michael Hoffman was the Acting Director of CMS. Hoffman had no discussions with Alderman concerning Plaintiff's discipline or termination. Rather, Alderman authorized Plaintiff's discharge and signed on behalf of Hoffman.

Defendant John Fortmann was the Deputy Director of Highways and Region One Engineer for IDOT. Fortmann was informed and updated as to the status of Plaintiff's discipline but was not present at Plaintiff's pre-disciplinary hearing.

Defendant Georgina Syas was the Personnel Services Manager with IDOT. Syas was involved in the discussions surrounding the appropriate levels of discipline for IDOT employees and attended the pre-disciplinary hearing.

Defendant Bruce Harmening was employed by IDOT as the Bureau Chief of Investigations and Compliance in the Office of Finance and Administration, where he

2

served as a liaison with the OEIG and oversaw investigations and had multiple direct reports. Harmening was not involved in any decision making related to Plaintiff's discipline or termination, nor did he attend or participate in Plaintiff's pre-disciplinary hearing.

Defendant Lisa Heaven-Baum was the Acting Bureau Chief of Traffic Operations for IDOT. Heaven-Baum attended the pre-disciplinary hearing.

Defendant Stephen Travia was named Engineer of Operations of IDOT in approximately August 2015. Travia was involved in discussions concerning the appropriate level of discipline for Plaintiff and attended the pre-disciplinary hearing.

**Plaintiff's Employment with IDOT**

Plaintiff began his career with IDOT as a Highway Maintainer in 2001. Throughout his employment, Plaintiff was a member of the Teamsters Local 700 Union and subject to a Collective Bargaining Agreement ("CBA"). As a Highway Maintainer, Plaintiff had three to six months of classroom training, which included explanation of the ETP manual and workplace policies, instruction on how to use the radio, and how to fill out assist reports[1]. After completing the classroom training, Plaintiff shadowed a more senior Highway Maintainer for two or three months. From 2003 through 2015,

---

[1] Assist report data is frequently used to justify the number of trucks ETP needs in its fleet, as well as other budgetary concerns. They detail each instance of roadside assistance and include: the date; the driver's arrival and departure time; the driver's truck and badge numbers; the reason for the assist; type of assistance provided; location of the assist; license plate of the vehicle being assisted; and the ISP squad number, if present.

Plaintiff would train new Highway Maintainers, including about how to properly fill out assist reports.

In 2008, Plaintiff was promoted to the position of Lead Worker, wherein he supervised anywhere from 10 to 18 Highway Maintainers. As a Lead Worker, Plaintiff reported to the LLW. When Plaintiff became a Lead Worker, he had on the job training by an LLW. As a Lead Worker, Plaintiff's job duties included: monitoring subordinates, advising supervisors regarding the performance of subordinates, and providing guidance and direction to staff in the completion of their duties.

Plaintiff was promoted to LLW in 2012. When promoted to LLW, Plaintiff had on the job training by his supervisors, but had no other formal training for the position. Plaintiff claims he was never instructed to, or taught how to, review assist reports for accuracy or supervise his subordinates other than by checking in with them via radio or cell phone.

As an LLW, Plaintiff's duties included: supervising Lead Workers and Highway Maintainers, issuing work rule violations, advising his immediate supervisor regarding performance of his staff, ensuring conformance with departmental policies and procedures, and preparing incident reports. Plaintiff additionally continued to have the same duties and responsibilities of a trainer and Lead Worker. Part of Plaintiff's responsibilities as an LLW was to report the information submitted on assist reports to his superiors. Plaintiff testified he "never really looked at the reports. I took their sheet, wrote it on a piece of paper, and let it go." Plaintiff acknowledged the reports were

supposed to be accurate, but disputes he was given the resources and procedures necessary to meaningfully review assist reports submitted.

**IDOT Policies and Procedures**

The IDOT Personnel Policies Manual section on "Responsibilities" states: "All department employees are required to adhere to and comply with Departmental Orders . . . . Failure to do so could result in disciplinary action, up to and including discharge." This section further states, "Supervisors are expected to exercise proper supervision over subordinates. Supervisors shall take corrective action when warranted and address/report misconduct and/or rule violations of subordinates in a fair, consistent manner."

> The Personnel Policies Manual section on "Employee Ethics" states:
>
> Employees shall comply with all provisions set forth in the State Officials and Employees Ethics Act (5 ILCS 430). Employees of the department are subject to a higher standard of conduct and scrutiny than most citizens. The efficient operation of the department requires public trust and confidence in its employees. Employees shall conduct themselves and their business to the highest possible ethical standards that reflect professional management and/or engineering practices.

Dkt. # 94, ¶ 25. The Personnel Policies Manual on "Work Performance" explains:

> Employees shall perform their duties to the best of their abilities and cooperate with others in the performance of their duties as assigned. Inattention to work . . . shall not be tolerated. Employees are expected to possess and demonstrate the skills and abilities necessary to perform the duties and responsibilities of their position. Work assignments shall be completed accurately in a timely fashion and with good workmanship and judgment.

*Id.* ¶ 26.

5

**Office of Executive Inspector General Investigation**

In June 2011, upon receiving information that IDOT discovered discrepancies during an internal audit, the OEIG began an investigation into a specific Highway Maintainer who was found to have falsified field documents and Traffic Assist Reports. As a result of the findings concerning the Highway Maintainer, the OEIG expanded its investigation to other ETP employees in the same district. The OEIG reported that drivers informed it that false assist reports were submitted, in part, on account of quotas set by management, and that many of these drivers believed their ETP supervisors were aware that drivers were making up assist reports.

In December 2014, Plaintiff was advised he was going to be interviewed by the OEIG and was made aware of the administrative rights allotted to state employees. Prior to the interview, Plaintiff acknowledged that the information he shared during the interview could subject him to discipline, and that he was obligated to tell the truth or may be subject to disciplinary action. The interview with the OEIG investigators took place on December 16, 2014.

During the interview, Plaintiff informed the investigators that drivers were expected to meet a certain number of assists on their shifts, as the number of assists made was tied up to the funding received by ETP. Plaintiff stated he told his subordinate Highway Maintainers he received information from "upstairs" that they should aim to complete six assist reports at night, and ten during the days and

afternoons. Plaintiff supervised several of the Highway Maintainers interviewed by the OEIG.

Plaintiff told investigators he "do[esn't] care about assist sheets," and that it was not his "job" nor anyone else's to ensure the assist reports were truthful or accurate. The OEIG investigators also reported Plaintiff stated, "If no one is looking, it's not a problem." Plaintiff also informed the OEIG that some tasks were "above [his] pay grade." Plaintiff testified he was referring to the fact that he was unable to change the procedures on his own initiative and that such decisions had to be made by higher-ups.

Plaintiff testified the OEIG Investigative Report was an accurate representation of his discussions with the investigators, though not verbatim. It was also reported that Plaintiff told investigators he heard "shop talk" amongst drivers regarding the falsification of assist reports, but never inquired into the comments because "it's not my job to check them." Plaintiff contends the "shop talk" he was referring to was drivers talking about their OEIG interviews.

On January 19, 2016, the OEIG concluded its investigation and provided the IDOT Secretary with a Final Summary Report ("Final Report"), which included findings that multiple ETP Highway Maintainers regularly submitted falsified work documents from 2002-2015, some drivers failed to perform their work duties, and that several managers, including Lead Workers, LLWs, and Patrol Managers failed to adequately supervise their subordinates. The OEIG found that several ETP supervisors were either aware of or suspicious that drivers had been submitting false and fraudulent

7

assist reports on a regular basis for years, but did nothing to prevent, control, or eliminate the practice. Instead, managers continued to push drivers to perform more assists without any checks to ensure driver accuracy or honesty. The OEIG further found that ETP management fostered an environment where wrongdoing was accepted and encouraged.

The OEIG determined that Plaintiff violated the provision in the IDOT Personnel Policies Manual regarding supervisor responsibilities and IDOT's policy on "Work Performance." The OEIG also determined Plaintiff "fail[ed] to adequately supervise and manage ETP drivers, and prevent the commission of serious fraud over the course of several years." The Report recommended to IDOT that it discipline and terminate several ETP employees, including Plaintiff. No LLWs other than Plaintiff were named in the Report or were named to have engaged in the misconduct described in the Report.

**Plaintiff's Termination**

On July 29, 2016, Plaintiff was advised that a pre-disciplinary meeting to discuss disciplinary charges of poor supervision, violation of the Ethics Act, and poor work performance would take place on August 5, 2016, and that he was entitled to union representation at the meeting. On August 5, 2016, Defendants Syas, Heaven-Baum, and Travia, Plaintiff's union representative, and Plaintiff attended Plaintiff's pre-disciplinary hearing. At the pre-disciplinary meeting, Plaintiff was advised of the charges against him and invited to "explain [his] side of the story." Plaintiff's union

representative spoke on Plaintiff's behalf at the meeting. Plaintiff was further advised he could submit a written rebuttal to the charges, but he did not do so.

> The Statement of Charges indicated, in pertinent part:
>
> On or about, January 26, 2016, IDOT received an investigation conducted by the Office of the Executive Inspector General (OEIG) (Case No. 11-00964). During the course of this investigation, you admitted to the OEIG investigators that you had heard "shop talk" among ETP drivers about the falsification of Assist Reports, but said you never inquired into the comments because it was not your job to check them and that you do not care about Assist Sheets. You also admitted that you never instructed your ETP drivers to refrain from submitting false Assist Reports and that telling drivers to not falsify Assist Reports is above your pay grade.
>
> You also admitted that you do nothing to ensure that your drivers are actually on the roads working and assisting motorists or that your subordinate supervisors are making sure the ETP drivers are actually working. You stated that false Assist Reports are not a problem if nobody is looking. You further stated that you do not want to know if your subordinates are making up Assist Reports. As a result, you did not exercise proper supervision over your subordinates to ensure that your drivers were performing their work duties and following all IDOT and ETP policies and rules.

Dkt. # 94-26, at 2. Plaintiff was covered by the personnel code such that CMS needed to review the disciplinary packet and determine whether the allegations against Plaintiff warranted discharge. In evaluating whether the charges against Plaintiff were substantiated enough to warrant discharge, Defendant Alderman looked to whether there was a violation of any rule(s), the OEIG's Final Report, whether a rebuttal was submitted, and any comments from the pre-disciplinary meeting. Defendant Alderman was also provided with and considered Plaintiff's disciplinary history.

9

On August 22, 2016, Plaintiff was issued a 30-day suspension pending the decision to discharge. On September 9, 2016, CMS informed Plaintiff his discharge was approved and he was free to appeal the charges or submit a grievance. Plaintiff was discharged for cause effective September 14, 2016, on account of his Poor Supervision, Violations of the Ethics Act, and his Poor Work Performance. Plaintiff "did not exercise proper supervision over [his] subordinates to ensure [his] drivers were performing their work duties and following all IDOT and ETP policies and rules," which amounted to violations of IDOT's Personnel Policy Manual Chapter 10-2 (Responsibilities); Chapter 10-3 (Section H); and Chapter 10-3 (Section Y). With the assistance of his Union, Plaintiff grieved his termination and suspension pending discharge, alleging his conduct "was in compliance with supervisory orders." Plaintiff was later informed by Teamsters Local 700 that the Union did not find his matter meritorious for arbitration and, accordingly, it would not be arbitrated.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (cleaned up). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

## DISCUSSION

As an initial matter, Plaintiff admits that Defendant Harmening was not involved in any decision making related to Plaintiff's discipline or termination, nor did he attend or participate in Plaintiff's pre-disciplinary hearing. As such, Plaintiff cannot maintain a claim against Harmening for violations of his procedural or substantive due process rights. *See Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (cleaned up). Similarly, there is no evidence Defendant Fortmann was involved in any part of the disciplinary process; he was merely apprised of disciplinary discussions. Summary judgment is therefore granted in favor of

Defendants Harmening and Fortmann on Counts V, VI, IX, and X of Plaintiff's Second Amended Complaint.

Plaintiff also does not dispute, or even respond to, Defendants' argument that his procedural and substantive due process claims against Defendant Alderman and Defendant Hoffman cannot survive summary judgment because they are employees of CMS, not IDOT. Plaintiff therefore waived any such argument. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Summary judgment is granted in favor of Defendants Alderman and Hoffman on Counts I, II, III, and IV of Plaintiff's Second Amended Complaint.

## I.  Procedural Due Process Claims

Plaintiff makes identical claims against the Individual Defendants for violations of his procedural due process rights. Defendants argue they are entitled to summary judgment on these claims because Plaintiff does not have a constitutionally protected property interest in progressive discipline or investigation, and because Plaintiff was provided with notice and a hearing.

To establish a due process claim, a plaintiff must demonstrate (1) that he had a constitutionally protected property interest, (2) that he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). "In any due process case

alleging a deprivation of property, the threshold question is whether a protected property interest actually exists." *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (cleaned up).

In the Complaint, Plaintiff contends he has a property interest in continued public employment by virtue of the CBA, and the Individual Defendants violated his due process rights by "failing to apply step discipline and instead fast tracking the termination of Plaintiff's employment with IDOT." Plaintiff further asserts the Individual Defendants violated his due process rights by: failing to conduct any investigation into the alleged misconduct or violations; failing to notify Plaintiff of his alleged misconduct or violations in a manner that conforms with the CBA, IDOT and ETP policies and procedures, and CMS Personnel Code and Rules; holding and participating in a "sham" pre-disciplinary hearing; failing to afford Plaintiff a meaningful opportunity to dispute the alleged misconduct or violations; and failing to apply progressive discipline.

To begin, Defendants seize on Plaintiff's failure to allege in his complaint that the procedures were "fundamentally unfair," arguing this alone necessitates summary judgment in their favor. Contrary to Defendants' hypertechnical position, "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014) (quoting *Conley v. Gibson*, 355 U.S.

13

41, 48 (1957)). In line with this widely-held principle, the Court concludes that a proper decision on the merits is more likely if we reject Defendants' argument. After all, the Federal Rules do not provide for a "technical form[] of pleading" and all "pleadings shall be construed as to do substantial justice." *Swierkiewicz*, 534 U.S. at 513 (cleaned up). Thus, the Court proceeds with its analysis of Plaintiff's procedural due process claims.

Under Illinois law, a public employee has a protected property interest in his job only if continued employment is guaranteed by "a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Moss*, 473 F.3d at 700. Qualifying limits on the government's ability to discharge must be substantive; mere procedural rights do not create a protected property interest in continued employment. *Id*. at 701; *see also Heck v. City of Freeport*, 985 F.2d 305, 311 (7th Cir. 1993) ("[M]ere procedural rights . . . do not of themselves give rise to property interests protected under the Fourteenth Amendment."). As the Seventh Circuit explained in *Campbell v. City of Champaign*:

> When the claimed deprivation of property is the loss of a job, the entitlement must be to a job, rather than to just a set of disciplinary procedures. A contract that creates merely a right to procedure does not create a property right within the meaning of the due process clause. So even if the contract in this case be construed as *entitling* the plaintiff to progressive discipline, the breach would not be a deprivation of *property*.

940 F.2d 1111, 1113 (7th Cir. 1991) (cleaned up). "In short, even if [IDOT] failed to follow CBA-proscribed procedures, that failure is not a due process violation." *Harris*

*v. City of Chi.*, 665 F. Supp. 2d 935, 951 (N.D. Ill. 2009). To the extent Plaintiff argues he has a constitutionally protected property interest in progressive discipline or an investigation, that claim must fail. Plaintiff has, however, established a protected property interest in his continued employment by virtue of the CBA.

The question then becomes whether Plaintiff received adequate pre-termination process. "A pre-termination proceeding is essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action, and an employer satisfies the requirements of due process if the employee receives: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell his side of the story." *Tome Beu Xiong v. Fischer*, 787 F.3d 389, 399 (7th Cir. 2015) (cleaned up); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985) (pre-termination hearing need not constitute a full evidentiary hearing that definitively resolves the propriety of the discharge, so long as it serves as "an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action").

Here, the record indicates that Plaintiff was afforded an opportunity to review the charges against him and formulate a response. Plaintiff claims his termination was pre-determined based upon the OEIG's Final Report, which was not presented to him prior to his termination. Thus, Plaintiff argues, he did not have an opportunity to confront the evidence being used against him. But Plaintiff acknowledges the decision

15

to terminate him was based solely on the information contained in his pre-disciplinary packet, to which Plaintiff had ample opportunity to review and respond. He was represented at the pre-disciplinary hearing by his union representative and was further given the chance to submit a rebuttal, which he declined to do.

Plaintiff takes issue with the fact that the decision to terminate him was solely based on the information in the pre-disciplinary packet and none of the documents in the pre-disciplinary packet contained "the objectionable language attributed to Plaintiff upon which the decision to terminate was based." The Court is puzzled by this position. Plaintiff does not clearly identify what "objectional language" he is referring to, but the Statement of Charges clearly refers to several statements Plaintiff made during the OEIG's investigation:

> On or about, January 26, 2016, IDOT received an investigation conducted by the Office of the Executive Inspector General (OEIG) (Case No. 11-00964). During the course of this investigation, you admitted to the OEIG investigators that you had heard "shop talk" among ETP drivers about the falsification of Assist Reports, but said you never inquired into the comments because it was not your job to check them and that you do not care about Assist Sheets. You also admitted that you never instructed your ETP drivers to refrain from submitting false Assist Reports and that telling drivers to not falsify Assist Reports is above your pay grade.
>
> You also admitted that you do nothing to ensure that your drivers are actually on the roads working and assisting motorists or that your subordinate supervisors are making sure the ETP drivers are actually working. You stated that false Assist Reports are not a problem if nobody is looking. You further stated that you do not want to know if your subordinates are making up Assist Reports. As a result, you did not exercise proper supervision over your subordinates to ensure that your drivers were performing their work duties and following all IDOT and ETP policies and rules.

16

Dkt. # 94-26, at 2.

Plaintiff's claims that his termination was pre-determined based on the OEIG's Final Report also do not hold water. "That at the start of the [pretermination] hearing the agency decisionmakers tentatively believe the employee should be removed does not raise a constitutional problem . . . so long as the decisionmakers are open to other views." *Ryan v. Ill. Dep't of Child. & Fam. Servs.*, 185 F.3d 751, 762 (7th Cir. 1999). Plaintiff, however, cannot merely assert the decision to terminate him was made before the hearing. Rather, he must offer evidence from which a reasonable trier of fact could infer such a conclusion. He has not done so here.

The Court concludes Plaintiff was afforded all the process that was due. Accordingly, the Court grants summary judgment in favor of the Individual Defendants on Plaintiff's procedural due process claims.

**II.     Substantive Due Process Claims**

As with his procedural due process claims, Plaintiff makes identical claims against the Individual Defendants for violations of his substantive due process rights. "[T]he scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). A plaintiff must allege that the government violated a fundamental right or liberty. *Glucksberg*, 510 U.S. at 720; *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). And that violation must have been arbitrary and irrational. *Cnty. of Sacramento v.*

17

*Lewis*, 523 U.S. 833, 845 (1998); *Idris v. City of Chi.*, 552 F.3d 564, 566 (7th Cir. 2009). Substantive due process protects against only the most egregious and outrageous government action. *See Lewis*, 523 U.S. at 845; *Belcher*, 497 F.3d at 753.

In connection with his procedural due process claim, Plaintiff asserts he has a property interest in his job. But if he intended his job to be a basis of his substantive due process claim as well, that theory fails. *See Nelson v. City of Chi.*, 992 F.3d 599, 604 (7th Cir. 2021). "Employment, including public employment, is not a fundamental right." *Id*. (citing *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)). Accordingly, a public employee alleging wrongful termination cannot state a substantive due process claim "unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). Plaintiff has not pled an additional constitutional violation, nor has he claimed that state law remedies were inadequate. *See Catinella v. Cnty. of Cook*, 230 F. Supp. 3d 880, 887 (N.D. Ill. 2016), *aff'd sub nom. Catinella v. Cnty. of Cook, Ill.*, 881 F.3d 514 (7th Cir. 2018).

Plaintiff halfheartedly attempts to salvage his substantive due process claims by alleging—for the first time—in a single sentence his Response brief that his First Amendment right to free speech "is also implicated here where he reported the issues within the existing system outside the chain of command to the OEIG." Dkt. # 101, at 9. This is too little, too late. It is well-established a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary

judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012); *see also Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Moreover, [p]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006). Summary judgment is therefore granted in the Individual Defendants' favor on Plaintiff's substantive due process claims.

### III. State Ethics Act Claim

Finally, Defendants argue they are entitled to summary judgment on Plaintiff's Ethics Act claim against IDOT because it is barred by the Eleventh Amendment. The Court agrees. A suit may proceed against a state agency in federal court when the state has waived its immunity or Congress has abrogated the state's immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). However, district courts in Illinois have found the State of Illinois has not waived its Eleventh Amendment immunity as it relates to the Ethics Act. *See Titus v. Ill. Dep't of Transp.*, 828 F. Supp. 2d 957, 974 (N.D. Ill. 2011); *Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935 (N.D. Ill. 2014); *Cole v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 925 (N.D. Ill. 2014). Accordingly, the Court grants summary judgment in favor of IDOT in Count XV.

In his Response to Defendants' Motion for Summary Judgment, Plaintiff contends the Eleventh Amendment is not a bar to Ethics Acts claims against the Individual Defendants and requests leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2) in order to add counts under the Ethics Act against the

Individual Defendants. Plaintiff says allowing the amendment would not prejudice the Individual Defendants because those claims arise out of the same nexus of facts stated in the operative complaint.

Again, Plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson*, 699 F.3d at 997. Plaintiff has had years and multiple opportunities to amend his complaint to include claims against the Individual Defendants for violations of the Ethics Act. *See Johnson v. Cypress Hill*, 641 F.3d 867 (7th Cir. 2011) (affirming a district court's denial of leave to file an amended complaint after four years of litigation); *Winter v. Fru-Con Inc.*, 498 F.3d 734 (7th Cir. 2007) (similar for a proposed amendment three years into the litigation); *Ernst v. City of Chi.*, 2012 WL 27954 (N.D. Ill. 2012) (similar and observing that "a number of cases have found delays of three to four years sufficient to warrant denial of leave to amend"). Indeed, the operative complaint here is Plaintiff's *Second Amended Complaint*. The Court therefore denies Plaintiff's request for leave to amend.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF Nos. 87, 92, 93] is granted. Civil case terminated. It is so ordered.

Dated: September 23, 2021

                                                             Charles P. Kocoras
                                                             United States District Judge